# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ENZO LIFE SCIENCES, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**GEN-PROBE, INCORPORATED,**<br><br>Defendant. | **C.A. No. 12-cv-104-LPS**<br><br>**JURY TRIAL DEMANDED** |
| **ENZO LIFE SCIENCES, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**LIFE TECHNOLOGIES CORPORATION,**<br><br>Defendant. | **C.A. No. 12-cv-105-LPS**<br><br>**JURY TRIAL DEMANDED** |
| **ENZO LIFE SCIENCES, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**ROCHE MOLECULAR SYSTEMS, INC., et al.,**<br><br>Defendants. | **C.A. No. 12-cv-106-LPS**<br><br>**JURY TRIAL DEMANDED** |
| **ENZO LIFE SCIENCES, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**ABBOTT LABORATORIES, et al.,**<br><br>Defendants. | **C.A. No. 12-cv-274-LPS**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| ENZO LIFE SCIENCES, INC.<br><br>        Plaintiff,<br><br>        v.<br><br>BECTON, DICKINSON AND COMPANY; et al.,<br><br>        Defendants. | C.A. No. 12-cv-275-LPS<br><br>JURY TRIAL DEMANDED |
| ENZO LIFE SCIENCES, INC.<br><br>        Plaintiff,<br><br>        v.<br><br>HOLOGIC, INC.,<br><br>        Defendant. | C.A. No. 12-cv-276-LPS<br><br>JURY TRIAL DEMANDED |
| ENZO LIFE SCIENCES, INC.<br><br>        Plaintiff,<br><br>        v.<br><br>AFFYMETRIX, INC.,<br><br>        Defendant. | C.A. No. 12-cv-433-LPS<br><br>JURY TRIAL DEMANDED |
| ENZO LIFE SCIENCES, INC.<br><br>        Plaintiff,<br><br>        v.<br><br>AGILENT TECHNOLOGIES, INC.,<br><br>        Defendant. | C.A. No. 12-cv-434-LPS<br><br>JURY TRIAL DEMANDED |

| | |
|---|---|
| ENZO LIFE SCIENCES, INC. | |
| Plaintiff, | C.A. No. 12-cv-435-LPS |
| v. | JURY TRIAL DEMANDED |
| ILLUMINA, INC., | |
| Defendant. | |
| ENZO LIFE SCIENCES, INC. | |
| Plaintiff, | C.A. No. 12-cv-505-LPS |
| v. | JURY TRIAL DEMANDED |
| SIEMENS HEALTHCARE DIAGNOSTICS INC. | |
| Defendant. | |

## [PROPOSED] ORDER

The Court, after hearing arguments during the September 11, 2014 conference on the issues raised in the parties' September 9, 2014 joint letter to the Court, rules as follows:

1.    Within 21 days of the Court's claim construction order, in each action in which Plaintiff has asserted U.S. Patent No. 7,064,197 ("the '197 Patent"), Plaintiff shall reduce the number of claims of the '197 Patent asserted against each defendant to no more than 25. For avoidance of doubt, "defendant" shall mean each defendant group in each case, and not each individually named defendant. For multiple dependent claims, each possible dependency shall be counted as an asserted claim, except that if Plaintiff identifies specific dependencies for a multiple dependent claim, each identified dependency counts as a single asserted claim, and

unidentified dependencies are deemed no longer asserted. Plaintiff shall be permitted to amend the claims asserted pursuant to this paragraph only upon a showing of good cause.

2.    Within 30 days of the Court's claim construction order, the parties shall meet and confer on the feasibility of identifying representative products for the purposes of presenting proof on the disputed infringement issues.

3.    Within 31 days of the Court's claim construction order, the parties shall file a joint status report. In that status report, the parties will address any disputes related to Plaintiff's reduction of asserted claims, and will address the timing and briefing of dispositive motions. Defendants also may address the reasonableness of the limitations on prior art for the '197 patent set forth in ¶ 4 below.

4.    Within 60 days of the Court's claim construction order, Defendants accused of infringing the '197 Patent in each case shall reduce the number of asserted prior art references to 6 per asserted patent claim of the '197 Patent. A "prior art reference" will include both (1) a single patent, publication, product, etc. (a "primary reference"), and (2) up to three other references to be included in a single obviousness combination with each primary reference. Each Defendant shall be permitted to amend the prior art asserted pursuant to this paragraph only upon a showing of good cause.

5.    The dates for expert discovery (¶ 3(h)(i-ii)) and dispositive motions (¶ 13) in the Amended Scheduling Order governing these actions are hereby vacated. Expert discovery shall proceed as follows:

    a.    For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due within 60 days of the Court's claim construction order.

b. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due within 90 days of the Court's claim construction order.

c. Reply expert reports from the party with the initial burden of proof are due within 120 days of the Court's claim construction order.

d. Within 180 days of the Court's claim construction order, expert discovery shall close.

6.    Within 210 days of the Court's claim construction order, in each action in which Plaintiff has asserted the '197 Patent, Plaintiff shall further reduce the number of claims of the '197 Patent asserted against each defendant to no more than 15.   For avoidance of doubt, "defendant" shall mean each defendant group in each case, and not each individually named defendant.  For multiple dependent claims, each possible dependency shall be counted as an asserted claim, except that if Plaintiff identifies specific dependencies for a multiple dependent claim, each identified dependency counts as a single asserted claim, and unidentified dependencies are deemed no longer asserted.  Plaintiff shall be permitted to amend the claims asserted pursuant to this paragraph only upon a showing of good cause.

7.    Defendants' request to bifurcate discovery on the issue of willfulness is denied.

8.    Defendants' request to bifurcate trial on the issue of willfulness is denied without prejudice.

_____
The Honorable Leonard P. Stark

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC; AT&T MOBILITY II LLC, NEW CINGULAR WIRELESS SERVICES, INC., SBC INTERNET SERVICES, INC., WAYPORT, INC., AND CRICKET WIRELESS LLC <br><br> Defendants, <br><br> and <br><br> SIERRA WIRELESS AMERICA INC., <br><br> Intervenor. | Civil Action No. 12-cv-193-LPS <br><br> JURY TRIAL DEMANDED |
| INTELLECTUAL VENTURES II LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, AT&T MOBILITY II LLC, NEW CINGULAR WIRELESS SERVICES, INC., SBC INTERNET SERVICES, INC., AND WAYPORT, INC., <br><br> Defendants. | Civil Action No. 13-cv-1631-LPS <br><br> JURY TRIAL DEMANDED |

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC. AND T-MOBILE US, INC.,<br><br>    Defendants. | Civil Action No. 13-cv-1632-LPS<br><br>JURY TRIAL DEMANDED |
| INTELLECTUAL VENTURES II LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC. AND T-MOBILE US, INC.,<br><br>    Defendants. | Civil Action No. 13-cv-1633-LPS<br><br>JURY TRIAL DEMANDED |
| INTELLECTUAL VENTURES I LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NEXTEL OPERATIONS, INC., SPRINT SPECTRUM L.P., BOOST MOBILE, LLC AND VIRGIN MOBILE USA, L.P.,<br><br>    Defendants,<br><br>    and<br><br>SIERRA WIRELESS AMERICA INC.,<br><br>    Intervenor. | Civil Action No. 13-cv-1634-LPS<br><br>JURY TRIAL DEMANDED |

2

INTELLECTUAL VENTURES II LLC,

    Plaintiff,

    v.

NEXTEL OPERATIONS, INC., SPRINT SPECTRUM L.P., BOOST MOBILE, LLC, AND VIRGIN MOBILE USA, L.P.,

    Defendants.

Civil Action No. 13-cv-1635-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES I LLC,

    Plaintiff,

    v.

UNITED STATES CELLULAR CORPORATION,

    Defendant.

Civil Action No. 13-cv-1636-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES II LLC,

    Plaintiff,

    v.

UNITED STATES CELLULAR CORPORATION,

    Defendant.

Civil Action No. 13-cv-1637-LPS

JURY TRIAL DEMANDED

## SECOND SCHEDULING ORDER

This day of _____, 2015, the Court having conducted a Case Status Conference pursuant to Local Rule 16.2(a) and Judge Stark's Revised Procedures for Managing Patent Cases (which is posted at http://www.ded.uscourts.gov; see Chambers, Judge Leonard P. Stark, Patent Cases) on May 12, 2015, and the parties having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding arbitration;

3

IT IS HEREBY ORDERED that:

1.      This Order supplements the Court's First Scheduling Order (C.A. No. 12-193, D.I. 93), all terms of which shall remain in force except as otherwise provided below.

2.      <u>Oral Argument on Motion for Judgment on the Pleadings</u>:  The Court will hear oral argument on Defendants' Motion for Judgment on the Pleadings of Invalidity Under Section 101 (C.A. No. 12-193, D.I. 458) on [Plaintiffs' proposal: _____, 2015] [Defendants' proposal: July __, 2015], starting at __ am/pm. *November 24, 2015 at 9:00 a.m.*

3.      <u>Fact Discovery</u>:  All fact discovery shall be commenced to as to be completed on or before **August 31, 2015**.

      a.      <u>Narrowing of Claims and Prior Art References</u>

            i.      **[[Plaintiffs' Proposal]]** By **June 26, 2015**, Plaintiffs shall provide their final identification of accused products and narrow the set of already-asserted claims down to three already-asserted claims per common specification.  Should Plaintiffs drop all claims in a common specification against any defendant, the three claims attributable to that patent may be redistributed to another specification.  **[[Defendants' Proposal]]** By **June 26, 2015**, Plaintiffs shall provide their final identification of accused products and narrow the set of already-asserted claims down to three (3) already-asserted claims per common specification.  If Plaintiffs elect to no longer assert a patent, the three claims allocated to that patent specification shall not be re-allocated to the remaining asserted patents.

    ii.       By **July 24, 2015**, Defendants shall identify their selection of no more than six primary references/systems per asserted claim and no more than twelve combinations of references/systems per asserted claim for their obviousness case.

    b.    <u>Final Contentions.</u>

        i.       By **September 14, 2015**, Plaintiffs shall provide final infringement contentions.

        ii.       By **October 7, 2015**, Defendants shall provide final invalidity contentions.

4.    <u>Expert Discovery</u>

    a.    All expert discovery shall be completed by **August 31, 2016**.

    b.    <u>Disclosure of Expert Testimony.</u>

        i.       [Plaintiffs' Rroposal] <u>Expert Reports.</u> For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before **November 23, 2015**. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before **March 31, 2016**. Reply expert reports from the party with the initial burden of proof are due on or before **June 1, 2016**. No other expert reports will be permitted without either the consent of all parties or leave of the Court.

            **[Defendants' Proposal]** <u>Expert Reports.</u> The parties are permitted to serve opening and rebuttal expert reports only. For the party

5

who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before **December 18, 2015**. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before **May 20, 2016**. No other expert reports will be permitted without either the consent of all parties or leave of the Court.

Alternatively, should the Court order that expert reply reports be permitted: For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before **November 23, 2015**. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before **March 31, 2016**. Reply expert reports from the party with the initial burden of proof are due on or before **June 1, 2016**, and shall be limited to the issue of secondary considerations only. No other expert reports will be permitted without either the consent of all parties or leave of the Court.

ii.   Expert Report Supplementation. Whether expert declarations may be filed in connection with motions briefing (including case-dispositive motions) shall be determined at the Status Conference schedule pursuant to Paragraph 6 below.

iii.   Objections to Expert Testimony. To the extent any objection to

6

expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions to be set by the Court at the Status Conference pursuant to Paragraph 6 below.

5.    Motions to Strike.

a.    Any motion to strike any pleading or other document shall *NOT* be accompanied by an opening brief but shall, instead, be accompanied by a letter, not to exceed three (3) pages, describing the basis for the requested relief, and shall attach the document to be stricken.

b.    Within seven (7) days after the filing of a motion in compliance with this Order, any party opposing such a motion shall file a responsive letter, not to exceed five (5) pages.

c.    Within three (3) days thereafter, the moving party may file a reply letter, not to exceed two (2) pages, and, by this same date, the parties shall file a letter requesting a teleconference to address the motion to strike.

6.    Status Conference. The Court will conduct a status conference on **October 25, 2016** at 3:00 to discuss briefing on case dispositive and Daubert motions and further case narrowing. The parties shall file their proposals on **September 30, 2016**.

_____
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 3

Case 1:13-cv-00723-LPS   Document 360-1   Filed 07/22/15   Page 16 of 127 PageID #:
Case 1:10-cv-01067-LPS   Document 191-1   Filed 02/27/12   Page 16 of 36 PageID #:1561
6615

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

INTELLECTUAL VENTURES I, LLC,
                                    :   CIVIL ACTION
            Plaintiff,              :
                                    :
        v.                          :
                                    :
CHECK POINT SOFTWARE TECHNOLOGIES LTD., :
CHECK POINT SOFTWARE TECHNOLOGIES INC., :
McAFEE, INC., SYMANTEC CORP., TREND :
MICRO INCORPORATED, and TREND MICRO, :
INC. (USA),                         :   NO. 10-1067-LPS
            Defendants.             :
                                    - - -

                    Wilmington, Delaware
                Wednesday, February 22, 2012
                    *TELEPHONE CONFERENCE*

                            - - -

BEFORE:         HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

                            - - -

APPEARANCES:

            FARNAN, LLP
            BY:  BRIAN E. FARNAN, ESQ.

                and

            SUSMAN GODFREY L.L.P.
            BY:  BROOKE A.M. TAYLOR, ESQ.
                 (Seattle, Washington)

                and

            SUSMAN GODFREY L.L.P.
            BY:  RYAN C. KIRKPATRICK, ESQ.
                 (Los Angeles, California)

                    Counsel for Plaintiff


                            Brian P. Gaffigan
                            Registered Merit Reporter

Case 1:13-cv-00723-LPS   Document 360-1   Filed 07/22/15   Page 17 of 127 PageID #:
6616
Case 1:30-cv-01007-LPS   Document 101   Filed 02/27/12   Page 2 of 36 PageID #:1502

2

APPEARANCES:  (Continued)


                FISH & RICHARDSON, P.C.
                BY:  WILLIAM J. MARSDEN, JR., ESQ.


                        and


                FISH & RICHARDSON, P.C.
                BY:  BENJAMIN C. ELACQUA, ESQ.
                        (Houston, Texas)


                            Counsel for McAfee, Inc.


                MORRIS NICHOLS ARSHT & TAYLOR, LLP
                BY:  THOMAS C. GRIMM, ESQ.


                        and


                McDERMOTT WILL & EMERY, LLP
                BY:  YAR R. CHAIKOVSKY, ESQ.
                        (Menlo Park, California)


                        and


                McDERMOTT WILL & EMERY, LLP
                BY:  DAVID M. BECKWITH, ESQ.
                        (San Diego, California)

                            Counsel for Trend Micro Incorporated
                            and Trend Micro, Inc. (USA)


                MORRIS NICHOLS ARSHT & TAYLOR, LLP
                BY:  THOMAS C. GRIMM, ESQ.


                        and


                DURIE TANGRI, LLP
                BY:  CLEMENT S. ROBERTS, ESQ.
                        (San Francisco, California)

                            Counsel for Check Point Software
                            Technologies Ltd. and Check Point
                            Software Technologies Inc.

Case 1:30-cv-01007-LPS   Document 101-1   Filed 02/27/12   Page 33 of 36 PageID #:1503
3

APPEARANCES:  (Continued)

MORRIS NICHOLS ARSHT & TAYLOR, LLP
BY:  THOMAS C. GRIMM, ESQ.

and

LATHAM & WATKINS, LLP
BY:  YURY KAPGAN, ESQ.
(Los Angeles, California)

Counsel for Symantec Corp.

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  Telephone conference was held in chambers, beginning at 12:32 p.m.)

THE COURT:  Good afternoon, everybody.  This is Judge Stark.  Who is on the call, please?

MR. FARNAN:  Good afternoon, your Honor.  This is Brian Farnan on behalf of Intellectual Ventures.  And with me is Brooke Taylor and Ryan Kilpatrick from Susman & Godfrey.

THE COURT:  Good afternoon.

MR. GRIMM:  Good afternoon, your Honor.  I had to hesitate what time of day it was.  This is Tom Grimm, here in Wilmington on behalf of Morris Nichols.  I'm here on behalf of Symantec.  And on the line with me --

A VOICE:  Joining the conference.

THE COURT:  I'm sorry.  Mr. Grimm, go ahead.

MR. GRIMM:  My co-counsel is Yury Kapgan of Latham & Watkins.

THE COURT:  Okay.  Thank you.

MR. GRIMM:  I'm filling in today for Jack Blumenfeld is in trial and Karen Jacobs Louden.  Jack represents Check Point and his co-counsel is Clem Roberts of Durie Tangri in San Francisco.

MR. ROBERTS:  Good afternoon, your Honor.

MR. GRIMM:  Karen Jacobs Louden represents Trend Micro, and her colleague is on the phone today is Yar Chaikovsky.  Also with Yar is David Beckwith with McDermott Will & Emery.

THE COURT:  Thank you.

MR. MARSDEN:  Good afternoon, your Honor.  It's William Marsden from Fish & Richardson.  I'm sorry.  I dropped off for some reason but I'm for McAfee and I have my colleague Ben Elacqua on as well.

THE COURT:  Thank you.  Is there anybody else?

Okay.  Thank you.

I am here with my court reporter.  For the record, it is our case of Intellectual Ventures I LLC versus Check Point Software Technologies Limited met al, our Civil Action No. 10-1067-LPS.  Today's call is to address several discovery disputes, and I'd like to go through them one by

one.

We'll start first with the issues raised by the plaintiff.  And first there I want to address IV's request for an order directing that defendants limit their prior art references to no more than 20 within 30 days following IV's election of 20 asserted claims.  So on that, let's hear first from IV and then we will give defendants a chance to address that issue.

So go ahead, plaintiffs.

MS. TAYLOR:  Thank you, your Honor.  This is Brooke Taylor.

As you know, the Court ordered IV I to elect 20 asserted claims after the defendants argued we needed to streamline the case for trial.

Shortly following that order, IV I subsequently proposed to the defendants that they reciprocally limit the number of prior art references they will assert.  Though the of defendants offer to consider electing down the road, they refuse to commit to electing 20 prior art references within 30 days following IV I's election.

By stalling, the defendants want to hide the ball.  The defendants have asserted over 300 prior art references, the vast majority of those uncharted.  As defense counsel has admitted in meet and confers, they cannot possibly rely on as many references at trial.

Defendants know and absolutely will know once IV I elects its claims on which references they are relying.  Defendants want to keep this information hidden from IV as long as possible and at least until after IV I takes claim construction positions.

The scheduling order makes it crucial to resolve this issue now.  On May 4th, the parties will exchange a list of terms that we think are appropriate for construction by the Court.  On May 18th, we must propose constructions for the terms identified.  On May 25th, the parties must submit a joint claim construction chart to the Court.

If we wait to address the limitation of defendants prior art references until 30 days after our election, defendants will have succeeded in obscuring the most critical prior art references until after we have taken positions in the Markman proceeding.  If we wait until May to address this issue among the parties, it is unlikely the matter could be heard by the Court until June.

If defendants are truly concerned that 20 references aren't enough, per your Honor's citation of the *Stamps.com* Federal Circuit decision, the defendants can approach IV I and, if necessary, the Court to show good cause why they need additional references.

As in *Stamps.com*, the defendants argue limiting themselves to 20 references denies them due process rights.

But as the Federal Circuit clearly articulated, so long as the Court is willing to consider our motion for good cause, it is not an abuse of process for the Court to impose these kinds of limits.

Defendants should not be permitted to kick the can down the road by telling IV I and the Court that they will streamline as they see fit after they get IV I's elections. This effectively precludes the plaintiff from understanding defendants' invalidity arguments before the Markman. If this issue is not resolved now, it will unfairly prejudice IV I in a way that can't be remedied because the Markman proceedings are only a few months away.

THE COURT: I want to better understand that argument about prejudice. I mean the evidence that the Court needs to look to for construing the claims is presumably already set. Why does it matter what prior art defendants are going to rely on for invalidity purposes?

MS. TAYLOR: Well, your Honor, claim construction, of course, is not done in a vacuum. The plaintiff has served complete discovery infringement contentions and defendants have hidden their prior art among a mass of mostly uncharted references.

Defendants are now taking advantage of Intellectual Ventures's complete infringement contentions, picking their prior art in a way to construe the claims in

Case 1:10-cv-01067-LPS   Document 101-1   Filed 02/27/12   Page 8 of 36 PageID #:1508

a way that they can either avoid infringement and/or invalidate the patent so now we have what is an unfair playing field.

They even insisted we narrow down our claims and insisted we had to do that before the Markman in order to narrow the proceedings.  So now we'll have to laser focus in on a small number of claims, yet they will get to have a mass of prior art.  We won't really know which references they're relying on.  The vast majority of those remain uncharted and so they're seeking to gain an unfair advantage. If we have to take our Markman positions without knowing that prior art, they will have taken an unfair advantage of IV and caused prejudice.

THE COURT:  All right.  I know we're going to come later to the issue of your contentions regarding conception and reduction to practice date, but I think that may have implications here.

What happens if I do limit them to a certain number of prior art references at this time and then you ultimately move back the date that you're claiming the inventions were conceived or reduced to practice?  Would you agree that that should allow the defendants an opportunity to revise their prior art designations if they are limited at this time?

MS. TAYLOR:  Yes, your Honor.  Three points in

Case 1:30-cv-01007-LPS   Document 101-1   Filed 02/27/12   Page 9 of 30 PageID #:15069

response to that.

Yes, I think if the date is changed, that very well might constitute good cause, and we wouldn't be back here before you over any dispute.

But I also want to make clear I think the issue of conception and reduction to practice is a red herring. There, you can only swear back a year from the priority date. Even if we were to swear back, based on evidence that develops over the course of discovery, the defendants will surely contest that, as I'm sure that issue has been before you before about the date of invention.

If we were to swear behind, defendants are not going to concede then that whatever date we swear back to is the date to which we can claim priority. They're going to insist that that is not right. So they should know now what the time line is on prior art, and I don't think any evidence developing on that front really will change the game in any way.

THE COURT: All right. Putting aside that issue about the date for a moment, what about the alternative of requiring the defendants at this time to go ahead and fully chart however many of the 300 plus prior art references they may rely on? Is that a viable alternative from the plaintiff's perspective?

MS. TAYLOR: It is certainly better than

nothing, your Honor.  We certainly think we're entitled to complete charts at the time of our interrogatories were served.  We were owed an response in September and we got the incomplete charts in October.

But having been asked by the defendants and the Court to limit ourselves to 20 references to streamline the case, I don't understand why they would be able to maintain 300 references going forward.

THE COURT:  All right.  Thank you very much.

Who is going to speak for the defendants on this issue?

MR. ROBERTS:  Good afternoon, your Honor.  This is Clem Roberts from Durie Tangri, counsel for Check Point but speaking here on behalf of all of the defendants.

Your Honor, the first thing is that the plaintiff's argument is aimed at a little bit of a straw man.  The defendants actually agreed with IV that we, on the defense side, need to cut down the number of references to a manageable number, and we have agreed with IV to do that cut within 30 days of the time that IV elects its claim.

So the only question before your Honor is whether the number of references to which we cut should be set now in the abstract without knowing which claim they're asserting or whether it makes more sense to pick

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 11 of 36 PageID #: 1571

11

that number once we see which claims they're going to move forward with.

We think it makes a lot more sense to try to figure out how many prior art references we need, knowing within hand the number of the specifics claims at issue.

Let me give your Honor one example.

If your Honor looks at the '610 patent which is asserted in this case, there are two very different sets of claims.  Claims 1 through 42 are really directed to the concept of screening a computer virus within a telephone network before the infected messenger or infected information gets to the computer.

Claims 43 through 53 don't deal with that at all.  Instead, those are directed to the concept of introducing a potential virus into a model of a computer environment in order to see what it does.

IV introduced a virus into an emulated environment in order to detect whether or not it's a virus.  So these two sets of claims, I don't know why they didn't get a restriction requirement, water under the bridge, they didn't, but they're directed at very different sets of prior art.  And depending on whether they select claims from one group or just from both groups, we will need a different number of references to address those claims.

So, for example, your Honor, if they pick

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 12 of 36 PageID #: 1572

12

just claim 1 of the '610 patent, we have a pretty good anticipatory reference for claim 1 and we should therefore be able to address that with a single reference, or possibly, if we want, if we have less confidence, we have two references.

If they pick a deep dependent claim from the first set and a deep dependent claim from the second set, where our position on invalidity relies more on combinatorial obviousness, we may be required to use two references or three references for each of those two claims, in which case we might require four or five prior art references just to deal with two claims in the '610 patent.

So our point is, your Honor, that by selecting their claims, they're going to give or they're going to determine precisely how many prior art references we need. And we think that trying to say to the defendant, you know, you have 20 references now doesn't make sense until we see what claims that they have.

Once they have those claims, we have offered to come back within 10 or 15 days and say to them, here is a number of references that we think we need. We'll provide them within 30 days, a detailed chart of all those references. And,

We can come back in front of your Honor very quickly thereafter if they have a problem with the number of

references we selected and say to your Honor:  Your Honor, here are the references we have chosen.  Here is why we have chosen them with respect to the specific claims.  And,

Your Honor, at that point we will be able to evaluate whether we have chosen reasonably and selected a reasonable number in light of the particular specs and references of the prior art and in light of the particular claims they're asserting.

Two more points, if I may, your Honor.

The first is that when we drop references, we lose those references as a defense.  Your Honor may remember that the plaintiff has asserted that it can drop claims and still preserve them for later.

Regardless of whether or not that is true and without waiving any defense, it's clear that if we don't present those references to this Court, we don't necessarily get to preserve them for later assertion against these claims.  The Court itself has held this in previous cases involving assertion of references asserted in one trial and the insertion of a later trial.

So if the claims are found valid, we don't get to go back and litigate the validity as to the references we didn't present.  So we need to pick those references very carefully, and we need the flexibility to let the number of references reflect the specific claims at issue in the case.

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 14 of 36 PageID #: 1574

14

The other thing, your Honor, the last point I will make, is that there is nothing about setting an arbitrary limit on the number of references now that meets any legitimate need from IV's perspective.

I've heard they're concerned about claim construction. And as your Honor rightly points out, I don't think that the prior art references really should determine what the claims mean. But even if they do, we're willing to work with them on a schedule that gets them the prior art references that we're asserting with very detailed charts prior to May 4th, so that shouldn't be an issue.

The other thing that they mentioned is, well, gosh, you haven't charted the references. You are hiding the ball. You have all these uncharted references.

That misrepresents a little bit the history of the meet and confer, your Honor. What we told them very specifically was that we were going to chart the references that at this time we understood to be our strongest references and that there were a bunch of other references that were out there that we were exploring but that we didn't necessarily have, and I hoped to get some more information about.

So we provided them a list of uncharted references that we were exploring early in discovery to give them a heads up as to where we were going, but we also charted the references that we thought were really the most applicable.

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 15 of 36 PageID #: 1575

15

So I think that right now, fairly, they have a lot of information about why we think that these claims are invalid and the references that are really going to be our primary references going forward.

The conception date that your Honor mentioned actually gives us enormous concern.  Ms. Taylor mentioned that, oh, conception shouldn't matter because there is 102(b) and things sold more than a year beforehand, and it doesn't matter if they're more than a year, and they're going to argue about conception date.

But it actually does matter because many of the prior art systems that we're looking at developed over time.  So one of the things IV has accused of infringement is a product line from Trend Micro that goes back and that predates the patent.  That functionality in that product line changes over time.  Until we know what their claimed conception date is, we can't know which version of that Trend Micro product and, therefore, which functionality and which architecture we need to be relying on for prior art purposes.

What is or what isn't prior art with respect to Trend Micro, which is a very important prior art system, is completely opaque to us until they tell us what the priority date is, so it's very, very difficult.

What they're hoping to do is say, oh, chart how

all of the Trend Micro systems meet the patent, concede infringement of all of this stuff, and then after you do that, we'll tell you that the priority date is actually before all of them.  That is the box that they're attempting to put us in.

THE COURT:  But do you agree, Mr. Roberts, that the maximum that they could try to move the conception or reduction to practice date, the maximum is one year before the applications were filed?

MS. TAYLOR:  No, your Honor, because you can get a conception date.  I mean, yes, under 102(b), they can't go back further than that, but in terms of what they're claiming the conception date is, they can claim that the conception date is earlier.

So we're going to have an argument about what the conception date is, but -- I mean, sorry, my answer is a little unclear -- yes, that is the maximum critical date they can get is one year back.  No, they can argue for a conception date prior to that.

THE COURT:  Okay.  Thank you.  You spoke for all defendants on that; correct, Mr. Roberts?

MR. ROBERTS:  Yes, your Honor.

THE COURT:  Ms. Taylor, any response?

MS. TAYLOR:  Yes, your Honor.  If I could, just briefly.

The defendants came to this Court several months ago and argued that IV was trying to maintain maximum flexibility, and Mr. Roberts argued he understood that, is sympathetic to plaintiff wanting to do that but that it shouldn't be permitted, that we needed to streamline this case.  Yet the defendants don't want to live by the same rules that they sought and in the relief that they obtained from the Court to impose some restriction here.

We have 300 prior art references.  We have charts on a very limited number.  If the defendants are willing to tell us that that is the universe, the ones that we have charts on, and limit it to a number of 20, then we think those same rules should apply to defendants as are applying to Intellectual Ventures.

Again, the defendants raised this concern that what happens if they get our references and they need more references?  Well, what they can do is they can consult with us and they can say that they need more references and we are going to be reasonable.  But the idea that we should wait until May, as late as May to resolve this process puts us in sharp conflict with the scheduling order.

The claim construction process is going to move forward and the refusal to commit to a hard limit is exactly what is causing us to raise this issue with the Court now.

The example Mr. Roberts gave about the '610 and

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 18 of 36 PageID #: 1578

18

potentially needing four or five references, well, there are only four patents in suit.  So if you needed five references per patent, you would be at 20.  There is a very large gulf between 20 and 300, and so we do really believe it's appropriate and proper to ask the defendants to limit it to 20.  They haven't proposed any number that is somewhere between those.

We think 20 is the appropriate number.  And if they, after they make their elections, say they need 22 or 23, they can come to us and I'm confident we won't be back at the court over a dispute like that.

We should have had complete invalidity charts from the defendants in September, and we are here now before the Court in late February not only attempting to get a read on what the invalidity contentions are of the defendants but to ask them to limit them to a reasonable number.  And,

I think *Stamps.com* does address the issue of them working with us and then, if necessary, with the Court to come back to broaden that limit, if that is appropriate.

THE COURT:  Okay.

MR. ROBERTS:  Your Honor, if I could just correct one thing I said earlier?  I apologize.  I made an error.

When you are talking about system prior art, it's 102(e), not 102(b), so the one year limit doesn't apply

and yes, in fact, they can go more than a year.  I apologize, I gave you wrong information.

THE COURT:  Thank you for that clarification.

With respect to plaintiff's request here, I'm going to grant it in part and deny it in part.

Specifically, I am hereby ordering that defendants reduce their prior art references to no more than 30 and to do so within 21 days of the plaintiff's reduction of their asserted claims to the 20 as previously ordered by the Court.

I believe that is a fair accommodation and a proper exercise of discretion given the parties competing concerns as well as a schedule that has been in place for some time now and the Court's earlier ruling with respect to the plaintiff's election of asserted claims.

Let me add, if defendants feel, after they see the plaintiff's 20 asserted claims, they have good cause to seek an increase from the 30 prior art references, then they certainly are free to ask that of the Court.  Of course, they need to meet and confer with plaintiff first and see if you all can agree to raise it somewhat from 30, if that turns out to be the defendants' belief.

In addition to that, I encourage the parties to figure out if there is a way, given the Court's ruling, to work together to come up with a schedule or a schedule

Case 1:13-cv-00723-LPS   Document 360-1   Filed 07/22/15   Page 35 of 127 PageID #:
Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 20 of 36 PageID #: 1580
6634

20

revision, if need be, so that defendants can be held to

their representation that they are willing to make their

election and to complete their charting of those prior art

references that they're going to rely on and to do so before

May 4th.

So that is the Court's ruling with to the first

dispute.

Let's turn next to the plaintiff's second

issue, which is their request for an order compelling Trend

Micro to supplement its validity contentions and to provide

noninfringement contentions.  We'll hear first from the

plaintiff on that on as well.

MS. TAYLOR:  Thank you, your Honor.  I think

this issue is part and parcel with the issues we just

discussed.

As you can see in the samples attached to

Exhibit A and sort of excerpts from the defendants'

invalidity contentions, there are hundreds of exhibits

uncharted and simply listed on which the defendants might

reliably be heard that they are investigating these.

What we don't want to have happen here is a

situation of sandbagging.  At the outset of the case -- for

a scheduling order, the defendants had asked directly to

permit the defendants to delay invalidity contentions until

after IV I's infringement contentions were served.  The

Court rejected this proposal and required each party to answer interrogatories as they were served.

We served pre-discovery infringement charts in September of 2011, and as you heard, initially we got back the defendants' invalidity contentions that were due in September of that same month, September of 2011, and they listed they have no charts.  There was just a list of references.

We met and conferred and met and conferred and avoided troubling the Court even though we hadn't we received any chart, and defendants eventually provided some chart in October of 2011, yet the current version of invalidity contentions has 300 references with the vast majority of them again uncharted.

The defendant should provide complete charts for the references that they list and we would like supplementation --

MR. ELAQUA'S RECORDED VOICE:  Ben Elaqua for McAfee ...

A VOICE:  ... has left the conference.

THE COURT:  Sorry, Ms. Taylor.  Go ahead.

MS. TAYLOR:  Thank you, your Honor.

We would like supplementation within 14 days for any reference on which defendants will rely.  We again, the election issue was prominent, were required to elect our

claim by April 6, and before that election is made we are entitled to know what they assert as prior art.

The defendants shouldn't be allowed to wait until after we make the election and then tell us that one of the references that is uncharted is now a very important reference for them when they haven't provided the most basic of charts. If defendants don't want to supplement, the solution would then be to preclude them from relying on uncharted prior art.

Trend has complained that it cannot serve complete invalidity contentions regarding its own products which Mr. Roberts referenced. It wants until its contrived complaints about IV infringement contentions are resolved or until discovery is complete on conception and reduction to practice. This is a red herring.

IV wants infringement contentions contain to information and support for every single claim that IV could choose from when we are forced to do our election. The same cannot be said about Trend Micro's invalidity contentions which don't chart their own products.

A VOICE: ... has joined the conference.

MS. TAYLOR: Trend and the other defendants need to provide as much information as they have presently about invalidity contentions. If they wish to rely on Trend products as prior art, then those products should be charted.

Trend's novel conception, reduction to practice argument lacks merit because they know right now whether they think Trend's product anticipates or renders obvious IV Is claims.  Even if IV I had more information on conception, reduction to practice, it wouldn't make a practical difference for the reasons we discussed earlier.

We ask the Court for supplementation within 14 days for any uncharted reference defendants rely on so we can make informed elections of asserted claims.

THE COURT:  All right.  Ms. Taylor, so even the ruling that I have already given and the representation of the May 4th date for further charting from Mr. Roberts, that does not impact your position on this dispute?

MS. TAYLOR:  Your Honor, it's helpful insofar as we have claims, prior art references that have already been charted, but my concern is that there are hundreds of references that have not been charted.  We will make our elections assuming that Mr. Roberts and defendants have been genuine that the references that have been charted are the references.  And,

In fact, if that is not true, we will make our elections and then some time in May we will receive notification from the defendants that one of these references that is buried among the 300 is one of their few elected prior art references, and we should have that information before we

were forced to make our elections to the asserted claims.

THE COURT:  All right.

MS. TAYLOR:  It does help.  That earlier ruling certainly helps and we appreciate it.  The question is about the mass of uncharted references.

THE COURT:  And there is an argument in Trend Micro's letter that you did not adequately meet and confer with respect to your concern about their noninfringement contentions.  Should I understand they're correct about that?

MS. TAYLOR:  No, your Honor.  My colleague and partner Ryan Kilpatrick is on the phone, and I think you're right that is their claim as to noninfringement contentions. We raised this issue several times telephonically and are happy to submit a declaration on that point.

THE COURT:  All right.  I don't need anything further on that right now.

Who is going to speak for Trend Micro on these issues?

MR. ROBERTS:  Your Honor, this is Clem Roberts from Check Point.  Let me address the common issues, and Trend Micro may wish to address the specific Trend Micro issues.

Your Honor, the first thing is we are totally acting in good faith.  They have over 160 potential asserted claims against dozens and dozens of products, and the idea

they have served complete infringement contentions is a total fantasy.

We have, Check Point itself has dozens of product families for which we have no infringement contests of any kind.  They would give us a very summary high level cartoon-like chart pointing generally at a few pages from a book from one product and then say, all of your other products infringe in similar ways.  They haven't charted them.  They in fact use very different technologies across different product lines.  They haven't even begun to scratch the surface of it.

Despite that, your Honor, we took the position on them with the infringement contentions, look, potentially you guys need to look at our technology documents before you can give us greater infringement contentions so we will produce to us those docs and then you can supplement once you have that information.

On the invalidity side, we gave them all of the references that we were investigating.  We didn't hold back and supplement, which the Federal Rules of Civil Procedure allow you to do, as things unfold in discovery.

We were very up front with them in the beginning. Here is the universe of stuff, and here is the stuff thus far from this big universe that we've really analyzed in detail and that we think really reads on these references, but in an

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 26 of 36 PageID #: 1586

26

effort to try to like tell them where we're going and not to hide the ball, we tried to give them the full universe so that we weren't then coming up later with charts from things that they hadn't been on notice of, that they never had heard of.

That is what our approach was.  That is a good faith approach, an attempt to not hide the ball, not an attempt to hide the ball.

Point No. 2 is that with respect to the Trend Micro prior art, as we just discussed, without the conception and reduction to practice date, we have no idea what target date we're shooting at.  We simply don't know. If we go and we chart and we say here is a Trend Micro functionality that meets the claim limitations and therefore is prior art, they can then come back and say, ha, ha, our conception and reduction to practice date is before it.  You just conceded infringement.

So what we are asking for with respect to specifically the Trend Micro prior art is if you don't have any documents or if you don't have any evidence, that is fine, but just tell us what the date is that you are contending is your earliest conception and reduction to practice date.  Give us your earliest date so we at least know what it is we need to chart and what it is that is alleged to be not prior art.

What they have done in answering their

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 27 of 36 PageID #: 1587

27

interrogatory is to say it's at least as early as X.  So

it's at least as early.  They're trying to make it a floor

and not a ceiling, and that really doesn't allow us to look

at the spectrum of Trend Micro prior art and figure out what

is prior art and what is potentially an accused device.  We

just don't know how to do that.

So those are sort of the two points, Your Honor.

I think I will let Trend Micro address the specifics of

anything that relates to them.

THE COURT:  Okay.  Thank you.

MR. BECKWITH:  Your Honor, this is David

Beckwith spending on behalf of Trend Micro.

I think Mr. Roberts addressed most of the high

points.  I would add that it's our belief that your prior

ruling does address the concern that Intellectual Ventures

has expressed concerning access to information as well as

disclosure.

Once the claims are narrowed to 20, the Court

has provided a date certain by which they will have complete

charts and, as we understand it, part of the rationale for

that is to streamline the case.  It does not make sense that

we would chart multiple versions of Trend Micro systems on

all of the currently asserted claims.

So the information that we require in order

to achieve the sufficiency of streamlining the case is the

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 28 of 36 PageID #: 1588

28

conception and reduction to practice as well as the identification of the claims that Intellectual Ventures intends to pursue, and that really is how we're going to achieve that efficiency and avoid the scenario where we're charting multiple versions of different systems to claims that in the end are not going to be pursued by Intellectual Ventures.

THE COURT:  All right.  Mr. Beckwith, there is clearly some overlap between what we have just discussed and what ostensibly is Trend Micro's complaint about the plaintiff's interrogatory responses -- and I am running out of time quickly.  If there is anything you want to add, or Mr. Roberts, if not you, on behalf of your own affirmative request, you can go ahead and do that now, please.

MR. CHAIKOVSKY:  So, your Honor, this is Yar Chaikovsky on behalf of Trend Micro.  I will try to do it quickly.

I think this goes in contrast to what we heard from IV.  They haven't been prosecuting their case.  We have a complaint filed on December 18th.  At least with respect to Trend, 52 asserted claims.  There were infringement contests served back in September 12th of 2011.  There has been no supplementation until a day before this letter was due.  IV was drawing five claims that were asserted in light of this meet and confer process on the '610 patent.

Case 1:10-cv-01067-LPS   Document 181   Filed 02/27/12   Page 29 of 36 PageID #: 1589

29

At least with respect to Trend, our source code for our product has been available since November 18th of last year.  They've made no effort to review that source code in order to supplement even though, for example, with respect to the '155 patent, where one of the things we complain about, they state in their contentions that they will supplement because publicly available information is insufficient.  And they have made no effort to so supplement, even though we said that source code is available.

I know we're running out of time, and I have probably run out of time.  I can go into more detail.  I think we have in our letter.  But similar to their complaint that we provided them with a massive amount of information, here we have a lack of information and a lack of diligence in order for them to supplement and/or prosecute their case.

Now, we may see a better job of this done when they are forced to streamline the case and elect the claims as per your earlier order.  You know, at that time we may be coming back to you if we don't see a better effort of their drafting of their contentions or for them to review any of our code that we have made available to them since the end of last year.

THE COURT:  Thank you.  Were there any other defendants that wanted to add anything?

Okay.  Ms. Taylor, go ahead and respond both in

favor of your request and in response to the Trend Micro request.

MS. TAYLOR: Thank you, your Honor.

I want to address the Trend Micro issue, infringement contentions first. It is very important to understand that our contentions were served without any discovery.

As the default rules in Delaware require, the defendants are supposed to produce their core technical materials, including their internal documents and schematics. We have only in the last week received those, a 100,000 page production from Trend Micro which occurred after the Court's February 7th deadline to produce and specifically complete the document production.

So we will now look at those documents. We will get them loaded in an electronic database, we will review them, and we will supplement them as appropriate but it is disingenuous to suggest that we have been sitting on our hands. We did what we could with the publicly available materials and provided a very comprehensive and complete chart. Now we will look at the technical materials that we received from Trend in the past week and we will evaluate those and go forward.

Source code, as we told the defendants in the beginning, was not something we thought we would look to

Case 1:13-cv-00723-LPS Document 360-1 Filed 07/22/15 Page 46 of 127 PageID #: 6645

31

unless we needed to get that point. What we need was their internal technical documents, of which we have received 100,000 pages in the last week.

So that is the response to that issue, which I really don't think dovetails with the invalidity contentions. We're still in the situation where out of the 300 -- out of the over 200 uncharted references, we could be sandbagged with those after we make our elections.

I know we're running out of time. The other thing is we have not received any noninfringement contentions from Trend Micro. This is a case with over 200 pages of infringement contentions. It is inconceivable that they cannot give us any answer about why they think they don't infringe with citations to their products.

They may disagree with what we cited on an element-by-element basis on the claims that we asserted but we're entitled to know their noninfringement position, and they have refused to give us that material, and I'd like to have the Court order them do so now.

THE COURT: All right. Is there anything further, Mr. Beckwith?

MR. CHAIKOVSKY: This is Mr. Chaikovsky, responding on two issues there, your Honor.

One. I will tell the Court that the technical information that we produced is the beginning of this

February.  The answers will not be there.

For their case and for what they're attempting to prove, there are no schematics that show.  They will have to go to the code, and we made that clear to them since we produced the code since last November.  The only way for them to identify the elements that they have accused in these four patents is to go to the code at least with respect to various elements of the claims.  That has made clear to plaintiffs.  They do not want to listen to us that that is necessary.

Secondly, your Honor, with respect to the noninfringement contentions.  As we just mentioned, we have a duty to answer and we will be answering those contentions.

However, we shouldn't be doing makeshift work as they drop five claims from the '610 patent.  And as we have shown to them, they do not even have elements with respect to certain claims.  You know, our duty to prove non-infringement in a case where they have not even established a case -- that there is any infringement contention that puts us on on notice.

We don't understand, for example, how they can have that when, with respect to certain elements, they say, oh, we still need to see information to see how you possibly could infringe.

Should they be allowed to go on such a fishing expedition or, with respect to the '050 patent, they lump

together 15 products and different families of products and just say, oh, they all infringe in the same way.

It makes it very difficult for us to then give them the free work that they want given perhaps their business model, Intellectual Ventures' business model to identify what are the key issues in dispute. Otherwise, we will give them noninfringement contentions that say we do not do what you say in your infringement contentions. We can do that. I don't know how helpful that will be. They need to provide more in order for us to provide more.

THE COURT: Thank you. Was there anything further from Mr. Beckwith or Mr. Roberts?

MR. ROBERTS: This is Mr. Roberts.

The only thing I would add is I have not heard anything from Check Point's perspective about noninfringement contentions until these letters were exchanged. We have never been asked for noninfringement contentions.

The way we have dealt with IV specifically, your Honor, and I believe this is true for all defendants, is to say, look, when you provide us with adequate infringement contentions, we'll give you noninfringement contentions, but until I actually have infringement contentions, then tell me why it is we're accused of infringing. It's very difficult for me to provide satisfactory noninfringement contention.

THE COURT: All right. Thank you.

Mr. Beckwith, is there anything from you?

MR. BECKWITH:  Nothing further, your Honor.

MR. CHAIKOVSKY:  Judge Stark, one more comment from Mr. Chaikovsky for Trend Micro.

They made a comment with respect to the meet and confer process.  During this meet and confer process, yes, Mr. Kilpatrick once raised orally the issue of infringement contentions, there was nothing in writing, but our recollection is one oral discussion until these letters came forward.

THE COURT:  Okay.  Thank you.  I am nearly out of time, and I am prepared to give you my ruling on each of these remaining disputes.  By that, I mean both plaintiff's request for an order that Trend Micro be required to supplement at this time some of its contentions and Trend Micro's request that the plaintiff be required similarly to supplement some of their contentions at this point.

I have decided not to provide any additional relief on any of these requests at this time.  I view this as a discretionary decision and, candidly, these are always among the most difficult disputes to resolve.  But my feeling is that given the ruling already today plus the earlier ruling that this case is going to get moving in a very meaningful way very soon and I'm content at this point to let that play out and see where that goes.

In particular, as we know, the defendants will soon be learning what the no greater than 20 asserted claims are going to be.

The defendants will also soon, consistent with today's order, be limiting their prior art references to 30 or no more than 30 and will be charting their invalidity contentions by or around May 4th.

With respect to the issue of the date of conception or reduction to practice, it is my view that if the plaintiff makes a material change as to that date from what it has already contended in response to interrogatories at this point, that that would provide good cause potentially to modify the number or the actual identity of prior art references that defendants will be committing to in the very near future consistent with my order.

I have further considered the fact that the plaintiff represents that the technical documents that they have recently received from Trend Micro were materials that they were waiting on in order to further refine and supplement their contentions with respect at least to infringement.

So for all of these reasons, in weighing all the various factors, again I'm denying the requests here today.

Is there any question about what I have ruled, Ms. Taylor?

Case 1:13-cv-00723-LPS   Document 360-1   Filed 07/22/15   Page 51 of 127 PageID #: 6650

MS. TAYLOR:  No.  Thank you, your Honor.

THE COURT:  Mr. Roberts?

MR. ROBERTS:  No.  Thank you, your Honor.

THE COURT:  Mr. Beckwith?

MR. BECKWITH:  No.  Thank you, your Honor.

THE COURT:  Mr. Chaikovsky?

MR. CHAIKOVSKY:  No.  Thank you, your Honor.

THE COURT:  All right.  Thank you all very much for your time.  Good-bye.

(Telephone conference ends at 1:17 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Brian P. Gaffigan
Official Court Reporter
U.S. District Court

# EXHIBIT 4

Case 1:13-cv-00723-LPS Document 46 Filed 09/06/13 Page 1 of 16 PageID #:9505

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-1042-LPS |
| ARUBA NETWORKS INC. and DELL INC., | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-1043-LPS |
| CISCO SYSTEMS, INC., | ) | |
| Defendant-Counterclaimant. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-1044-LPS |
| MERU NETWORKS, INC., | ) | |
| Defendant-Counterclaimant. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-1045-LPS |
| RUCKUS WIRELESS INC., | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1143-LPS |
| | ) | |
| ADTRAN INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1144-LPS |
| | ) | |
| ALCATEL-LUCENT INC., and ALCATEL-LUCENT USA INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1147-LPS |
| | ) | |
| ENTERASYS NETWORKS INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1149-LPS |
| | ) | |
| BROCADE COMMUNICATIONS SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

Case 1:12-cv-01042-LPS Document 46 Filed 09/06/13 Page 3 of 16 PageID #:9507

| | | |
|---|---|---|
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1150-LPS |
| | ) | |
| NETGEAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1674-LPS |
| | ) | |
| MERAKI, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| REEFEDGE NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-412-LPS |
| | ) | |
| JUNIPER NETWORKS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SCHEDULING ORDER

This 5th day of September, 2013, the Court having conducted an initial Rule 16 scheduling conference pursuant to Local Rule 16.1(b), and the parties having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation or binding arbitration;

IT IS ORDERED that:

3

1.    <u>Rule 26(a)(1) Initial Disclosures.</u> Unless otherwise agreed to by the parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) within two (2) weeks of the date of this Order.

2.    <u>Discovery and Electronic Discovery Stipulation.</u> The parties have reviewed the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"). The parties propose to adopt the Court's Default Standard for Discovery with the following exceptions:

- Paragraph 4(a) disclosures shall be due within 60 days of the date of the Scheduling Order;

- Paragraph 4(b) disclosures shall be due by October 15, 2013. The parties further agree that, if a Defendant provides written notice to the Plaintiff that it reasonably deems the required document production to be unduly burdensome, the parties shall follow the provisions of modified Paragraph 5 of the Default Standard below by no later than September 16, 2013;

- Paragraph 4(c) disclosures shall be due by December 12, 2013; and

- Paragraph 4(d) disclosures shall be due by February 10, 2014.

- Paragraph 5 shall be modified to include the following:

  At any point during the discovery period, if a party is the recipient of a document request, or is otherwise under an obligation to produce documents, and reasonably deems the required document production to be unduly burdensome, the parties shall meet and confer in good faith to discuss options to reduce the costs and volume of discovery, including, but not limited to, methods for limiting the number of documents to be produced and methods for reducing the cost of document production. Absent a contrary agreement the

4

following procedure shall control:  Excel (and other spreadsheet) files, Framemaker files (which can be viewed using software on a personal computer (PC)), videos, audio files, and any other files that do not reasonably convert to a TIFF image may be produced in native format, will be designated by including a unique production number (i.e., Bates number) and appropriate confidentiality designation in the native document's file name. If a receiving party prints any native files, or portions of such files, the receiving party will ensure that the confidentiality of each page is treated as designated in the native document's file name.  All other types of ESI may be produced in native format in the first instance and will be designated by including a unique production number (i.e., Bates number) and appropriate confidentiality designation in the native document's file name. The receiving party has the right to identify up to 5,000 of these documents that the producing party must convert to TIFF image files.  The producing party shall convert and produce the TIFF image files within 10 business days of the request.  After the producing party has converted 5,000 documents to TIFFs (absent an agreement to enlarge that number or a showing of good cause), the parties shall split the costs of any additional conversions to TIFF image files requested by the receiving party.  The receiving party shall always have the option of printing any produced native documents with each page having the production number and appropriate confidentiality designation printed thereon, or otherwise creating TIFF image files at its own expense.

- The parties also agree to the following limitation regarding the number of asserted claims and asserted prior art.
  - o  In its 4(c) disclosures, ReefEdge shall include a Preliminary Election of Asserted Claims, which shall include no more than ten claims from each patent against

Defendants, and no more than a total of thirty claims overall.

o Defendants shall include no more than twelve prior art references against each patent, and not more than a total of thirty-six references in its paragraph 4(d) disclosures.[1]

o Not later than 30 days after the Court issues its Claim Construction Order, the patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent against Defendants from among the ten previously identified claims and no more than a total of 15 claims.

o Not later than 14 days after service of a Final Election of Asserted Claims, Defendants shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the thirty six prior art references previously identified, and no more than a total of 18 references.

o Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify this order for good cause shown. Any request to increase the limits contained in this order must specifically show why the inclusion of additional asserted claims or prior art references is warranted. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1202, 1312–13 (Fed. Cir. 2011).

3. <u>Joinder of Other Parties and Amendment of Pleadings</u>. All motions to join other parties, and to amend or supplement the pleadings, shall be filed on or before March 12, 2014.

---

[1] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

4. <u>Discovery and Pretrial Coordination</u>. The parties propose to coordinate eleven cases for purposes of discovery and pretrial on issues common to all defendants, including discovery concerning the patents-in-suit and claim construction, and for purposes of conducting a Markman hearing and summary judgment hearing. The eleven cases are ReefEdge Networks LLC v. Aruba Networks Inc. et al., C.A. No. 1:12-cv-1042; ReefEdge Networks LLC v. Cisco Systems Inc., C.A. No. 1:12-cv-1043; ReefEdge Networks LLC v. Meru Networks Inc., C.A. No. 1:12-cv-1044; ReefEdge Networks LLC v. Ruckus Wireless Inc., C.A. No. 1:12-cv-1044; ReefEdge Networks LLC v. Adtran Inc., C.A. No. 1:12-cv-1143; ReefEdge Networks LLC v. Alcatel-Lucent Inc. et al., C.A. No. 1:12-cv-1144; ReefEdge Networks LLC v. Enterasys Networks Inc., C.A. No. 1:12-cv-1147; ReefEdge Networks LLC v. Brocade Communications Systems Inc., C.A. No. 1:12-cv-1149; ReefEdge Networks LLC v. NETGEAR, Inc., C.A. No. 1:12-cv-1150; ReefEdge Networks, LLC v. Meraki, Inc., C.A. No. 1:12-cv-1674; and ReefEdge Networks, LLC v. Juniper Networks, Inc., C.A. No. 1:13-cv-412.

(a) Any submissions to the Court on issues common to all Defendants shall be captioned and filed in all the cases referred to above. All other submissions to the Court shall be filed only in the case to which they pertain.

5. <u>Discovery</u>. Unless otherwise ordered by the Court, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.

(a) <u>Fact Discovery Cut Off</u>. All fact discovery in this case shall be initiated so that it will be completed by July 14, 2014.

(b) <u>Document Production</u>. Document production shall be substantially complete by January 13, 2014.

(c)  Requests for Admission.  Unlimited requests for admission as to authenticity of documents are permitted.  A maximum of 25 additional common requests are permitted to Defendants collectively by Plaintiff and 35 additional requests are also permitted to each Defendant by Plaintiff.  A maximum of 25 additional common requests are permitted for Defendants collectively to Plaintiff, and 35 additional requests are also permitted for each Defendant.

(d)  Interrogatories.

(i)  A maximum of 15 common interrogatories are permitted to Defendants collectively by Plaintiff.  A maximum of 10 additional individual interrogatories are permitted to each Defendant by Plaintiff.  A maximum of 15 common interrogatories are permitted for Defendants collectively to Plaintiff.  A maximum of 10 additional individual interrogatories are also permitted for each Defendant.

(ii)  The Court encourages the parties to serve and respond to contention interrogatories early in the case.  In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof. The adequacy of all interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

(e)  Limitation on Hours for Deposition Discovery.  Plaintiff may take a total of 165 hours of depositions (and no more than 50 hours of fact depositions of each Defendant), excluding expert depositions.  Defendants in all of the cases collectively may take a total of 21 hours of deposition of Plaintiff and/or its licensing agent (e.g. IP Navigation) and/or others with a financial interest in the outcome of the litigation (e.g. Symantec), 42 hours total of depositions of the inventors of the patents-in-suit (and no more than 14 hours of deposition of each inventor),

8

Case 1:12-cv-01042-LPS Document 46-1 Filed 09/06/13 Page 9 of 16 PageID #: 9513

and 102 hours of third-party depositions, excluding expert, licensing agent, those with a financial interest in the outcome of the litigation and inventor depositions. Nothing in this scheduling order precludes a non-affiliated[2] third party from objecting to sitting for more than 7 hours for a deposition. In no event shall any single deposition exceed 7 hours on the record for a single day of testimony, subject to the local rules of this Court, unless the parties agree otherwise. Rule 30(b)(6) depositions may continue from day to day, subject to the limitation on total hours noted above. If additional hours for deposition discovery become necessary, the parties shall meet and confer to try to reach agreement on the number of additional hours needed, and thereafter, if unable to reach agreement, the parties may seek modification of this provision by submission to the Court.

    (f)    <u>Disclosure of Expert Testimony</u>.

    (i)    <u>Expert Reports</u>. For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosures of expert testimony are due on September 15, 2014. The supplemental disclosures to contradict or rebut evidence on the same matter identified by another party are due October 14, 2014. Reply expert reports from the party with the initial burden of proof are due November 4, 2014. No other expert reports will be permitted without either the consent of all parties or leave of the Court. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. Depositions of experts shall be completed on or before January 7, 2015.

---

[2] For purposes of this paragraph, "non-affiliated third party" means a third party that does not have a financial interest in the outcome of the litigation and/or is otherwise being compensated by a party for its participation in the litigation (excluding mere witness fees paid as part of a subpoena).

(ii)    Objections to Expert Testimony. To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

(g)    Discovery Matters and Disputes Relating to Protective Orders. Should counsel find they are unable to resolve a discovery matter or a dispute relating to a protective order, the parties involved in the discovery matter or protective order dispute shall contact chambers at (302) 573-4571 to schedule a telephone conference. On a date to be set by separate order, but not less than forty-eight (48) hours prior to the conference, the party seeking relief shall file with the Court a letter, not to exceed three (3) pages, outlining the issues in dispute and its position on those issues. On a date to be set by separate order, but not less than twenty-four (24) hours prior to the conference, any party opposing the application for relief may file a letter, not to exceed three (3) pages, outlining that party's reasons for its opposition. Should any document(s) be filed under seal, a courtesy copy of the sealed document(s) must be provided to the Court within one (1) hour of e-filing the document(s).

Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it. Alternatively, the Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference.

If a discovery-related motion is filed without leave of the Court, it will be denied without prejudice to the moving party's right to bring the dispute to the Court through the discovery matters procedures set forth in this Order.

10

(h)    E-Mail Service.  The parties have consented in writing to service by e-mail, in accordance with Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.  The parties also agree that, for purposes of computing deadlines for responses to pleadings or discovery requests when such deadlines are triggered by service of a document, the additional 3 days permitted by Rule 6(d) of the Federal Rules of Civil Procedure will apply, regardless of the manner of service.

6.    Application to Court for Protective Order.  Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court on or before July 19, 2013.  Should counsel be unable to reach an agreement on a proposed form of order, counsel must follow the provisions of Paragraph 5(g) above.

Any proposed protective order must include the following paragraph:

> Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as "CONFIDENTIAL," "CONFIDENTIAL -- OUTSIDE COUNSEL ONLY" or "HIGHLY RESTRICTED CONFIDENTIAL" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

7.    Papers Filed Under Seal.  When filing papers under seal, counsel shall deliver to the Clerk an original and one (1) copy of the papers.  In accordance with section G of the Administrative Procedures Governing Filing and Service by Electronic Means, a redacted

Case 1:12-cv-01042-LPS Document 48 Filed 09/06/13 Page 12 of 16 PageID #: 6663

version of any sealed document shall be filed electronically within seven (7) days of the filing of the sealed document.

8.    <u>Courtesy Copies</u>. The parties shall provide to the Court two (2) courtesy copies of all briefs and one (1) courtesy copy of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.). This provision also applies to papers filed under seal.

9.    <u>ADR Process</u>. These matters are referred to a magistrate judge to explore the possibility of alternative dispute resolution.

10.    <u>Interim Status Report</u>. On March 17, 2014, counsel shall submit a joint letter to the Court with an interim report on the nature of the matters in issue and the progress of discovery to date. Thereafter, if the Court deems it necessary, it will schedule a status conference.

11.    <u>Tutorial Describing the Technology and Matters in Issue</u>. Unless otherwise ordered by the Court, the parties shall provide the Court, no later than the date on which their opening claim construction briefs are due, a tutorial on the technology at issue. In that regard, the parties may separately or jointly submit a DVD of not more than 30 minutes. The tutorial should focus on the technology in issue and should not be used to argue claim construction contentions. The parties may choose to file their tutorial(s) under seal, subject to any protective order in effect. Each party may comment, in writing (in no more than 5 pages) on the opposing party's tutorial. Any such comment shall be filed no later than the date on which the answering claim construction briefs are due. As to the format selected, the parties should confirm the Court's technical abilities to access the information contained in the tutorial.

12.    Claim Construction Issue Identification. If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on January 13, 2014, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction. Subsequent to exchanging that list, the parties will meet and confer to prepare a joint list of term(s)/phrase(s) for construction. This document will not be filed with the Court. On January 27, 2014, the parties shall exchange their proposed claim construction of those term(s)/phrase(s). This document will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be filed no later than February 10, 2014. The parties' Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent(s) in issue as well as those portions of the intrinsic record relied upon shall be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

13.    Claim Construction Briefing. The Plaintiff and the Defendants in all of the cases collectively shall contemporaneously submit initial briefs on claim construction issues, not to exceed 45 pages, on March 10, 2014. The Plaintiff and the Defendants in all of the cases collectively shall contemporaneously submit answering/responsive briefs, not to exceed 30 pages, on March 31, 2014. No reply briefs or supplemental papers on claim construction shall be submitted without leave of the Court.

14.    Hearing on Claim Construction. Beginning at 9:00 a.m. on April 11, 2014 and subject to the convenience of the Court's calendar, the Court will hear argument on claim construction. The parties shall notify the Court, by joint letter submission, no later than the date

13

Case 1:13-cv-00728-LPS Document 360-1 Filed 07/22/15 Page 66 of 127 PageID #:
Case 1:12-cv-01042-LPS Document 48 Filed 09/06/13 Page 14 of 16 PageID #: 918
6665

on which their answering claim construction briefs are due: (i) whether they request leave to present testimony at the hearing; and (ii) the amount of time they are requesting be allocated to them for the hearing.

15.  Case Dispositive Motions.  All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before February 4, 2015 No case dispositive motion under Rule 56 may be filed more than ten (10) days before the above date without leave of the Court.  Each party is permitted to file as many case dispositive motions as desired.  Validity and common enforceability issues, if any, shall be addressed in a single, joint opening brief.  Each side is permitted to use no more than 30 combined pages for the opening briefs, 30 combined pages for the answering briefs and 20 pages for the reply briefs. For all other issues, each side will be limited to a combined total of 60 pages for all opening briefs (with a maximum of 20 pages filed by or addressed towards a single defendant group), each side will be limited to a combined total of 60 pages for all answering briefs (with a maximum of 20 pages filed by or addressed towards a single defendant group), and each side will be limited to a combined total of 20 pages for all reply briefs regardless of the number of case dispositive motions that are filed (with a maximum of 8 pages filed by or addressed towards a single defendant group)

16.  Applications by Motion.  Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

17.  Trial Scheduling Conference.  On [TBD and subject to the convenience of the Court's calendar], beginning at _____., the Court will hold a conference to discuss dates for the pretrial conferences and trials for these cases.

14

18. <u>Pretrial Conference</u>. On [TBD and subject to the convenience of the Court's calendar], the Court will hold the first pretrial conference in Court with counsel, beginning at _____. Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3). The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before [Pretrial Conference – 7 Days]. Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d)(1)-(3) for the preparation of the joint proposed final pretrial order. The Court will advise the parties at or before the above-scheduled pretrial conference whether an additional pretrial conference will be necessary.

19. <u>Motions *in Limine*</u>. Motions *in limine* shall not be separately filed. All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each party shall be limited to three (3) *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument and may be opposed by a maximum of three (3) pages of argument, and the party making the *in limine* request may add a maximum of one additional page in reply in support of its request. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three-(3) page submission (and, if the moving party, a single one (1) page reply), unless otherwise ordered by the Court. No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

20. <u>Jury Instructions, Voir Dire, and Special Verdict Forms</u>. Where a case is to be tried to a jury, pursuant to Local Rules 47 and 51, the parties should file (i) proposed voir dire,

15

Case 1:12-cv-01042-LPS   Document 48   Filed 09/06/13   Page 16 of 16 PageID #: 520

(ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms three (3) full business days before the date of the final pretrial conference. This submission shall be accompanied by a computer diskette containing each of the foregoing four (4) documents in WordPerfect format.

21.     Trial. The first matter will be scheduled for a five-day jury trial beginning at 9:30 a.m. on [TBD and subject to the convenience of the Court's calendar], with subsequent trial days beginning at 9:00 a.m. Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m. The trial will be timed and counsel will be allocated a total number of hours in which to present their respective cases.

UNITED STATES DISTRICT JUDGE

16

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REEFEDGE NETWORKS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-1042-LPS |
| ) | |
| ARUBA NETWORKS INC. and DELL INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| REEFEDGE NETWORKS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-1043-LPS |
| ) | |
| CISCO SYSTEMS, INC., ) | |
| ) | |
| Defendant-Counterclaimant. ) | |
| ) | |
| REEFEDGE NETWORKS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-1044-LPS |
| ) | |
| MERU NETWORKS, INC., ) | |
| ) | |
| Defendant-Counterclaimant. ) | |
| ) | |
| REEFEDGE NETWORKS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-1045-LPS |
| ) | |
| RUCKUS WIRELESS INC., ) | |
| ) | |
| Defendant. ) | |

REEFEDGE NETWORKS, LLC,                          )
                                                 )
                    Plaintiff,                   )
                                                 )
        v.                                       )        C.A. No. 12-1143-LPS
                                                 )
ADTRAN INC.,                                     )
                                                 )
                    Defendant.                   )

REEFEDGE NETWORKS, LLC,                          )
                                                 )
                    Plaintiff,                   )
                                                 )
        v.                                       )        C.A. No. 12-1144-LPS
                                                 )
ALCATEL-LUCENT INC., and ALCATEL-               )
LUCENT USA INC.,                                 )
                                                 )
                    Defendants.                  )

REEFEDGE NETWORKS, LLC,                          )
                                                 )
                    Plaintiff,                   )
                                                 )
v.                                               )        C.A. No. 12-1147-LPS
                                                 )
ENTERASYS NETWORKS INC.,                         )
                                                 )
                    Defendant.                   )

REEFEDGE NETWORKS, LLC,                          )
                                                 )
                    Plaintiff,                   )
                                                 )
v.                                               )        C.A. No. 12-1149-LPS
                                                 )
BROCADE COMMUNICATIONS SYSTEMS )
INC.,                                            )
                                                 )
                    Defendant.                   )

2

REEFEDGE NETWORKS, LLC,                    )
                                           )
         Plaintiff,                        )
                                           )
v.                                         )        C.A. No. 12-1150-LPS
                                           )
NETGEAR, INC.,                             )
                                           )
         Defendant.                        )
_____        )
                                           )
REEFEDGE NETWORKS, LLC,                    )
                                           )
         Plaintiff,                        )
                                           )
v.                                         )        C.A. No. 12-1674-LPS
                                           )
MERAKI, INC.,                              )
                                           )
         Defendant.                        )
_____        )
                                           )
REEFEDGE NETWORKS, LLC,                    )
                                           )
         Plaintiff,                        )
                                           )
v.                                         )        C.A. No. 13-412-LPS
                                           )
JUNIPER NETWORKS INC.,                     )
                                           )
         Defendant.                        )

## SCHEDULING ORDER

This ___ day of September, 2013, the Court having conducted an initial Rule 16 scheduling conference pursuant to Local Rule 16.1(b), and the parties having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation or binding arbitration;

         IT IS ORDERED that:

3

1.    Rule 26(a)(l) Initial Disclosures.  Unless otherwise agreed to by the parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) within two (2) weeks of the date of this Order.

2.    Discovery and Electronic Discovery Stipulation.  The parties have reviewed the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").  The parties propose to adopt the Court's Default Standard for Discovery with the following exceptions:

- Paragraph 4(a) disclosures shall be due within 60 days of the date of the Scheduling Order;

- Paragraph 4(b) disclosures shall be due by October 15, 2013.  The parties further agree that, if a Defendant provides written notice to the Plaintiff that it reasonably deems the required document production to be unduly burdensome, the parties shall follow the provisions of modified Paragraph 5 of the Default Standard below by no later than September 16, 2013;

- Paragraph 4(c) disclosures shall be due by December 12, 2013; and

- Paragraph 4(d) disclosures shall be due by February 10, 2014.

- Paragraph 5 shall be modified to include the following:
  At any point during the discovery period, if a party is the recipient of a document request, or is otherwise under an obligation to produce documents, and reasonably deems the required document production to be unduly burdensome, the parties shall meet and confer in good faith to discuss options to reduce the costs and volume of discovery, including, but not limited to, methods for limiting the number of documents to be produced and methods for reducing the cost of document production.  Absent a contrary agreement the

4

following procedure shall control: Excel (and other spreadsheet) files, Framemaker files (which can be viewed using software on a personal computer (PC)), videos, audio files, and any other files that do not reasonably convert to a TIFF image may be produced in native format, will be designated by including a unique production number (i.e., Bates number) and appropriate confidentiality designation in the native document's file name. If a receiving party prints any native files, or portions of such files, the receiving party will ensure that the confidentiality of each page is treated as designated in the native document's file name. All other types of ESI may be produced in native format in the first instance and will be designated by including a unique production number (i.e., Bates number) and appropriate confidentiality designation in the native document's file name. The receiving party has the right to identify up to 5,000 of these documents that the producing party must convert to TIFF image files. The producing party shall convert and produce the TIFF image files within 10 business days of the request. After the producing party has converted 5,000 documents to TIFFs (absent an agreement to enlarge that number or a showing of good cause), the parties shall split the costs of any additional conversions to TIFF image files requested by the receiving party. The receiving party shall always have the option of printing any produced native documents with each page having the production number and appropriate confidentiality designation printed thereon, or otherwise creating TIFF image files at its own expense.

- The parties also agree to the following limitation regarding the number of asserted claims and asserted prior art.
    - o   In its 4(c) disclosures, ReefEdge shall include a Preliminary Election of Asserted Claims, which shall include no more than ten claims from each patent against

5

Defendants, and no more than a total of thirty claims overall.

o    Defendants shall include no more than twelve prior art references against each patent, and not more than a total of thirty-six references in its paragraph 4(d) disclosures.[1]

o    Not later than 30 days after the Court issues its Claim Construction Order, the patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent against Defendants from among the ten previously identified claims and no more than a total of 15 claims.

o    Not later than 14 days after service of a Final Election of Asserted Claims, Defendants shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the thirty six prior art references previously identified, and no more than a total of 18 references.

o    Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify this order for good cause shown. Any request to increase the limits contained in this order must specifically show why the inclusion of additional asserted claims or prior art references is warranted. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1202, 1312–13 (Fed. Cir. 2011).

3.    Joinder of Other Parties and Amendment of Pleadings.  All motions to join other parties, and to amend or supplement the pleadings, shall be filed on or before March 12, 2014.

---

[1] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

6

4.      Discovery and Pretrial Coordination.  The parties propose to coordinate eleven cases for purposes of discovery and pretrial on issues common to all defendants, including discovery concerning the patents-in-suit and claim construction, and for purposes of conducting a Markman hearing and summary judgment hearing.  The eleven cases are ReefEdge Networks LLC v. Aruba Networks Inc. et al., C.A. No. 1:12-cv-1042; ReefEdge Networks LLC v. Cisco Systems Inc., C.A. No. 1:12-cv-1043; ReefEdge Networks LLC v. Meru Networks Inc., C.A. No. 1:12-cv-1044; ReefEdge Networks LLC v. Ruckus Wireless Inc., C.A. No. 1:12-cv-1044; ReefEdge Networks LLC v. Adtran Inc., C.A. No. 1:12-cv-1143; ReefEdge Networks LLC v. Alcatel-Lucent Inc. et al., C.A. No. 1:12-cv-1144; ReefEdge Networks LLC v. Enterasys Networks Inc., C.A. No. 1:12-cv-1147; ReefEdge Networks LLC v. Brocade Communications Systems Inc., C.A. No. 1:12-cv-1149; ReefEdge Networks LLC v. NETGEAR, Inc., C.A. No. 1:12-cv-1150; ReefEdge Networks, LLC v. Meraki, Inc., C.A. No. 1:12-cv-1674; and ReefEdge Networks, LLC v. Juniper Networks, Inc., C.A. No. 1:13-cv-412.

(a)      Any submissions to the Court on issues common to all Defendants shall be captioned and filed in all the cases referred to above.  All other submissions to the Court shall be filed only in the case to which they pertain.

5.      Discovery.  Unless otherwise ordered by the Court, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.

(a)      Fact Discovery Cut Off.  All fact discovery in this case shall be initiated so that it will be completed by July 14, 2014.

(b)      Document Production.  Document production shall be substantially complete by January 13, 2014.

(c)    Requests for Admission.    Unlimited requests for admission as to authenticity of documents are permitted.  A maximum of 25 additional common requests are permitted to Defendants collectively by Plaintiff and 35 additional requests are also permitted to each Defendant by Plaintiff.  A maximum of 25 additional common requests are permitted for Defendants collectively to Plaintiff, and 35 additional requests are also permitted for each Defendant.

(d)    Interrogatories.

(i)    A maximum of 15 common interrogatories are permitted to Defendants collectively by Plaintiff.  A maximum of 10 additional individual interrogatories are permitted to each Defendant by Plaintiff.  A maximum of 15 common interrogatories are permitted for Defendants collectively to Plaintiff.  A maximum of 10 additional individual interrogatories are also permitted for each Defendant.

(ii)    The Court encourages the parties to serve and respond to contention interrogatories early in the case.  In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof.  The adequacy of all interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

(e)    Limitation on Hours for Deposition Discovery.  Plaintiff may take a total of 165 hours of depositions (and no more than 50 hours of fact depositions of each Defendant), excluding expert depositions.  Defendants in all of the cases collectively may take a total of 21 hours of deposition of Plaintiff and/or its licensing agent (e.g. IP Navigation) and/or others with a financial interest in the outcome of the litigation (e.g. Symantec), 42 hours total of depositions of the inventors of the patents-in-suit (and no more than 14 hours of deposition of each inventor),

8

and 102 hours of third-party depositions, excluding expert, licensing agent, those with a financial interest in the outcome of the litigation and inventor depositions. Nothing in this scheduling order precludes a non-affiliated[2] third party from objecting to sitting for more than 7 hours for a deposition. In no event shall any single deposition exceed 7 hours on the record for a single day of testimony, subject to the local rules of this Court, unless the parties agree otherwise. Rule 30(b)(6) depositions may continue from day to day, subject to the limitation on total hours noted above. If additional hours for deposition discovery become necessary, the parties shall meet and confer to try to reach agreement on the number of additional hours needed, and thereafter, if unable to reach agreement, the parties may seek modification of this provision by submission to the Court.

      (f)    <u>Disclosure of Expert Testimony</u>.

      (i)    <u>Expert Reports</u>. For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosures of expert testimony are due on September 15, 2014. The supplemental disclosures to contradict or rebut evidence on the same matter identified by another party are due October 14, 2014. Reply expert reports from the party with the initial burden of proof are due November 4, 2014. No other expert reports will be permitted without either the consent of all parties or leave of the Court. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. Depositions of experts shall be completed on or before January 7, 2015.

---

[2] For purposes of this paragraph, "non-affiliated third party" means a third party that does not have a financial interest in the outcome of the litigation and/or is otherwise being compensated by a party for its participation in the litigation (excluding mere witness fees paid as part of a subpoena).

9

(ii)    Objections to Expert Testimony. To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

(g)    Discovery Matters and Disputes Relating to Protective Orders. Should counsel find they are unable to resolve a discovery matter or a dispute relating to a protective order, the parties involved in the discovery matter or protective order dispute shall contact chambers at (302) 573-4571 to schedule a telephone conference. On a date to be set by separate order, but not less than forty-eight (48) hours prior to the conference, the party seeking relief shall file with the Court a letter, not to exceed three (3) pages, outlining the issues in dispute and its position on those issues. On a date to be set by separate order, but not less than twenty-four (24) hours prior to the conference, any party opposing the application for relief may file a letter, not to exceed three (3) pages, outlining that party's reasons for its opposition. Should any document(s) be filed under seal, a courtesy copy of the sealed document(s) must be provided to the Court within one (1) hour of e-filing the document(s).

Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it. Alternatively, the Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference.

If a discovery-related motion is filed without leave of the Court, it will be denied without prejudice to the moving party's right to bring the dispute to the Court through the discovery matters procedures set forth in this Order.

(h)    E-Mail Service. The parties have consented in writing to service by e-mail, in accordance with Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. The parties also agree that, for purposes of computing deadlines for responses to pleadings or discovery requests when such deadlines are triggered by service of a document, the additional 3 days permitted by Rule 6(d) of the Federal Rules of Civil Procedure will apply, regardless of the manner of service.

6.    Application to Court for Protective Order.  Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court on or before July 19, 2013.  Should counsel be unable to reach an agreement on a proposed form of order, counsel must follow the provisions of Paragraph 5(g) above.

Any proposed protective order must include the following paragraph:

> Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as "CONFIDENTIAL," "CONFIDENTIAL -- OUTSIDE COUNSEL ONLY" or "HIGHLY RESTRICTED CONFIDENTIAL" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

7.    Papers Filed Under Seal. When filing papers under seal, counsel shall deliver to the Clerk an original and one (1) copy of the papers. In accordance with section G of the Administrative Procedures Governing Filing and Service by Electronic Means, a redacted

11

version of any sealed document shall be filed electronically within seven (7) days of the filing of the sealed document.

8.    Courtesy Copies.  The parties shall provide to the Court two (2) courtesy copies of all briefs and one (1) courtesy copy of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.).  This provision also applies to papers filed under seal.

9.    ADR Process.  These matters are referred to a magistrate judge to explore the possibility of alternative dispute resolution.

10.    Interim Status Report.  On March 17, 2014, counsel shall submit a joint letter to the Court with an interim report on the nature of the matters in issue and the progress of discovery to date.  Thereafter, if the Court deems it necessary, it will schedule a status conference.

11.    Tutorial Describing the Technology and Matters in Issue. Unless otherwise ordered by the Court, the parties shall provide the Court, no later than the date on which their opening claim construction briefs are due, a tutorial on the technology at issue. In that regard, the parties may separately or jointly submit a DVD of not more than 30 minutes. The tutorial should focus on the technology in issue and should not be used to argue claim construction contentions. The parties may choose to file their tutorial(s) under seal, subject to any protective order in effect. Each party may comment, in writing (in no more than 5 pages) on the opposing party's tutorial. Any such comment shall be filed no later than the date on which the answering claim construction briefs are due. As to the format selected, the parties should confirm the Court's technical abilities to access the information contained in the tutorial.

12.    Claim Construction Issue Identification. If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on January 13, 2014, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction. Subsequent to exchanging that list, the parties will meet and confer to prepare a joint list of term(s)/phrase(s) for construction. This document will not be filed with the Court. On January 27, 2014, the parties shall exchange their proposed claim construction of those term(s)/phrase(s). This document will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be filed no later than February 10, 2014. The parties' Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent(s) in issue as well as those portions of the intrinsic record relied upon shall be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

13.    Claim Construction Briefing. The Plaintiff and the Defendants in all of the cases collectively shall contemporaneously submit initial briefs on claim construction issues, not to exceed 45 pages, on March 10, 2014. The Plaintiff and the Defendants in all of the cases collectively shall contemporaneously submit answering/responsive briefs, not to exceed 30 pages, on March 31, 2014. No reply briefs or supplemental papers on claim construction shall be submitted without leave of the Court.

14.    Hearing on Claim Construction. Beginning at 9:00 a.m. on April 11, 2014 and subject to the convenience of the Court's calendar, the Court will hear argument on claim construction. The parties shall notify the Court, by joint letter submission, no later than the date

13

on which their answering claim construction briefs are due: (i) whether they request leave to present testimony at the hearing; and (ii) the amount of time they are requesting be allocated to them for the hearing.

15.    Case Dispositive Motions.  All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before February 4, 2015 No case dispositive motion under Rule 56 may be filed more than ten (10) days before the above date without leave of the Court.  Each party is permitted to file as many case dispositive motions as desired.  Validity and common enforceability issues, if any, shall be addressed in a single, joint opening brief.  Each side is permitted to use no more than 30 combined pages for the opening briefs, 30 combined pages for the answering briefs and 20 pages for the reply briefs. For all other issues, each side will be limited to a combined total of 60 pages for all opening briefs (with a maximum of 20 pages filed by or addressed towards a single defendant group), each side will be limited to a combined total of 60 pages for all answering briefs (with a maximum of 20 pages filed by or addressed towards a single defendant group), and each side will be limited to a combined total of 20 pages for all reply briefs regardless of the number of case dispositive motions that are filed (with a maximum of 8 pages filed by or addressed towards a single defendant group)

16.    Applications by Motion.  Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

17.    Trial Scheduling Conference.  On [TBD and subject to the convenience of the Court's calendar], beginning at _____., the Court will hold a conference to discuss dates for the pretrial conferences and trials for these cases.

14

18.    Pretrial Conference. On [TBD and subject to the convenience of the Court's calendar], the Court will hold the first pretrial conference in Court with counsel, beginning at _____. Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3). The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before [Pretrial Conference – 7 Days]. Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d)(1)-(3) for the preparation of the joint proposed final pretrial order. The Court will advise the parties at or before the above-scheduled pretrial conference whether an additional pretrial conference will be necessary.

19.    Motions *in Limine*. Motions *in limine* shall not be separately filed. All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each party shall be limited to three (3) *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument and may be opposed by a maximum of three (3) pages of argument, and the party making the *in limine* request may add a maximum of one additional page in reply in support of its request. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three-(3) page submission (and, if the moving party, a single one (1) page reply), unless otherwise ordered by the Court. No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

20.    Jury Instructions, Voir Dire, and Special Verdict Forms. Where a case is to be tried to a jury, pursuant to Local Rules 47 and 51, the parties should file (i) proposed voir dire,

15

(ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms three (3) full business days before the date of the final pretrial conference. This submission shall be accompanied by a computer diskette containing each of the foregoing four (4) documents in WordPerfect format.

21.     Trial. The first matter will be scheduled for a five-day jury trial beginning at 9:30 a.m. on [TBD and subject to the convenience of the Court's calendar], with subsequent trial days beginning at 9:00 a.m. Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m. The trial will be timed and counsel will be allocated a total number of hours in which to present their respective cases.

 

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

PRAGMATUS MOBILE, LLC,                    :
                                          :          CIVIL ACTION
            Plaintiff,                    :
v                                         :
                                          :
AMAZON.COM INC.,                          :
                                          :          NO. 14-436-LPS
            Defendant.                    :
---------------------------------------
PRAGMATUS MOBILE, LLC,                    :
                                          :          CIVIL ACTION
            Plaintiff,                    :
v                                         :
                                          :
ASUSTEK COMPUTER INC., et al.,            :
                                          :          NO. 14-437-LPS
            Defendants.                   :
---------------------------------------
PRAGMATUS MOBILE, LLC,                    :
                                          :          CIVIL ACTION
            Plaintiff,                    :
v                                         :
                                          :
DELL, INC.,                               :
                                          :          NO. 14-438-LPS
            Defendant.                    :
---------------------------------------
PRAGMATUS MOBILE, LLC,                    :
                                          :          CIVIL ACTION
            Plaintiff,                    :
v                                         :
                                          :
HEWLETT-PACKARD COMPANY,                  :
                                          :          NO. 14-439-LPS
            Defendant.                    :
                                        - - -

                         Wilmington, Delaware
                       Tuesday, October 14, 2014
                         *Telephone Conference*

                                - - -

BEFORE:          HONORABLE **LEONARD P. STARK,** Chief Judge

                                - - -

PRAGMATUS MOBILE, LLC,                    :
                                          :   CIVIL ACTION
                    Plaintiff,            :
v                                         :
                                          :
LENOVO HOLDING COMPANY INC., et al.,      :
                                          :   NO. 14-440-LPS
                    Defendants.           :
----------------------------------------
PRAGMATUS MOBILE, LLC,                    :
                                          :   CIVIL ACTION
                    Plaintiff,            :
v                                         :
                                          :
CASIO COMPUTER CO. LTD., et al.,          :
                                          :   NO. 14-478-LPS
                    Defendants.           :
----------------------------------------

APPEARANCES:


          FARNAN, LLP
          BY:  BRIAN E. FARNAN, ESQ.


                 and


          AGILITY IP LAW
          BY:  PHILLIP W. MARSH, ESQ.
               (Menlo Park, California)


                    Counsel for Pragmatus Mobile, LLC


          ASHBY & GEDDES, P.A.
          BY:  STEVEN J. BALICK, ESQ.


                 and


          FARELLA BRAUN + MARTEL, LLP
          BY:  RODERICK M. THOMPSON, ESQ.
               (San Francisco, California)

               Counsel for Amazon.com, Inc.
               in Civil Action No. 14cv436-LPS

APPEARANCES: (Continued)


          MORRIS JAMES, LLP
          BY:  KENNETH LAURENCE DORSNEY, ESQ.

                  and

          TURNER BOYD, LLP
          BY:  JOSHUA M. MAZUR, ESQ.
               (Redwood City, California)

               Counsel for Asustek Computer Inc., et al.
               in Civil Action No. 14cv437-LPS


          RICHARDS LAYTON & FINGER, P.A.
          BY:  STEVEN J. FINEMAN, ESQ.

                  and

          FARELLA, BRAUN + MARTELL, LLP
          BY:  RODERICK M. THOMPSON, ESQ.
               (San Francisco, California)

               Counsel for Dell, Inc.
               in Civil Action No. 14cv438-LPS


          POTTER ANDERSON & CORROON, LLP
          BY:  RICHARD L. HORWITZ, ESQ.

                  and

          K&L GATES, LLP
          BY:  CURT HOLBREICH, ESQ.
               (San Francisco, California)

               Counsel for Hewlett-Packard Company
               in Civil Action No. 14cv439-LPS


          POTTER ANDERSON & CORROON, LLP
          BY:  RICHARD L. HORWITZ, ESQ.

               Counsel for Lenovo Holding Company Inc., et al.
               in Civil Action No. 14cv440-LPS

APPEARANCES:  (Continued)

> POTTER ANDERSON & CORROON, LLP
> BY:   RICHARD L. HORWITZ, ESQ.
>
>       and
>
> SILLS CUMMIS & GROSS, PC
> BY:   SCOTT D. STIMPSON, ESQ., and
>       KATHERINE M. LIEB, ESQ.
>       (New York, New York)
>
>             Counsel for NEC Corporation of America
>             in Civil Action No. 14cv478-LPS
>
>
>             Brian P. Gaffigan
>             Registered Merit Reporter

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following telephone conference was held in chambers, beginning at 12:19 p.m.)

THE COURT:  Good afternoon, everybody.  This is Judge Stark.  Who is there, please?

MR. FARNAN:  Good afternoon, Your Honor.  Brian Farnan on behalf of the plaintiff, and with me is Philip Marsh from Agility IP Law.

THE COURT:  Okay.

MR. BALICK:  Your Honor, Steven Balick for Ashby & Geddes for Amazon.  And I'm joined by Roderick Thompson from Farella Braun + Martel.

THE COURT:  Okay.

MR. DORSNEY:  Good afternoon, Your Honor.  Ken Dorsney for Asus from Morris James.  With me on the line is my co-counsel, Joshua Mazur from Turner Boyd.

THE COURT:  Okay.

MR. FINEMAN:  Good morning, Your Honor.  Steve Fineman at Richards Layton on behalf of Dell; and I also have Roderick Thompson from Farella Braun + Martel with me.

THE COURT:  Okay.

MR. HORWITZ:  Your Honor, it's Rich Horwitz from Potter Anderson on behalf of Lenovo by myself.

On behalf of HP, Curt Holbreich from K&L Gates.

And on behalf of NEC, Scott Simpson and Kate Lieb from Sills Cummis.

THE COURT:  Okay.  Thank you.

Is that everybody?

MR. FARNAN:  Yes, Your Honor.

THE COURT:  I have my court reporter here with me.  For the record, we're here to discuss scheduling in I believe it's seven related matters.  They all involve Pragmatus Mobile LLC as the plaintiff.  The first one is

versus Amazon.com Inc., it's our Civil Action No. 14-436-LPS, and the other matters are 14-437, 14-438, 14-439, 14-440, and 14-478.  So I am corrected.  I believe it's six matters and not seven.

I have reviewed the proposed scheduling order and wanted a chance to speak to you all about primarily what is in dispute there.  So let me here first from the plaintiff, please.

MR. MARSH:  Good morning, Your Honor.  Philip marsh from Agility IP Law on behalf of Pragmatus Mobile LLC, the plaintiff.  How would you like to do this, Your Honor?  Would you like to do paragraph by paragraph or what disputes remain, hearing from each side?

THE COURT:  I want to hear from you on anything you want to address first, and then I will turn to defendants.

MR. MARSH:  Oh, okay.

THE COURT:  So all of the issues that you want to be heard on, you should address.

MR. MARSH:  Okay.  Absolutely.  Thank you for the clarification.

So, Your Honor, we've substantially reached agreement on the scheduling order.  There remains six paragraphs where we have some disputed issues that we were not able to work out and we could use the Court's guidance on those issues.

The first issue is in paragraph 7(d) of the proposed scheduling order.  This relates to defendants' initial invalidity contentions.

With respect to that issue, Your Honor, the plaintiff -- well, first of all, we reached an agreement as to the date by which those should be served, and that is February 13th, 2015.

The dispute that remains is that we, the plaintiff here argues that the defendants' invalidity contentions should be a chart mapping reference to each of the claim elements, and the defendants should provide any reasons or motivations why one of ordinary skill would combine any of the references in any combinations asserted by the defendants.

It's our view, Your Honor, that that is the only way we're going to know what the defendants actual contentions are.  I think in some cases we have seen just kind of a laundry list of references thrown in, and that is really not going to be sufficient, especially here where Your Honor has requested or has ordered actually that we make a preliminary reduction of asserted claims before the claim construction hearing.  That's something that the defendants asked for and the Court agreed to in our last hearing.  In view of that, we really think it's necessary to understand what the defendants' position is with respect to

their invalidity contentions.

It's interesting, Your Honor, when we talked about this before, the parties, we actually had a call on August 18th, 2014. I remember it well because it was during a vacation that I had. During that call, I was told by the defendants that really our proposal was their understanding of how they needed to provide invalidity contentions anyway, so I'm a little surprised when we weren't able to reach agreement on this. But our view is that like what the defendants have told me, that that really is kind of the basic requirement for invalidity contentions.

The defendants here argue that the form paragraphs in 7(d) and 7(c) from the Court's form scheduling order, that those paragraphs are sufficient by themselves. And they alternatively argue if our proposal is adopted by the Court that the same specificity requirement should apply in paragraph 7(c).

Let me just say that here, the Court has asked us to change the form scheduling order, so sticking to the form scheduling order in our view doesn't make a lot of sense. What we're trying to address is a need that is caused by the deviation from the form scheduling order that the defendants requested and the Court agreed with and that is that initial reduction of claim terms. So in order for us to make a meaningful reduction, we really need to understand what their

contentions are in the initial invalidity contentions.  So that's really our position on that issue.

It's interesting.  I think you may see, as we discuss later in connection with paragraph 7(g), Your Honor will see that the defendants want to keep up to 60 prior art references.  That may be revealing as to why they don't want to chart these things.  But our view is that that really is something that we need to see.

Also, their comment about the same level of specificity in paragraph 7(c) should be, that it should be treated equally with whatever proposals are adopted here.  What we agree in general we'll find with equal treatment.  It doesn't make a lot of sense because paragraph 7(c) as a form order actually already addresses this and says that we need to have a claim chart and that we need to map the claim terms to the accused products.  So we're trying to address what we view as a difference between those two paragraphs and just make sure that we get an adequate disclosure from the defendants so we're able to make our initial reduction of claim terms.

So that is our position with respect to the dispute in paragraph 7(b).

Moving on to the next dispute, unless Your Honor has any questions.  That would be paragraph 7(f).

In that paragraph, there are competing proposals

with regard to the defendants' final invalidity contentions. Here again, the parties agree the final invalidity contentions should be served by October 2nd of 2015.

The difference comes here that the plaintiff argues that the final contentions should be within the scope of the initial invalidity contentions, but we make room for two exceptions. One would be any changes required because of claim construction and two would be any changes required because of new information not available to the defendants at the time of the initial contention.

The reason why we argued for this, Your Honor, is that we need to understand what the scope of the defendants' theories are going to be. The date we have agreed on, October 2nd, 2015, that is more than a month after the parties have agreed that we should make a final reduction on the asserted claim terms. That date, where we have agreed to make our final reduction on asserted claim terms, is August 28th.

What we are trying to avoid here through our proposal is the situation where there is an initial set of contentions and one theory. We then make our final reduction based on that and based on claim construction. Then the defendants come in and change their theory, and then we're stuck with some claims based on the wrong theory. So we're trying to avoid that situation. We really feel

like we need to understand that their final contentions are going to be within the scope of those theories set forth in their initial contentions with the exception of those two situations that I outlined.

We think this is actually pretty standard. I mean this is a situation where we feel like if they weren't within the theory, we could potentially move the Court for some relief. But we would like to build it in ahead of time before any dispute down the road.

Let's see. Here again, the defendants argue that the form paragraphs and the form scheduling order are sufficient. Again, this is another situation where we're actually trying to address something that the defendants requested a change from the form scheduling order in the form of another reduction, a final reduction of claim terms. And we're trying to address that by asking for a slight tweak of the form scheduling order with respect to what is required in their final contentions.

So it doesn't make a lot of sense in our view to say, hey, the form scheduling order is sufficient. We have already deviated from that, and we're just trying to make sure there is no dispute that arises from that deviation.

THE COURT: All right. You can go on to 7(g), please.

MR. MARSH: Thank you. Your Honor, if I could

just mention one thing.  If they're not required to keep within those contentions, then we might suggest that we need to flip that date for the final reduction until after their final contentions.  That might be another way to address that.

Paragraph 7(g), this relates to reductions of asserted claims and prior art.  Here again, we have agreement as to the date.  In this case, Your Honor, we argue that our initial reduction of claim terms should be March 6th of 2016.  That is after the defendants' initial reduction of prior art references.

The reason that we argued for that is we're more than happy to go first on contentions.  We're more than happy to go first in the final reduction of asserted claims and claim terms.  But there is really no reason for us to reduce the number of terms that we're asserting unless we understand what their defenses are.  So because we're going first in every other instance, Your Honor, we would suggest that it makes sense for the defendants here to go first with respect to their initial reduction of prior art references, to give us some guidance as to what their stronger defenses are and what really makes sense to reduce.  There is really no reason for us to reduce claims other than that we're required to do that, and we're just looking for some guidance here to help us do that.

THE COURT:  And remind me how many patents and

patent claims are there right now in this case?

MR. MARSH:  Yes.  So each claim, each of the six cases has one patent in common, which is the '795 patent.  There are two cases, the case against Dell and the case against HP, that have an additional patent, the '124 patent.  So with respect to the '795 patent, that patent has 33 claims in it.  The '124 patent has 21 claims.

Our initial proposal, as you saw, was a reduction of ten percent.  We were seeking -- with respect, let me address the '795 patent since that is common to every case.  Our thought was that we would go down to about 30 claims initially.  The reason that we said ten percent is we were just trying to come up with a rubric that would make a common proposal make sense across all the cases since there are different patents involved, but what we were thinking with respect to the '795 patent is we would go down to about 30 claims.

Now, Your Honor, I saw that recently on September 22nd, the Court had ordered, in the Enzo Life Sciences case, had ordered an initial reduction by the plaintiff down to no more than 25 asserted claims.  Now, that was actually after claim construction.  But even though we are before claim construction here, Your Honor, we would be happy to go down to 25 asserted claims for the '795 patent.

And then for the '124 patent, in the two cases

where that applies, we could go down, you know, maybe 15 would make sense.  We were thinking initially 18 to 19.  But if we went down to 15, that would make a total of 40 claims in the two cases that involve the two patents.  We think that that is a reasonable proposal.

The defendants had proposed no more than 15 total claims and no more than ten per patent.  In our view, first of all, that proposal is a little ambiguous to us because of the way that it applies across the different cases, whether there is one patent or two.  But it's also quite a Draconian cut.  What they're proposing is, because they're saying no more than 10 claims per patent, I mean that would reduce, that would cut 23 claims out of the '795 patent.  That is a reduction of more than 70 percent.  And if we use the maximum of 10 claims for the '795 patent, then we only have five remaining.  That would be a reduction of 76 percent with respect to the '124 patent in cases where that applies.

In our view, that is far too Draconian a cut for the initial claim reduction.  In fact, in our view, their proposal for the initial reduction is actually in the ballpark of what we could present at trial which is another indicator that it's going too far.

With respect to prior art, they argue -- so we have argued that the prior art references in the initial

reductions should be reduced to no more than 20 prior art references. We think that is a lot of references. That is pretty generous.

The defendants argue they should be limited to no more than 60 references. And then also, on top of that, they add this caveat that references that describe a single system, or here they call it an instrumentality, shall count as a single prior art reference. And that is no matter how much prior art references are describing that single system.

In our view, that is really unworkable as well. If we go by their proposal, I mean the total claims in both patents, before any cuts, is, there is 33 in the '795 and 21 in the '124. So that is a total of 54 claims.

They're essentially saying that they would like a new reference for every single claim and kind of not taking into account even that there is a lot of repetition and single references might apply across several claims. We think that is just, it's not really a meaningful reduction at all.

In addition, the proposal that as many references as they want that applied to a single system would count as one reference, in our view that is totally unworkable. We have actually seen this in several recent cases where defendants tend to cite a "system" and they say that the system anticipates whichever patent claims they're

asserting it against, but then their system, their evidence that the system supposedly anticipates is really a string of six or seven prior art references, so really what they're making is kind of an obviousness argument because they don't have references to make this anticipation argument.

So we submit that that is not really, that is not something we should have to deal with here. I mean I think that they should be limited to a number of references and make their position clear and not try to sneak in an anticipation reference or an anticipation argument that really is a dressed up obviousness argument, if that makes sense. So that is that paragraph in our disputes.

Oh, we also think that they're -- no, that is it for that paragraph.

Paragraph 7(h) deals with the final reduction numbers for asserted claims in the prior art.

Here we have agreement as to the dates, although as I mentioned before, the date of August 28th, 2015 for our final reduction of claim terms, if we're not able to get some specificity and maybe get them limited within the theories presented in their initial contention other than the two exceptions that I articulated, then we would suggest that maybe that date needs to be pushed back, and it might make sense to do that on October 2nd and have a simultaneous exchange.

That said, what we're arguing for here in connection with paragraph 7(h), we're arguing that the final reduction of claims should be, that that should actually be down to 15 claims per patent. We think that that is very reasonable. And,

In fact, I noted that in that recent Enzo Life Sciences case that I mentioned earlier that was issued by the Court on September 22nd, the Court actually went with a number of 15 per patent. I mean there is only one patent in suit there, but the Court said that the final reduction of asserted claims needed to be to more than 15. So we're right in line with that.

The defendants here are proposing that the final claims should be limited to no more than eight total, and no more than five claims per patent. We think, again, that is going way too far.

The limitation really hurts in the two patent cases, you know, the cases that involve both patents because in that scenario, if we're limited to five claims, which again we think that that is unreasonable on its face by itself, that in that case, then we would only have three claims left over for the other patent and that is really unworkable.

In our view, 15 is totally reasonable. It's totally in line with what this Court has done even very

recently in the Enzo Life Sciences case, and we don't think we should be limited beyond that.

Let's see. With respect to the prior art references, we argue that the defendants should be limited to no more than ten references on their final reduction. They argued for 20, and then they say not more than five for any single claim.

In our view, ten references is really even beyond what they'll be able to realistically present at trial. We believe this final reduction should really be final, so it should be the number that they intend to present at trial.

They propose 20 references, which there is no way they're going to be able to present 20 references at trial. And the five reference maximum per claim that they propose is really unrealistic. I mean essentially what they're contemplating is a five reference combination on a claim, and I don't think I have ever seen that be successful in recent history. In our view, that is an unreasonable proposal.

With respect to paragraph 8(b), this paragraph deals with the document production substantial completion date. The disagreement here is just mainly on dates. We propose April 16th, 2015. And they propose a couple months later, on June 12th, 2015.

In our view, the April date is much more appropriate here for two reasons:  One, it's before the interim status report which is on April 23rd.  And it's before the claim construction briefing which begins on April 17th.

We feel like we should know the discovery deficiencies, if any, before the interim status report.  I mean that is the whole point of the report is to address any deficiencies.  If we don't have a substantial completion by that date, then it's going to be very difficult for us to say exactly what those deficiencies are.  We would like to really solidify and understand where we stand before that interim status report.  Also, we believe we should have the benefit of substantially all of defendants' production by the time that we're drafting claim construction briefing.

Their proposed date actually comes after all of the briefing would be completed for claim construction.  And we don't understand why they would want to delay it until after the completion of claim construction briefing.  In our view, that is something that we really need before we get to claim construction, and there is no real reason for the two month delay.  I don't know what they really gain from that.

THE COURT:  Thank you.

MR. MARSH:  Finally --

THE COURT:  Yes.  Before I turn it over to

defendants, because we're starting to run out of time, is there a dispute on the number of claim terms that the Court will construe?  You have different proposals, but I couldn't tell if you have a dispute.

MR. MARSH:  Yes.  I think the only dispute is that they want to -- the main dispute is that they want to say that there is going to be no less than ten terms unless all parties agree.  We don't think that is really appropriate.  I mean they want to kind of force it up to ten terms and require that.  Our view is that that was the maximum that was set by the Court during the last hearing.

THE COURT:  But if you don't agree that it should be less than ten, then it would be ten; right?

MR. MARSH:  Right.  But I guess what I'm saying is, in our view, there probably are fewer than ten, but I think we should talk that out.  We should have an opportunity to land somewhere in the middle.  If we think there are three terms or five terms that should be in dispute, and they feel like that there are ten and that is the maximum set by the Court, the presumptive limit at least set by the Court, then in our view we should be able to land somewhere in between there because of the difference of opinion, and we shouldn't default up to the presumptive maximum that the Court set.

THE COURT:  All right.  Thank you.  Is there one

person speaking for the defendants?

MR. THOMPSON:  Yes, Your Honor.  This is Robert Thompson for both Dell and Amazon.  Others may have comments but I'm going to take the lead.

THE COURT:  Okay.  Go ahead.

MR. THOMPSON:  Thank you, Your Honor.

With respect to the last point first, the dispute is whether plaintiff could essentially have a veto power over five claim terms.  I think their position has been plain and ordinary meaning, no construction necessary, and that would effectively give them a chance to reduce it to five instead of ten.

We're happy to say that they can choose five or we can choose five, but we're concerned that the ten number will get down to five pretty quickly if the plaintiff has control over five.  So that is why we have suggested the language being that ten terms unless all parties agree to a lesser number.  Maybe we will all agree that we don't need all ten, but unless we all agree, we think it is prudent to keep all ten.

Your Honor, back to paragraph 7 where I think most of the dispute is.  That is the four subparagraphs.

To step back a moment, I think the real dispute here is one of timing and order.  Looking at the appendix to the proposal, the proposed scheduling order, I think it

comes out most clearly here where we list in order the dates proposed. And you will see, Your Honor, that the plaintiff's proposal is that they would provide initial claim chart on January 5 but would not have a reduction of claim terms at that time. So I guess we can anticipate a claim chart asserting every claim. That's 33 in one patent and 21 on the other. And they're proposing that they not have to reduce asserted claims until March 6th whereas you can see 7(d) and 7(g), those are the defendants obligations, the initial invalidity contentions and the initial reduction of prior art references are February 13.

Your Honor, we believe it makes no sense for defendants to be charting all invalidity contentions against all claims in both patents when we know and we just heard Mr. Marsh say they're going to be reducing their claim terms. They're not going to be asserting all claim terms in both patents. That is just a make-work exercise. We don't believe it's appropriate.

By the same token, it makes even less sense for us to have an initial reduction of prior art references before we even know what claims are being asserted in their initial reduction of asserted claims. We can't make a reduction of prior art references if we're assuming that all claims are being asserted against us as of February 13.

Therefore, we believe that both obligations, the

initial claim chart and the initial reduction of asserted claims, should take place on the same day, January 5, and then we would react to those with our invalidity contentions and initial reduction of prior art references on February 13.

Indeed, that is the way the parties have agreed that it should work for the final reduction. It certainly makes sense to do it for the initial reduction as well.

With respect to the content of the initial contentions, I think our point is simply that, I don't really think there is a dispute here. These parties are experienced counsel. We know what is acceptable in Delaware. We can be guided by our local counsel as to both the initial claim charts and the initial invalidity contentions. I don't think there is going to be a dispute there.

What we're concerned about again is the specificity that the plaintiff is suggesting in 7(d). If you apply that kind of specificity to every claim in both patents, which is what they're asking, that is a whole lot of work that doesn't need to be done.

Again, if the Court is inclined to impose some specificity, we do think, and I think Mr. Marsh was agreeing that it should be a two-way street and specificity should be required for both, we don't think that is a necessary exercise but it should be a two way street if it's done.

THE COURT: Mr. Thompson, help me understand

where it would be too much work and unnecessary to do the chart and disclose the motivation at 7(d).

MR. THOMPSON:  It would only be too much work, Your Honor, if we're charting against claims that would be dropped momentarily.  For example, the '124 patent only has one independent claim but it has 21 claims in all, so that is 20 dependent claims.  If we're having to chart to find references with respect to each of those, that is a big burden, and then the motivation to combine the same way.

We don't mind the specificity provided it's realistic, that is, against claims that are actually going to be in dispute and not a make-work exercise.

THE COURT:  You can go on.

MR. THOMPSON:  Thank you, Your Honor.

With respect to the number of claim terms, this is 7(g), ten percent, I think Mr. Marsh was suggesting he might be able to go to 25 claim terms in the '795 patent and -- sorry -- 15 claims, not terms, in the '124 patent. The '124 patent, as I mentioned, has only one independent claim.

First of all, if he is willing to make that kind of reduction before we have to respond, that would lessen our burden, but a ten percent reduction from 33 and 24 claims is really pretty meaningless.

With respect to the number of prior art

references, 60 admittedly is a large number, but right now, we have the prospect of having to chart against all claims in both patents, which is 54 claims, so that is why that number is large for us.  It certainly could be reduced if we have any more manageable number of claims being asserted.

I think the number of claims being asserted and the number of prior art references, that dispute is pretty well straightforward.  I will say that with respect to the final reduction, I heard Mr. Marsh say that his argument was we should, defendants should be limited to no more than ten references because we couldn't present more than that at trial.

Well, that is mixing apples and oranges.  This is the final contentions given, limiting the universe from which we will select references to assert at trial. Certainly, we're not necessarily going to be asserting all the references that are in the final invalidity contentions at trial.  We make that judgments before trial.  But that doesn't speak to a reason for imposing an arbitrary even more limiting number of references on us before trial.

So, Your Honor, that's the argument on 7(d), et cetera.  I really think it does come down, most importantly for defendants, to timing, just to make sure an orderly process proceeds with plaintiff reducing the number of claims asserted and us reacting to that so that we're not

doing something for nothing and the process is proceeding orderly.

With respect to the substantial completion date for document production, to give Your Honor some perspective, we all have received common requests for production of documents recently, 92 in number. There is going to be an effort I think to impose a very large burden about document production, so we suggest that June 12th is a more realistic date to comply with the demands that the plaintiff is imposing. That is why we suggested April 16 would just be too quick for that.

And, Your Honor, I did touch on the reduction of claim terms earlier. The one nuance that may not be apparent is -- this is page 15 of the scheduling order. There is a slight, and I underscore "slight," disagreement about the form of the joint claim construction chart. And it may be a little subtle, but the idea that is called out, of course, is that the parties will exchange claim terms and proposed constructions and then meet and confer and try to agree on as much we can. And then for all terms remaining in dispute, we'll prepare a joint claim construction chart to be submitted to the Court.

Defendants suggest that in that chart we should give to the Court all of the disputed claim terms and then indicate which of those terms will be identified as the ten

that would be briefed.

Plaintiff just wants to cover the ten that will be briefed and not cover the earlier or the other claim terms that we would have discussed and debated and have a disagreement about.

Your Honor indicated that it might be necessary to go beyond ten claim terms at some point. We would just like to make sure that the parties' efforts are reported in a way that could be picked up and discussed later on, if necessary.

THE COURT: All right. Thank you. One question for you. Back on 7(h). With respect to the asserted prior art references, this parenthetical you have in your proposal of not more than five for any one asserted claim, what is that accomplishing?

MR. THOMPSON: That's accomplishing -- I think Mr. Marsh's concern was that we would be using the same references multiple times against one claim, so that if -- I think that was really trying to address his concern that there would be overkill on the number of obviousness references. I don't think that is an important point either way, though.

THE COURT: All right. Does any other defendant want to be heard?

MR. MAZUR: Yes, Your Honor. Sorry. This is Joshua Mazur for the Asus defendants. I just wanted to add

briefly to Mr. Thompson's comments about specifically paragraph 7(f).

Again, on 7(d), there is a specific note on defendants' proposal that if initial specificity is required for defendants' contentions, the same should apply to plaintiff.

I would add that if you do adopt plaintiff's proposal on 7(f) that these same requirements shall also apply to plaintiff's charts and the scope of plaintiff's infringement contentions, their final infringement contentions.

The other point, Your Honor, was on paragraph 8(b) on the document production.  Frankly, it's very hard for us to know at this point how burdensome the document gathering process is going to be.  We don't receive plaintiff's identification of the accused products until this Friday.

If it's ten products, that will obviously be a lot less burdensome and potentially would be achievable by April 2015.  If we are talking about a thousand products, getting it, having that initial two months would make a huge difference, Your Honor.  Simply, we just don't know at this point.  Plaintiff hasn't set the scope of the case yet.

Those are my comments, Your Honor.  Thank you.

THE COURT:  Mr. Mazur, or maybe back to

Mr. Thompson, help me.  Going back to the specificity.  The additional specificity the plaintiff is calling out is very specific to invalidity.  What additional particular specificity would you be looking for me to require from them in terms of infringement if I were to go with their language on the invalidity contentions?

MR. MAZUR:  Your Honor, this is Joshua Mazur again.

As to 7(f), they proposed that our final invalidity contentions shall be limited to the scope of the theories set forth in our initial invalidity contentions with two exceptions that were identified earlier.

We would simply say or, sorry, Asus would simply say, and I'm not sure if the other defendants join, that if that holds for invalidity contentions, it also should hold that for infringement contentions, the final infringement contentions must be within the scope of the theories set forth in the initial infringement contentions.  Plaintiff can't go off on a new theory that would reset the scope of the case.

THE COURT:  Okay.  Thank you.  Is there any other defendant on that point or anything else?

MR. THOMPSON:  Yes, Your Honor.  This is Roderick Thompson again.  Just very quickly.

We had considered referring to local rules from other courts but thought that was not appropriate.  But the

standard local rules of several other courts for patents will spell out specificity with respect to both the initial and final infringement contentions of a similar scale to what Mr. Marsh has proposed here.

THE COURT:  Thank you.  Is there any other defendant?

All right.  Thank you.  Well, since we're nearly out of time, I don't have time for any rebuttal here.

Let me give you my rulings and some dates.  The end result of this is I want to see a revised scheduling order reflecting today's discussion and rulings, and let me have it by Friday of this week, please.

I think the first dispute is at page 6, and it has to do with these contentions.

I'm going to go with what the plaintiff has proposed here as 7(d) and 7(f).  And I am going to further impose on the plaintiff that for their final infringement contentions that they be within the scope of their earlier contention unless they can show some good cause to deviate from that.

I think in light of the scope of this case and the number of parties and the fact that I am going to require plaintiff to a couple of times reduce the number of asserted claims, and I am going to require them to do that first, it will be helpful to ensure, particularly since there is no

dispute substantively, but ensure in the order that this specificity the plaintiff is looking for in terms of the initial and final invalidity contentions is going to be forthcoming from the defendants.  It will help the case move along according to the way in which we all envision that it should.  So that is 7(d) and 7(f).

Turning to 7(g).  In terms of the date, we'll adopt the defendants' dates.  So, again, the plaintiff will need to reduce the asserted claims first.  And the number will be no more than 20 asserted claims from the '795 patent and no more than 10 from the '124 patent.  I think that that is reasonable in light of the number of claims and again in light of the scope of the case and in light of the necessary reducing and focusing of the case that will be necessary.

Then in terms of the prior art references, the defendants will have to make an initial reduction down to no more than 30 prior art references, and I will keep the language that the defendants have proposed with respect to prior art instrumentality.  I think this is a reasonable reduction being required by the Court and is all the more reasonable in light of the number of claims that will be left in the case at that point.

Moving on to 7(h), the final reduction.  We'll go with the defendants' language here but the numbers will be different.  The plaintiff can keep up to ten claims of

the '795 patent and up to five claims of the '124 patent at that point in the case.

And then the prior art references, again, we'll go with the defendants' language here, but it will be no more than 15 references, so no more than a total of 15 prior art references at that point.

Again, I see that all as a reasonable focusing of the case as it proceeds.

In terms of document production, date for substantial completion, I'm going to adopt the plaintiff's proposal here of April 16, 2015.  That is primarily because I think if it can be done, it will be helpful for the plaintiff, as it suggests, to have that information before you report to the Court on your status report, but more importantly before you really dive into the claim construction briefing.

Now, it's a date for good faith substantial completion.  If it turns out that can't be done because the case develops in a way that it gets too big, the number of accused products, for instance, is bigger than anybody realistically anticipates today, then obviously you all need to meet and confer and perhaps you will work out an agreement to extend that date.  If you don't, then you will be back to me and we'll talk about it in the context of a concrete dispute.

Moving on, I think at page 15 is the next issue. This is, at 15 and 16, about claim terms to be construed.

I'm going to adopt the defendants' language at both 15 and 16. I understand about the joint claim construction chart, and I think it will be beneficial for any disputes that you have discussed and fall by the wayside only because of my limit of ten at the initial Markman hearing. Those should be memorialized somewhere just in case we have to come back to them.

And the ten, I'm hopeful that it's less than ten, but if either side in good faith thinks we have ten terms, up to ten terms that are in dispute and are material and need to be construed, then you are going to be able to brief and argue the up to ten, and I will make a decision once I am familiar with the merits of the arguments whether I really need to construe all ten. And I think defendants' language accomplishes that.

Some dates.

Paragraph 14. The hearing on claim construction will be on August 25th, 2015. August 25, 2015, beginning at 9:00 a.m.

That's a little bit later than you all wanted. We couldn't accommodate your request. If you want to change the dates for briefing, and some of the other claim construction dates, that is fine.

Then other dates, at page 18, the hearing on case dispositive motions will begin on 11:00 a.m. on the date you have, April 26th, 2016.

The trial sequencing conference will be July 29th, 2016 at 1:30.

The pretrial conference will be at 11:30 on September 2nd.  September 2, 2016.

Then trial will begin on September 12th.  September 12, 2016.

I'm late for another call, but if there are any questions, I'll try my best.  First from the plaintiff.

MR. MARSH:  No questions.  Is it same starting time for the trial, Your Honor, 9:30 a.m.?

THE COURT:  Yes.  And any questions from defendants?

MR. MARSH:  No questions, Your Honor.

MR. THOMPSON:  Nothing from defendants, Your Honor.

THE COURT:  Thank you all very much.

MR. MAZUR:  Your Honor, I'm sorry.  Joshua Mazur also for the Asus defendants.

On the paragraph 7(f)/7(e) issue, you said for good cause for the plaintiff.  Should we adopt the same "for good cause" language for both plaintiff and defendants where those two examples would be examples of good cause?

THE COURT:  I'm going to leave you to see if you can work that out.  I think that the two examples they gave probably would be good cause.  If you can talk them into further examples or more general language, if you agree on something, I'll be happy to sign it.  If you don't, then I'll see the dispute.

Is there anything else?  Okay.

MR. MAZUR:  No.  Thank you, Your Honor.

MR. MARSH:  Not from the plaintiff, Your Honor.  Thank you.

THE COURT:  Good-bye.

(Telephone conference ends at 1:05 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Brian P. Gaffigan
Official Court Reporter
U.S. District Court

**'**

**'124** [10] - 13:5, 13:7, 13:25, 14:17, 15:13, 24:5, 24:18, 24:19, 31:11, 32:1
**'795** [11] - 13:3, 13:6, 13:10, 13:16, 13:24, 14:13, 14:15, 15:12, 24:17, 31:10, 32:1

**/**

**/s** [1] - 35:16

**1**

**10** [3] - 14:12, 14:15, 31:11
**11:00** [1] - 34:2
**11:30** [1] - 34:6
**12** [1] - 34:9
**12:19** [1] - 4:20
**12th** [3] - 18:25, 26:8, 34:8
**13** [3] - 22:11, 22:24, 23:4
**13th** [1] - 7:7
**14** [2] - 1:21, 33:19
**14-436-LPS** [2] - 1:5, 6:2
**14-437** [1] - 6:2
**14-437-LPS** [1] - 1:10
**14-438** [1] - 6:2
**14-438-LPS** [1] - 1:14
**14-439** [1] - 6:3
**14-439-LPS** [1] - 1:19
**14-440** [1] - 6:3
**14-440-LPS** [1] - 2:4
**14-478** [1] - 6:3
**14-478-LPS** [1] - 2:8
**14cv436-LPS** [1] - 2:22
**14cv437-LPS** [1] - 3:7
**14cv438-LPS** [1] - 3:14
**14cv439-LPS** [1] - 3:20
**14cv440-LPS** [1] - 3:24
**14cv478-LPS** [1] - 4:8
**15** [14] - 14:1, 14:3, 14:6, 17:4, 17:9, 17:11, 17:24, 24:18, 26:14, 32:5, 33:1, 33:2, 33:4
**16** [4] - 26:10, 32:11, 33:2, 33:4
**16th** [1] - 18:24

**17th** [1] - 19:5
**18** [2] - 14:2, 34:1
**18th** [1] - 8:4
**19** [1] - 14:2
**1:05** [1] - 35:12
**1:30** [1] - 34:5

**2**

**2** [1] - 34:7
**20** [6] - 15:1, 18:6, 18:13, 18:14, 24:7, 31:10
**2014** [2] - 1:21, 8:4
**2015** [10] - 7:7, 10:3, 10:14, 16:18, 18:24, 18:25, 28:20, 32:11, 33:20
**2016** [5] - 12:8, 34:3, 34:5, 34:7, 34:9
**21** [4] - 13:7, 15:12, 22:7, 24:6
**22nd** [2] - 13:19, 17:8
**23** [1] - 14:13
**23rd** [1] - 19:3
**24** [1] - 24:24
**25** [4] - 13:21, 13:24, 24:17, 33:20
**25th** [1] - 33:20
**26th** [1] - 34:3
**28th** [2] - 10:18, 16:18
**29th** [1] - 34:5
**2nd** [4] - 10:3, 10:14, 16:24, 34:7

**3**

**30** [3] - 13:11, 13:17, 31:17
**33** [4] - 13:7, 15:12, 22:6, 24:23

**4**

**40** [1] - 14:3

**5**

**5** [2] - 22:4, 23:2
**54** [2] - 15:13, 25:3

**6**

**6** [1] - 30:13
**60** [3] - 9:5, 15:5, 25:1
**6th** [2] - 12:8, 22:8

**7**

**7** [1] - 21:21
**7(b** [1] - 9:22
**7(c** [3] - 8:13, 9:10, 9:13
**7(c)** [1] - 8:17
**7(d** [7] - 7:1, 8:13, 22:9, 25:21, 28:3, 30:16, 31:6
**7(d)** [2] - 23:16, 24:2
**7(f** [2] - 28:8, 29:8
**7(f)** [4] - 9:24, 28:2, 30:16, 31:6
**7(f)/7(e** [1] - 34:22
**7(g** [5] - 9:4, 11:23, 12:5, 22:9, 24:16
**7(g)** [1] - 31:7
**7(h** [3] - 16:15, 17:2, 31:23
**7(h)** [1] - 27:12
**70** [1] - 14:14
**76** [1] - 14:17

**8**

**8(b** [2] - 18:21, 28:13

**9**

**92** [1] - 26:6
**9:00** [1] - 33:21
**9:30** [1] - 34:13

**A**

**a.m** [3] - 33:21, 34:2, 34:13
**able** [9] - 6:24, 8:8, 9:19, 16:19, 18:9, 18:14, 20:21, 24:17, 33:13
**absolutely** [1] - 6:19
**acceptable** [1] - 23:11
**accommodate** [1] - 33:23
**accomplishes** [1] - 33:17
**accomplishing** [2] - 27:15, 27:16
**according** [1] - 31:5
**account** [1] - 15:16
**accurate** [1] - 35:14
**accused** [3] - 9:16, 28:16, 32:20
**achievable** [1] - 28:19
**Action** [7] - 2:22, 3:7, 3:14, 3:20, 3:24, 4:8,

6:1
**ACTION** [6] - 1:3, 1:7, 1:12, 1:16, 2:1, 2:6
**actual** [1] - 7:16
**add** [3] - 15:6, 27:25, 28:7
**addition** [1] - 15:20
**additional** [3] - 13:5, 29:2, 29:3
**address** [10] - 6:15, 6:18, 8:21, 9:16, 11:13, 11:16, 12:4, 13:10, 19:8, 27:19
**addresses** [1] - 9:14
**adequate** [1] - 9:18
**admittedly** [1] - 25:1
**adopt** [5] - 28:7, 31:8, 32:10, 33:3, 34:23
**adopted** [2] - 8:15, 9:11
**afternoon** [3] - 4:21, 4:23, 5:6
**AGILITY** [1] - 2:14
**Agility** [2] - 4:25, 6:10
**agree** [9] - 9:12, 10:2, 20:8, 20:12, 21:17, 21:18, 21:19, 26:20, 35:4
**agreed** [6] - 7:23, 8:23, 10:14, 10:15, 10:17, 23:5
**agreeing** [1] - 23:21
**agreement** [6] - 6:22, 7:5, 8:9, 12:6, 16:17, 32:23
**ahead** [2] - 11:8, 21:5
**al** [5] - 1:9, 2:3, 2:8, 3:7, 3:23
**alternatively** [1] - 8:15
**Amazon** [2] - 5:3, 21:3
**Amazon.com** [2] - 2:22, 6:1
**AMAZON.COM** [1] - 1:5
**ambiguous** [1] - 14:8
**America** [1] - 4:7
**AND** [1] - 1:1
**Anderson** [1] - 5:15
**ANDERSON** [3] - 3:15, 3:22, 4:2
**anticipate** [1] - 22:5
**anticipates** [3] - 15:25, 16:2, 32:21
**anticipation** [3] - 16:5, 16:10
**anyway** [1] - 8:7
**apparent** [1] - 26:14
**APPEARANCES** [3] - 2:10, 3:1, 4:1
**appendix** [1] - 21:24
**apples** [1] - 25:13

**applied** [1] - 15:21
**applies** [3] - 14:1, 14:9, 14:18
**apply** [5] - 8:16, 15:17, 23:17, 28:5, 28:9
**appropriate** [4] - 19:2, 20:8, 22:18, 29:25
**April** [8] - 18:24, 19:1, 19:3, 19:5, 26:10, 28:20, 32:11, 34:3
**arbitrary** [1] - 25:19
**argue** [8] - 8:12, 8:15, 11:10, 12:7, 14:24, 15:4, 18:4, 33:14
**argued** [4] - 10:11, 12:11, 14:25, 18:6
**argues** [2] - 7:9, 10:5
**arguing** [2] - 17:1, 17:2
**argument** [6] - 16:4, 16:5, 16:10, 16:11, 25:9, 25:21
**arguments** [1] - 33:15
**arises** [1] - 11:22
**art** [24] - 9:5, 12:6, 12:9, 12:19, 14:24, 14:25, 15:1, 15:8, 15:9, 16:3, 16:16, 18:3, 22:11, 22:20, 22:23, 23:4, 24:25, 25:7, 27:13, 31:15, 31:17, 31:19, 32:3, 32:6
**articulated** [1] - 16:22
**Ashby** [1] - 5:2
**ASHBY** [1] - 2:17
**assert** [1] - 25:15
**asserted** [23] - 7:13, 7:21, 10:16, 10:17, 12:6, 12:13, 13:21, 13:24, 16:16, 17:11, 22:8, 22:21, 22:22, 22:24, 23:1, 25:5, 25:6, 25:25, 27:12, 27:14, 30:23, 31:9, 31:10
**asserting** [5] - 12:15, 16:1, 22:6, 22:16, 25:16
**assuming** [1] - 22:23
**Asus** [4] - 5:7, 27:25, 29:12, 34:21
**Asustek** [1] - 3:7
**ASUSTEK** [1] - 1:9
**August** [5] - 8:4, 10:18, 16:18, 33:20
**available** [1] - 10:9
**avoid** [2] - 10:19, 10:25

## B

**Balick** [1] - 5:2
**BALICK** [2] - 2:18, 5:2
**ballpark** [1] - 14:22
**based** [3] - 10:22, 10:24
**basic** [1] - 8:11
**BEFORE** [1] - 1:24
**begin** [2] - 34:2, 34:8
**beginning** [2] - 4:20, 33:20
**begins** [1] - 19:4
**behalf** [6] - 4:24, 5:11, 5:15, 5:16, 5:17, 6:10
**beneficial** [1] - 33:5
**benefit** [1] - 19:14
**best** [1] - 34:11
**between** [2] - 9:17, 20:22
**beyond** [3] - 18:2, 18:9, 27:7
**big** [2] - 24:8, 32:19
**bigger** [1] - 32:20
**bit** [1] - 33:22
**BOYD** [1] - 3:5
**Boyd** [1] - 5:8
**Braun** [2] - 5:4, 5:12
**BRAUN** [2] - 2:20, 3:11
**BRIAN** [1] - 2:12
**Brian** [3] - 4:9, 4:23, 35:16
**brief** [1] - 33:14
**briefed** [2] - 27:1, 27:3
**briefing** [6] - 19:4, 19:15, 19:17, 19:19, 32:16, 33:24
**briefly** [1] - 28:1
**build** [1] - 11:8
**burden** [3] - 24:9, 24:23, 26:7
**burdensome** [2] - 28:14, 28:19
**BY** [13] - 2:12, 2:14, 2:18, 2:20, 3:3, 3:5, 3:9, 3:12, 3:16, 3:18, 3:22, 4:3, 4:5
**bye** [1] - 35:11

## C

**California** [5] - 2:15, 2:21, 3:6, 3:12, 3:19
**case** [21] - 12:7, 13:1, 13:4, 13:5, 13:11, 13:20, 17:7, 17:21, 18:1, 28:23, 29:19, 30:21, 31:4, 31:13,

31:14, 31:22, 32:2, 32:8, 32:19, 33:9, 34:2
**cases** [11] - 7:17, 13:3, 13:4, 13:14, 13:25, 14:4, 14:10, 14:17, 15:24, 17:18
**CASIO** [1] - 2:8
**caused** [1] - 8:21
**caveat** [1] - 15:6
**certainly** [3] - 23:6, 25:4, 25:16
**certify** [1] - 35:14
**cetera** [1] - 25:22
**chambers** [1] - 4:20
**chance** [2] - 6:6, 21:11
**change** [4] - 8:19, 10:23, 11:14, 33:24
**changes** [2] - 10:7, 10:8
**chart** [13] - 7:10, 9:7, 9:15, 22:4, 22:6, 23:1, 24:2, 24:7, 25:2, 26:16, 26:21, 26:23, 33:5
**charting** [2] - 22:13, 24:4
**charts** [2] - 23:13, 28:9
**Chief** [1] - 1:24
**choose** [2] - 21:13, 21:14
**cite** [1] - 15:24
**City** [1] - 3:6
**CIVIL** [6] - 1:3, 1:7, 1:12, 1:16, 2:1, 2:6
**Civil** [7] - 2:22, 3:7, 3:14, 3:20, 3:24, 4:8, 6:1
**claim** [56] - 7:11, 7:22, 8:24, 9:15, 9:20, 10:8, 10:16, 10:17, 10:22, 11:15, 12:8, 12:14, 13:2, 13:22, 13:23, 14:20, 15:15, 16:19, 18:7, 18:15, 18:18, 19:4, 19:15, 19:17, 19:19, 19:21, 20:2, 21:9, 22:4, 22:5, 22:6, 22:15, 22:16, 23:1, 23:12, 23:17, 24:6, 24:15, 24:17, 24:20, 26:13, 26:16, 26:18, 26:21, 26:24, 27:3, 27:7, 27:14, 27:18, 32:15, 33:2, 33:4, 33:19, 33:24
**claims** [53] - 7:21, 10:24, 12:6, 12:13, 12:22, 13:1, 13:7,

13:12, 13:17, 13:21, 13:24, 14:3, 14:7, 14:12, 14:13, 14:15, 15:11, 15:13, 15:17, 15:25, 16:16, 17:3, 17:4, 17:11, 17:14, 17:15, 17:19, 17:22, 22:8, 22:14, 22:21, 22:22, 22:24, 23:2, 24:4, 24:6, 24:7, 24:11, 24:18, 24:24, 25:2, 25:3, 25:5, 25:6, 25:25, 30:24, 31:9, 31:10, 31:12, 31:21, 31:25, 32:1
**clarification** [1] - 6:20
**clear** [1] - 16:9
**clearly** [1] - 22:1
**co** [1] - 5:8
**CO** [1] - 2:8
**co-counsel** [1] - 5:8
**combination** [1] - 18:17
**combinations** [1] - 7:13
**combine** [2] - 7:13, 24:9
**comment** [1] - 9:9
**comments** [3] - 21:3, 28:1, 28:24
**common** [4] - 13:3, 13:10, 13:14, 26:5
**Company** [2] - 3:20, 3:23
**COMPANY** [2] - 1:18, 2:3
**competing** [1] - 9:25
**completed** [1] - 19:17
**completion** [6] - 18:22, 19:9, 19:19, 26:3, 32:10, 32:18
**comply** [1] - 26:9
**COMPUTER** [2] - 1:9, 2:8
**Computer** [1] - 3:7
**concern** [2] - 27:17, 27:19
**concerned** [2] - 21:14, 23:15
**concrete** [1] - 32:25
**confer** [2] - 26:19, 32:22
**conference** [4] - 4:20, 34:4, 34:6, 35:12
**Conference** [1] - 1:22
**connection** [2] - 9:4, 17:2
**considered** [1] - 29:24
**construction** [17] - 7:22, 10:8, 10:22, 13:22, 13:23, 19:4,

19:15, 19:17, 19:19, 19:21, 21:10, 26:16, 26:21, 32:16, 33:5, 33:19, 33:25
**constructions** [1] - 26:19
**construe** [2] - 20:3, 33:16
**construed** [2] - 33:2, 33:13
**contemplating** [1] - 18:17
**content** [1] - 23:8
**contention** [3] - 10:10, 16:21, 30:19
**contentions** [40] - 7:3, 7:10, 7:17, 8:1, 8:7, 8:11, 9:1, 10:1, 10:2, 10:5, 10:6, 10:21, 11:1, 11:3, 11:18, 12:2, 12:4, 12:12, 22:10, 22:13, 23:3, 23:9, 23:13, 25:14, 25:17, 28:5, 28:10, 28:11, 29:6, 29:9, 29:10, 29:14, 29:15, 29:16, 29:17, 30:3, 30:14, 30:18, 31:3
**context** [1] - 32:24
**Continued** [2] - 3:1, 4:1
**control** [1] - 21:16
**Corporation** [1] - 4:7
**corrected** [1] - 6:3
**CORROON** [3] - 3:15, 3:22, 4:2
**counsel** [3] - 5:8, 23:11, 23:12
**Counsel** [7] - 2:16, 2:22, 3:7, 3:13, 3:20, 3:23, 4:7
**count** [2] - 15:7, 15:22
**couple** [2] - 18:24, 30:23
**course** [1] - 26:18
**Court** [22] - 7:23, 8:16, 8:18, 8:23, 11:7, 13:19, 17:8, 17:10, 17:25, 20:2, 20:11, 20:20, 20:21, 20:24, 23:20, 26:22, 26:24, 31:20, 32:14, 35:16, 35:17
**court** [1] - 5:22
**COURT** [28] - 1:1, 4:21, 5:1, 5:5, 5:9, 5:13, 5:19, 5:22, 6:14, 6:17, 11:23, 12:25, 19:23, 19:25, 20:12, 20:25, 21:5, 23:25, 24:13, 27:11,

27:22, 28:25, 29:20, 30:5, 34:14, 34:19, 35:1, 35:11
**Court's** [2] - 6:24, 8:13
**courts** [2] - 29:25, 30:1
**cover** [2] - 27:2, 27:3
**CUMMIS** [1] - 4:5
**Cummis** [1] - 5:18
**CURT** [1] - 3:18
**Curt** [1] - 5:16
**cut** [3] - 14:11, 14:13, 14:19
**cuts** [1] - 15:12

## D

**date** [18] - 7:6, 10:13, 10:16, 12:3, 12:7, 16:18, 16:23, 18:23, 19:1, 19:10, 19:16, 26:4, 26:9, 31:7, 32:9, 32:17, 32:23, 34:3
**dates** [9] - 16:17, 18:23, 22:2, 30:9, 31:8, 33:18, 33:24, 33:25, 34:1
**deal** [1] - 16:7
**deals** [2] - 16:15, 18:22
**debated** [1] - 27:4
**decision** [1] - 33:14
**default** [1] - 20:23
**Defendant** [3] - 1:6, 1:15, 1:19
**defendant** [3] - 27:22, 29:21, 30:6
**defendants** [37] - 6:15, 7:11, 7:14, 7:16, 7:23, 8:6, 8:10, 8:12, 8:22, 9:5, 9:19, 10:9, 10:23, 11:10, 11:13, 12:18, 14:6, 15:4, 15:24, 17:13, 18:4, 20:1, 21:1, 22:9, 22:13, 25:10, 25:23, 26:23, 27:25, 29:13, 31:4, 31:16, 31:18, 34:15, 34:17, 34:21, 34:24
**Defendants** [3] - 1:10, 2:4, 2:9
**defendants'** [14] - 7:2, 7:9, 7:25, 10:1, 10:13, 12:9, 19:14, 28:4, 28:5, 31:8, 31:24, 32:4, 33:3, 33:16
**defenses** [2] - 12:16, 12:20

**deficiencies** [3] - 19:7, 19:9, 19:11
**DELAWARE** [1] - 1:1
**Delaware** [2] - 1:21, 23:11
**delay** [2] - 19:18, 19:22
**Dell** [4] - 3:13, 5:11, 13:4, 21:3
**DELL** [1] - 1:14
**demands** [1] - 26:9
**dependent** [1] - 24:7
**describe** [1] - 15:6
**describing** [1] - 15:9
**develops** [1] - 32:19
**deviate** [1] - 30:19
**deviated** [1] - 11:21
**deviation** [2] - 8:22, 11:22
**difference** [4] - 9:17, 10:4, 20:22, 28:22
**different** [4] - 13:15, 14:9, 20:3, 31:25
**difficult** [1] - 19:10
**disagreement** [3] - 18:23, 26:15, 27:5
**disclose** [1] - 24:2
**disclosure** [1] - 9:18
**discovery** [1] - 19:6
**discuss** [2] - 5:23, 9:4
**discussed** [3] - 27:4, 27:9, 33:6
**discussion** [1] - 30:11
**dispositive** [1] - 34:2
**dispute** [24] - 6:7, 7:8, 9:22, 9:23, 11:9, 11:22, 20:2, 20:4, 20:5, 20:6, 20:18, 21:8, 21:22, 21:23, 23:10, 23:14, 24:12, 25:7, 26:21, 30:13, 31:1, 32:25, 33:12, 35:6
**disputed** [2] - 6:23, 26:24
**disputes** [3] - 6:12, 16:12, 33:6
**District** [1] - 35:17
**DISTRICT** [2] - 1:1, 1:1
**dive** [1] - 32:15
**document** [6] - 18:22, 26:4, 26:8, 28:13, 28:14, 32:9
**documents** [1] - 26:6
**done** [5] - 17:25, 23:19, 23:24, 32:12, 32:18
**DORSNEY** [2] - 3:3, 5:6
**Dorsney** [1] - 5:7
**down** [11] - 11:9,

13:11, 13:16, 13:21, 13:24, 14:1, 14:3, 17:4, 21:15, 25:22, 31:16
**Draconian** [2] - 14:11, 14:19
**drafting** [1] - 19:15
**dressed** [1] - 16:11
**dropped** [1] - 24:5
**during** [3] - 8:4, 8:5, 20:11

**E**

**effectively** [1] - 21:11
**effort** [1] - 26:7
**efforts** [1] - 27:8
**eight** [1] - 17:14
**either** [2] - 27:21, 33:11
**elements** [1] - 7:11
**end** [1] - 30:10
**ends** [1] - 35:12
**ensure** [2] - 30:25, 31:1
**envision** [1] - 31:5
**Enzo** [3] - 13:19, 17:6, 18:1
**equal** [1] - 9:12
**equally** [1] - 9:11
**especially** [1] - 7:19
**ESQ** [14] - 2:12, 2:14, 2:18, 2:20, 3:3, 3:5, 3:9, 3:12, 3:16, 3:18, 3:22, 4:3, 4:5, 4:6
**essentially** [3] - 15:14, 18:16, 21:8
**et** [6] - 1:9, 2:3, 2:8, 3:7, 3:23, 25:21
**evidence** [1] - 16:1
**exactly** [1] - 19:11
**example** [1] - 24:5
**examples** [4] - 34:25, 35:2, 35:4
**exception** [1] - 11:3
**exceptions** [3] - 10:7, 16:22, 29:11
**exchange** [2] - 16:25, 26:18
**exercise** [3] - 22:17, 23:24, 24:12
**experienced** [1] - 23:10
**extend** [1] - 32:23

**F**

**face** [1] - 17:20
**fact** [3] - 14:20, 17:6, 30:22

**faith** [2] - 32:17, 33:11
**fall** [1] - 33:6
**familiar** [1] - 33:15
**far** [3] - 14:19, 14:23, 17:16
**Farella** [2] - 5:4, 5:12
**FARELLA** [2] - 2:20, 3:11
**FARNAN** [4] - 2:11, 2:12, 4:23, 5:21
**Farnan** [1] - 4:24
**February** [4] - 7:7, 22:11, 22:24, 23:4
**fewer** [1] - 20:15
**final** [31] - 10:1, 10:2, 10:5, 10:15, 10:17, 10:21, 11:1, 11:15, 11:18, 12:3, 12:4, 12:13, 16:15, 16:19, 17:2, 17:10, 17:13, 18:5, 18:10, 18:11, 23:6, 25:9, 25:14, 25:17, 28:10, 29:8, 29:15, 30:3, 30:17, 31:3, 31:23
**finally** [1] - 19:24
**fine** [1] - 33:25
**Fineman** [1] - 5:11
**FINEMAN** [2] - 3:9, 5:10
**FINGER** [1] - 3:9
**first** [16] - 5:25, 6:7, 6:15, 7:1, 7:5, 12:12, 12:13, 12:17, 12:18, 14:8, 21:7, 24:21, 30:13, 30:24, 31:9, 34:11
**five** [15] - 14:16, 17:15, 17:19, 18:6, 18:15, 18:17, 20:18, 21:9, 21:12, 21:13, 21:14, 21:15, 21:16, 27:14, 32:1
**flip** [1] - 12:3
**focusing** [2] - 31:14, 32:7
**following** [1] - 4:19
**FOR** [1] - 1:1
**force** [1] - 20:9
**foregoing** [1] - 35:14
**form** [13] - 8:12, 8:13, 8:19, 8:22, 9:14, 11:11, 11:14, 11:15, 11:17, 11:20, 26:16
**forth** [3] - 11:2, 29:10, 29:17
**forthcoming** [1] - 31:4
**four** [1] - 21:22
**Francisco** [3] - 2:21, 3:12, 3:19
**frankly** [1] - 28:13

**Friday** [2] - 28:17, 30:12

**G**

**Gaffigan** [2] - 4:9, 35:16
**gain** [1] - 19:22
**Gates** [1] - 5:16
**GATES** [1] - 3:18
**gathering** [1] - 28:15
**Geddes** [1] - 5:3
**GEDDES** [1] - 2:17
**general** [2] - 9:12, 35:4
**generous** [1] - 15:3
**given** [1] - 25:14
**good-bye** [1] - 35:11
**GROSS** [1] - 4:5
**guess** [2] - 20:14, 22:5
**guidance** [3] - 6:24, 12:20, 12:23
**guided** [1] - 23:12

**H**

**happy** [5] - 12:12, 12:13, 13:24, 21:13, 35:5
**hard** [1] - 28:13
**hear** [1] - 6:14
**heard** [4] - 6:18, 22:14, 25:9, 27:23
**hearing** [7] - 6:13, 7:22, 7:24, 20:11, 33:8, 33:19, 34:1
**held** [1] - 4:20
**help** [4] - 12:24, 23:25, 29:1, 31:4
**helpful** [2] - 30:25, 32:12
**hereby** [1] - 35:14
**Hewlett** [1] - 3:20
**HEWLETT** [1] - 1:18
**Hewlett-Packard** [1] - 3:20
**HEWLETT-PACKARD** [1] - 1:18
**history** [1] - 18:19
**Holbreich** [1] - 5:16
**HOLBREICH** [1] - 3:18
**hold** [1] - 29:14
**HOLDING** [1] - 2:3
**Holding** [1] - 3:23
**holds** [1] - 29:14
**Honor** [44] - 4:23, 5:2, 5:6, 5:10, 5:14, 5:21, 6:9, 6:11, 6:21, 7:4, 7:15, 7:20, 8:2, 9:4, 9:23, 10:12, 11:25,

12:7, 12:17, 13:18, 13:23, 21:2, 21:6, 21:21, 22:2, 22:12, 24:4, 24:14, 25:21, 26:4, 26:12, 27:6, 27:24, 28:12, 28:22, 28:24, 29:7, 29:22, 34:13, 34:16, 34:18, 34:20, 35:8, 35:9
**HONORABLE** [1] - 1:24
**hopeful** [1] - 33:10
**HORWITZ** [4] - 3:16, 3:22, 4:3, 5:14
**Horwitz** [1] - 5:14
**HP** [2] - 5:16, 13:5
**huge** [1] - 28:21
**hurts** [1] - 17:17

**I**

**idea** [1] - 26:17
**identification** [1] - 28:16
**identified** [2] - 26:25, 29:11
**important** [1] - 27:21
**importantly** [2] - 25:22, 32:15
**impose** [3] - 23:20, 26:7, 30:17
**imposing** [2] - 25:19, 26:10
**IN** [2] - 1:1, 1:1
**Inc** [5] - 2:22, 3:7, 3:13, 3:23, 6:1
**INC** [4] - 1:5, 1:9, 1:14, 2:3
**inclined** [1] - 23:20
**indeed** [1] - 23:5
**independent** [2] - 24:6, 24:19
**indicate** [1] - 26:25
**indicated** [1] - 27:6
**indicator** [1] - 14:23
**information** [2] - 10:9, 32:13
**infringement** [8] - 28:10, 29:5, 29:15, 29:17, 30:3, 30:17
**initial** [37] - 7:3, 8:23, 9:1, 9:19, 10:6, 10:10, 10:20, 11:3, 12:8, 12:9, 12:19, 13:8, 13:20, 14:20, 14:21, 14:25, 16:21, 22:3, 22:10, 22:20, 22:22, 23:1, 23:4, 23:7, 23:8, 23:12, 23:13, 28:4, 28:21, 29:10, 29:17, 30:2,

31:3, 31:16, 33:7
**instance** [2] - 12:17, 32:20
**instead** [1] - 21:12
**instrumentality** [2] - 15:7, 31:19
**intend** [1] - 18:11
**interesting** [2] - 8:2, 9:3
**interim** [3] - 19:3, 19:7, 19:13
**invalidity** [20] - 7:3, 7:9, 8:1, 8:7, 8:11, 9:1, 10:1, 10:2, 10:6, 22:10, 22:13, 23:3, 23:13, 25:17, 29:3, 29:6, 29:9, 29:10, 29:14, 31:3
**involve** [3] - 5:24, 14:4, 17:18
**involved** [1] - 13:15
**IP** [3] - 2:14, 4:25, 6:10
**issue** [5] - 7:1, 7:4, 9:2, 33:1, 34:22
**issued** [1] - 17:7
**issues** [3] - 6:17, 6:23, 6:25
**itself** [1] - 17:21

## J

**JAMES** [1] - 3:2
**James** [1] - 5:7
**January** [2] - 22:4, 23:2
**join** [1] - 29:13
**joined** [1] - 5:3
**joint** [3] - 26:16, 26:21, 33:4
**JOSHUA** [1] - 3:5
**Joshua** [4] - 5:8, 27:25, 29:7, 34:20
**Judge** [2] - 1:24, 4:22
**judgments** [1] - 25:18
**July** [1] - 34:4
**June** [2] - 18:25, 26:8

## K

**K&L** [2] - 3:18, 5:16
**Kate** [1] - 5:17
**KATHERINE** [1] - 4:6
**keep** [5] - 9:5, 12:1, 21:20, 31:17, 31:25
**Ken** [1] - 5:6
**KENNETH** [1] - 3:3
**kind** [7] - 7:18, 8:10, 15:15, 16:4, 20:9, 23:17, 24:22

## L

**land** [2] - 20:17, 20:21
**language** [9] - 21:17, 29:5, 31:18, 31:24, 32:4, 33:3, 33:17, 34:24, 35:4
**large** [3] - 25:1, 25:4, 26:7
**last** [3] - 7:23, 20:11, 21:7
**late** [1] - 34:10
**laundry** [1] - 7:18
**LAURENCE** [1] - 3:3
**Law** [2] - 4:25, 6:10
**LAW** [1] - 2:14
**Layton** [1] - 5:11
**LAYTON** [1] - 3:9
**lead** [1] - 21:4
**least** [1] - 20:20
**leave** [1] - 35:1
**left** [2] - 17:22, 31:22
**LENOVO** [1] - 2:3
**Lenovo** [2] - 3:23, 5:15
**LEONARD** [1] - 1:24
**less** [5] - 20:7, 20:13, 22:19, 28:19, 33:10
**lessen** [1] - 24:23
**lesser** [1] - 21:18
**level** [1] - 9:9
**Lieb** [1] - 5:18
**LIEB** [1] - 4:6
**Life** [3] - 13:19, 17:6, 18:1
**light** [5] - 30:21, 31:12, 31:13, 31:21
**limit** [2] - 20:20, 33:7
**limitation** [1] - 17:17
**limited** [9] - 15:4, 16:8, 16:20, 17:14, 17:19, 18:2, 18:4, 25:10, 29:9
**limiting** [2] - 25:14, 25:20
**line** [3] - 5:7, 17:12, 17:25
**list** [2] - 7:18, 22:1
**LLC** [9] - 1:2, 1:7, 1:11, 1:16, 2:1, 2:5, 2:16, 5:25, 6:10
**LLP** [9] - 2:11, 2:20, 3:2, 3:5, 3:11, 3:15, 3:18, 3:22, 4:2
**local** [3] - 23:12, 29:24, 30:1
**looking** [4] - 12:23, 21:24, 29:4, 31:2
**LTD** [1] - 2:8

## M

**main** [1] - 20:6
**make-work** [2] - 22:17, 24:12
**manageable** [1] - 25:5
**map** [1] - 9:15
**mapping** [1] - 7:10
**March** [2] - 12:8, 22:8
**Markman** [1] - 33:7
**Marsh** [3] - 4:25, 22:15, 25:9
**MARSH** [12] - 2:14, 6:9, 6:16, 6:19, 11:25, 13:2, 19:24, 20:5, 20:14, 34:12, 34:16, 35:9
**marsh** [4] - 6:10, 23:21, 24:16, 30:4
**Marsh's** [1] - 27:17
**Martel** [2] - 5:4, 5:12
**MARTEL** [1] - 2:20
**MARTELL** [1] - 3:11
**material** [1] - 33:12
**matter** [1] - 15:8
**matters** [3] - 5:24, 6:2, 6:4
**maximum** [5] - 14:15, 18:15, 20:10, 20:19, 20:23
**MAZUR** [5] - 3:5, 27:24, 29:7, 34:20, 35:8
**Mazur** [5] - 5:8, 27:25, 28:25, 29:7, 34:20
**mean** [8] - 11:6, 14:12, 15:11, 16:7, 17:9, 18:16, 19:8, 20:9
**meaning** [1] - 21:10
**meaningful** [2] - 8:25, 15:18
**meaningless** [1] - 24:24
**meet** [2] - 26:19, 32:22
**memorialized** [1] - 33:8
**Menlo** [1] - 2:15
**mention** [1] - 12:1
**mentioned** [3] - 16:18, 17:7, 24:19
**Merit** [1] - 4:10
**merits** [1] - 33:15
**middle** [1] - 20:17
**might** [6] - 12:2, 12:4, 15:17, 16:23, 24:17, 27:6
**mind** [1] - 24:10
**mixing** [1] - 25:13
**MOBILE** [6] - 1:2, 1:7, 1:11, 1:16, 2:1, 2:5

**Mobile** [3] - 2:16, 5:25, 6:10
**moment** [1] - 21:23
**momentarily** [1] - 24:5
**month** [2] - 10:14, 19:22
**months** [2] - 18:24, 28:21
**morning** [2] - 5:10, 6:9
**Morris** [1] - 5:7
**MORRIS** [1] - 3:2
**most** [3] - 21:22, 22:1, 25:22
**motions** [1] - 34:2
**motivation** [2] - 24:2, 24:9
**motivations** [1] - 7:12
**move** [2] - 11:7, 31:4
**moving** [3] - 9:23, 31:23, 33:1
**MR** [28] - 4:23, 5:2, 5:6, 5:10, 5:14, 5:21, 6:9, 6:16, 6:19, 11:25, 13:2, 19:24, 20:5, 20:14, 21:2, 21:6, 24:3, 24:14, 27:16, 27:24, 29:7, 29:22, 34:12, 34:16, 34:17, 34:20, 35:8, 35:9
**multiple** [1] - 27:18
**must** [1] - 29:16

## N

**nearly** [1] - 30:7
**NEC** [2] - 4:7, 5:17
**necessarily** [1] - 25:16
**necessary** [7] - 7:24, 21:10, 23:23, 27:6, 27:10, 31:13, 31:14
**need** [15] - 8:21, 8:25, 9:8, 9:15, 10:12, 11:1, 12:2, 19:20, 21:18, 23:19, 31:9, 32:22, 33:13, 33:16
**needed** [2] - 8:7, 17:11
**needs** [1] - 16:23
**New** [2] - 4:6
**new** [3] - 10:9, 15:15, 29:18
**next** [2] - 9:23, 33:1
**NO** [6] - 1:5, 1:10, 1:14, 1:19, 2:4, 2:8
**note** [1] - 28:3
**NOTE** [1] - 4:19
**noted** [1] - 17:6
**notes** [1] - 35:14
**nothing** [2] - 26:1,

34:17
**nuance** [1] - 26:13
**number** [24] - 12:15, 16:8, 17:9, 18:11, 20:2, 21:14, 21:18, 24:15, 24:25, 25:1, 25:4, 25:5, 25:6, 25:7, 25:20, 25:24, 26:6, 27:20, 30:22, 30:23, 31:9, 31:12, 31:21, 32:19
**numbers** [2] - 16:16, 31:24

## O

**obligations** [2] - 22:9, 22:25
**obviously** [2] - 28:18, 32:21
**obviousness** [3] - 16:4, 16:11, 27:20
**October** [4] - 1:21, 10:3, 10:14, 16:24
**OF** [1] - 1:1
**Official** [1] - 35:16
**once** [1] - 33:15
**one** [19] - 5:25, 7:12, 10:7, 10:21, 12:1, 13:3, 14:10, 15:22, 17:9, 19:2, 20:25, 21:24, 22:6, 24:6, 24:19, 26:13, 27:11, 27:14, 27:18
**oOo** [1] - 4:17
**opinion** [1] - 20:22
**opportunity** [1] - 20:16
**oranges** [1] - 25:13
**order** [19] - 6:5, 6:22, 7:2, 8:14, 8:19, 8:20, 8:22, 8:24, 9:14, 11:11, 11:14, 11:17, 11:20, 21:24, 21:25, 22:1, 26:14, 30:11, 31:1
**ordered** [3] - 7:20, 13:19, 13:20
**orderly** [2] - 25:23, 26:2
**ordinary** [2] - 7:12, 21:10
**outlined** [1] - 11:4
**overkill** [1] - 27:20

## P

**P.A** [2] - 2:17, 3:9
**p.m** [2] - 4:20, 35:12
**PACKARD** [1] - 1:18

**Packard** [1] - 3:20
**page** [4] - 26:14, 30:13, 33:1, 34:1
**paragraph** [22] - 6:12, 7:1, 8:17, 9:4, 9:10, 9:13, 9:22, 9:24, 9:25, 12:5, 16:12, 16:14, 16:15, 17:2, 18:21, 21:21, 28:2, 28:12, 33:19, 34:22
**paragraphs** [5] - 6:23, 8:13, 8:14, 9:17, 11:11
**parenthetical** [1] - 27:13
**Park** [1] - 2:15
**particular** [1] - 29:3
**particularly** [1] - 30:25
**parties** [9] - 8:3, 10:2, 10:15, 20:8, 21:17, 23:5, 23:10, 26:18, 30:22
**parties'** [1] - 27:8
**patent** [34] - 13:1, 13:3, 13:4, 13:5, 13:6, 13:7, 13:10, 13:16, 13:24, 13:25, 14:7, 14:10, 14:12, 14:14, 14:15, 14:17, 15:25, 17:4, 17:9, 17:15, 17:17, 17:22, 22:6, 24:5, 24:17, 24:18, 24:19, 31:10, 31:11, 32:1
**patents** [10] - 12:25, 13:15, 14:4, 15:12, 17:18, 22:14, 22:17, 23:18, 25:3, 30:1
**PC** [1] - 4:5
**per** [6] - 14:7, 14:12, 17:4, 17:9, 17:15, 18:15
**percent** [6] - 13:9, 13:12, 14:14, 14:17, 24:16, 24:23
**perhaps** [1] - 32:22
**person** [1] - 21:1
**perspective** [1] - 26:5
**Philip** [2] - 4:24, 6:9
**PHILLIP** [1] - 2:14
**picked** [1] - 27:9
**place** [1] - 23:2
**plain** [1] - 21:10
**plaintiff** [29] - 4:24, 5:25, 6:8, 6:11, 7:5, 7:9, 10:4, 13:21, 21:8, 21:15, 23:16, 25:24, 26:10, 27:2, 28:6, 28:23, 29:2, 29:17, 30:15, 30:17, 30:23, 31:2, 31:8,

31:25, 32:13, 34:11, 34:23, 34:24, 35:9
**Plaintiff** [6] - 1:3, 1:8, 1:12, 1:17, 2:2, 2:6
**plaintiff's** [6] - 22:3, 28:7, 28:9, 28:16, 32:10
**point** [12] - 19:8, 21:7, 23:9, 27:7, 27:21, 28:12, 28:14, 28:23, 29:21, 31:22, 32:2, 32:6
**position** [5] - 7:25, 9:2, 9:21, 16:9, 21:9
**potentially** [2] - 11:7, 28:19
**POTTER** [3] - 3:15, 3:22, 4:2
**Potter** [1] - 5:15
**power** [1] - 21:9
**Pragmatus** [3] - 2:16, 5:25, 6:10
**PRAGMATUS** [6] - 1:2, 1:7, 1:11, 1:16, 2:1, 2:5
**preliminary** [1] - 7:21
**prepare** [1] - 26:21
**present** [5] - 14:22, 18:9, 18:12, 18:14, 25:11
**presented** [1] - 16:21
**presumptive** [2] - 20:20, 20:23
**pretrial** [1] - 34:6
**pretty** [5] - 11:5, 15:3, 21:15, 24:24, 25:7
**primarily** [2] - 6:6, 32:11
**proceeding** [2] - 26:1, 35:14
**proceeds** [2] - 25:24, 32:8
**process** [3] - 25:24, 26:1, 28:15
**production** [7] - 18:22, 19:14, 26:4, 26:6, 26:8, 28:13, 32:9
**products** [5] - 9:16, 28:16, 28:18, 28:20, 32:20
**proposal** [17] - 8:6, 8:15, 10:20, 13:8, 13:14, 14:5, 14:8, 14:21, 15:11, 15:20, 18:20, 21:25, 22:3, 27:13, 28:4, 28:8, 32:11
**proposals** [3] - 9:11, 9:25, 20:3
**propose** [4] - 18:13,

18:16, 18:24
**proposed** [11] - 6:5, 7:2, 14:6, 19:16, 21:25, 22:2, 26:19, 29:8, 30:4, 30:16, 31:18
**proposing** [3] - 14:11, 17:13, 22:7
**prospect** [1] - 25:2
**provide** [3] - 7:11, 8:7, 22:3
**provided** [1] - 24:10
**prudent** [1] - 21:19
**pushed** [1] - 16:23

## Q

**questions** [5] - 9:24, 34:11, 34:12, 34:14, 34:16
**quick** [1] - 26:11
**quickly** [2] - 21:15, 29:23
**quite** [1] - 14:11

## R

**reach** [1] - 8:8
**reached** [2] - 6:21, 7:5
**react** [1] - 23:3
**reacting** [1] - 25:25
**real** [2] - 19:21, 21:23
**realistic** [2] - 24:11, 26:9
**realistically** [2] - 18:9, 32:21
**really** [32] - 7:19, 7:24, 8:6, 8:10, 8:25, 9:2, 9:7, 10:25, 12:14, 12:21, 15:10, 15:18, 16:2, 16:3, 16:6, 16:11, 17:17, 17:22, 18:8, 18:10, 18:16, 19:12, 19:20, 19:22, 20:8, 23:9, 24:24, 25:22, 27:19, 32:15, 33:16
**reason** [7] - 10:11, 12:11, 12:14, 12:22, 13:12, 19:21, 25:19
**reasonable** [7] - 14:5, 17:5, 17:24, 31:12, 31:19, 31:21, 32:7
**reasons** [2] - 7:12, 19:2
**rebuttal** [1] - 30:8
**receive** [1] - 28:15
**received** [1] - 26:5
**recent** [3] - 15:23, 17:6, 18:19

**recently** [3] - 13:18, 18:1, 26:6
**record** [1] - 5:23
**reduce** [8] - 12:15, 12:21, 12:22, 14:13, 21:11, 22:8, 30:23, 31:9
**reduced** [2] - 15:1, 25:4
**reducing** [3] - 22:15, 25:24, 31:14
**reduction** [43] - 7:21, 8:24, 8:25, 9:19, 10:16, 10:17, 10:22, 11:15, 12:3, 12:8, 12:9, 12:13, 12:19, 13:9, 13:20, 14:14, 14:16, 14:20, 14:21, 15:18, 16:15, 16:19, 17:3, 17:10, 18:5, 18:10, 22:4, 22:10, 22:20, 22:22, 22:23, 23:1, 23:4, 23:6, 23:7, 24:22, 24:23, 25:9, 26:12, 31:16, 31:20, 31:23
**reductions** [2] - 12:5, 15:1
**Redwood** [1] - 3:6
**reference** [7] - 7:10, 15:8, 15:15, 15:22, 16:10, 18:15, 18:17
**references** [40] - 7:13, 7:18, 9:6, 12:10, 12:19, 14:25, 15:2, 15:5, 15:6, 15:9, 15:17, 15:21, 16:3, 16:5, 16:8, 18:4, 18:5, 18:8, 18:13, 18:14, 22:11, 22:20, 22:23, 23:4, 24:8, 25:1, 25:7, 25:11, 25:15, 25:17, 25:20, 27:13, 27:18, 27:20, 31:15, 31:17, 32:3, 32:5, 32:6
**referring** [1] - 29:24
**reflecting** [1] - 30:11
**regard** [1] - 10:1
**Registered** [1] - 4:10
**related** [1] - 5:24
**relates** [2] - 7:2, 12:5
**relief** [1] - 11:8
**remain** [1] - 6:13
**remaining** [2] - 14:16, 26:20
**remains** [2] - 6:22, 7:8
**remember** [1] - 8:4
**remind** [1] - 12:25
**repetition** [1] - 15:16
**report** [6] - 19:3, 19:7,

19:8, 19:13, 32:14
**reported** [1] - 27:8
**Reporter** [2] - 4:10, 35:16
**reporter** [1] - 5:22
**REPORTER'S** [1] - 4:19
**request** [1] - 33:23
**requested** [3] - 7:20, 8:23, 11:14
**requests** [1] - 26:5
**require** [4] - 20:10, 29:4, 30:22, 30:24
**required** [8] - 10:7, 10:8, 11:18, 12:1, 12:22, 23:23, 28:4, 31:20
**requirement** [2] - 8:11, 8:16
**requirements** [1] - 28:8
**reset** [1] - 29:18
**respect** [22] - 7:4, 7:25, 9:21, 11:17, 12:19, 13:6, 13:9, 13:16, 14:17, 14:24, 18:3, 18:21, 21:7, 23:8, 24:8, 24:15, 24:25, 25:8, 26:3, 27:12, 30:2, 31:18
**respond** [1] - 24:22
**result** [1] - 30:10
**revealing** [1] - 9:6
**reviewed** [1] - 6:5
**revised** [1] - 30:10
**Rich** [1] - 5:14
**RICHARD** [3] - 3:16, 3:22, 4:3
**Richards** [1] - 5:11
**RICHARDS** [1] - 3:9
**road** [1] - 11:9
**Robert** [1] - 21:2
**Roderick** [3] - 5:3, 5:12, 29:23
**RODERICK** [2] - 2:20, 3:12
**room** [1] - 10:6
**rubric** [1] - 13:13
**rules** [2] - 29:24, 30:1
**rulings** [2] - 30:9, 30:11
**run** [1] - 20:1

## S

**San** [3] - 2:21, 3:12, 3:19
**saw** [2] - 13:8, 13:18
**scale** [1] - 30:3
**scenario** [1] - 17:19

**scheduling** [15] - 5:23, 6:5, 6:22, 7:2, 8:13, 8:19, 8:20, 8:22, 11:11, 11:14, 11:17, 11:20, 21:25, 26:14, 30:10
**Sciences** [3] - 13:20, 17:7, 18:1
**scope** [11] - 10:5, 10:12, 11:2, 28:9, 28:23, 29:9, 29:16, 29:18, 30:18, 30:21, 31:13
**SCOTT** [1] - 4:5
**Scott** [1] - 5:17
**see** [11] - 9:3, 9:5, 9:8, 11:10, 18:3, 22:2, 22:9, 30:10, 32:7, 35:1, 35:6
**seeking** [1] - 13:9
**select** [1] - 25:15
**sense** [12] - 8:20, 9:13, 11:19, 12:18, 12:21, 13:14, 14:2, 16:12, 16:24, 22:12, 22:19, 23:7
**September** [6] - 13:19, 17:8, 34:7, 34:8, 34:9
**sequencing** [1] - 34:4
**served** [2] - 7:6, 10:3
**set** [9] - 10:20, 11:2, 20:11, 20:20, 20:24, 28:23, 29:10, 29:16
**seven** [3] - 5:24, 6:4, 16:3
**several** [3] - 15:17, 15:23, 30:1
**shall** [3] - 15:7, 28:8, 29:9
**show** [1] - 30:19
**side** [2] - 6:13, 33:11
**sign** [1] - 35:5
**SILLS** [1] - 4:5
**Sills** [1] - 5:18
**similar** [1] - 30:3
**simply** [4] - 23:9, 28:22, 29:12
**Simpson** [1] - 5:17
**simultaneous** [1] - 16:24
**single** [7] - 15:6, 15:8, 15:9, 15:15, 15:17, 15:21, 18:7
**situation** [4] - 10:20, 10:25, 11:6, 11:12
**situations** [1] - 11:4
**six** [4] - 6:4, 6:22, 13:3, 16:3
**skill** [1] - 7:12
**slight** [3] - 11:16,

26:15
**sneak** [1] - 16:9
**solidify** [1] - 19:12
**somewhere** [3] - 20:17, 20:21, 33:8
**sorry** [4] - 24:18, 27:24, 29:12, 34:20
**speaking** [1] - 21:1
**specific** [2] - 28:3, 29:3
**specifically** [1] - 28:1
**specificity** [14] - 8:16, 9:10, 16:20, 23:16, 23:17, 23:21, 23:22, 24:10, 28:4, 29:1, 29:2, 29:3, 30:2, 31:2
**spell** [1] - 30:2
**stand** [1] - 19:12
**standard** [2] - 11:5, 30:1
**Stark** [1] - 4:22
**STARK** [1] - 1:24
**starting** [2] - 20:1, 34:12
**STATES** [1] - 1:1
**status** [4] - 19:3, 19:7, 19:13, 32:14
**stenographic** [1] - 35:14
**step** [1] - 21:23
**Steve** [1] - 5:10
**Steven** [1] - 5:2
**STEVEN** [2] - 2:18, 3:9
**sticking** [1] - 8:19
**STIMPSON** [1] - 4:5
**straightforward** [1] - 25:8
**street** [2] - 23:22, 23:24
**string** [1] - 16:2
**stronger** [1] - 12:20
**stuck** [1] - 10:24
**submit** [1] - 16:6
**submitted** [1] - 26:22
**subparagraphs** [1] - 21:22
**substantial** [5] - 18:22, 19:9, 26:3, 32:10, 32:17
**substantially** [2] - 6:21, 19:14
**substantively** [1] - 31:1
**subtle** [1] - 26:17
**successful** [1] - 18:18
**sufficient** [4] - 7:19, 8:14, 11:12, 11:20
**suggest** [5] - 12:2, 12:17, 16:22, 26:8, 26:23

**suggested** [2] - 21:16, 26:10
**suggesting** [2] - 23:16, 24:16
**suggests** [1] - 32:13
**suit** [1] - 17:10
**supposedly** [1] - 16:2
**surprised** [1] - 8:8
**system** [7] - 15:7, 15:9, 15:21, 15:24, 15:25, 16:1, 16:2

## T

**Telephone** [1] - 1:22
**telephone** [2] - 4:19, 35:12
**ten** [31] - 13:9, 13:12, 14:7, 18:5, 18:8, 20:7, 20:9, 20:13, 20:15, 20:19, 21:12, 21:14, 21:17, 21:19, 21:20, 24:16, 24:23, 25:11, 26:25, 27:2, 27:7, 28:18, 31:25, 33:7, 33:10, 33:11, 33:12, 33:14, 33:16
**tend** [1] - 15:24
**terms** [38] - 8:24, 9:16, 9:20, 10:16, 10:18, 11:15, 12:8, 12:14, 12:15, 16:19, 20:2, 20:7, 20:9, 20:18, 21:9, 21:17, 22:5, 22:16, 24:15, 24:17, 24:18, 26:13, 26:18, 26:20, 26:24, 26:25, 27:4, 27:7, 29:4, 31:2, 31:7, 31:15, 32:9, 33:2, 33:12
**THE** [29] - 1:1, 1:1, 4:21, 5:1, 5:5, 5:9, 5:13, 5:19, 5:22, 6:14, 6:17, 11:23, 12:25, 19:23, 19:25, 20:12, 20:25, 21:5, 23:25, 24:13, 27:11, 27:22, 28:25, 29:20, 30:5, 34:14, 34:19, 35:1, 35:11
**themselves** [1] - 8:14
**theories** [5] - 10:13, 11:2, 16:21, 29:10, 29:16
**theory** [5] - 10:21, 10:23, 10:24, 11:7, 29:18
**therefore** [1] - 22:25
**thinking** [2] - 13:15, 14:2
**thinks** [1] - 33:11

**THOMPSON** [9] - 2:20, 3:12, 21:2, 21:6, 24:3, 24:14, 27:16, 29:22, 34:17
**Thompson** [6] - 5:3, 5:12, 21:3, 23:25, 29:1, 29:23
**Thompson's** [1] - 28:1
**thousand** [1] - 28:20
**three** [2] - 17:21, 20:18
**thrown** [1] - 7:18
**timing** [2] - 21:24, 25:23
**today** [1] - 32:21
**today's** [1] - 30:11
**token** [1] - 22:19
**top** [1] - 15:5
**total** [6] - 14:3, 14:7, 15:11, 15:13, 17:14, 32:5
**totally** [3] - 15:22, 17:24, 17:25
**touch** [1] - 26:12
**transcript** [1] - 35:14
**treated** [1] - 9:11
**treatment** [1] - 9:12
**trial** [12] - 14:22, 18:10, 18:12, 18:15, 25:12, 25:15, 25:18, 25:20, 34:4, 34:8, 34:13
**true** [1] - 35:14
**try** [3] - 16:9, 26:19, 34:11
**trying** [9] - 8:21, 9:16, 10:19, 10:25, 11:13, 11:16, 11:21, 13:13, 27:19
**Tuesday** [1] - 1:21
**turn** [2] - 6:15, 19:25
**Turner** [1] - 5:8
**TURNER** [1] - 3:5
**turning** [1] - 31:7
**turns** [1] - 32:18
**tweak** [1] - 11:17
**two** [19] - 9:17, 10:7, 10:8, 11:3, 13:4, 13:25, 14:4, 14:10, 16:22, 17:17, 19:2, 19:21, 23:22, 23:24, 28:21, 29:11, 34:25, 35:2
**two-way** [1] - 23:22

## U

**U.S** [1] - 35:17
**underscore** [1] - 26:15
**UNITED** [1] - 1:1

**universe** [1] - 25:14
**unless** [6] - 9:23, 12:15, 20:7, 21:17, 21:19, 30:19
**unnecessary** [1] - 24:1
**unrealistic** [1] - 18:16
**unreasonable** [2] - 17:20, 18:19
**unworkable** [3] - 15:10, 15:23, 17:23
**up** [10] - 9:5, 13:13, 16:11, 20:9, 20:23, 27:9, 31:25, 32:1, 33:12, 33:14

## V

**vacation** [1] - 8:5
**versus** [1] - 6:1
**veto** [1] - 21:8
**view** [20] - 7:15, 7:24, 8:9, 8:20, 9:7, 9:17, 11:19, 14:7, 14:19, 14:20, 15:10, 15:22, 17:24, 18:8, 18:19, 19:1, 19:20, 20:10, 20:15, 20:21

## W

**wants** [1] - 27:2
**wayside** [1] - 33:6
**week** [1] - 30:12
**whereas** [1] - 22:8
**whichever** [1] - 15:25
**whole** [2] - 19:8, 23:18
**willing** [1] - 24:21
**Wilmington** [1] - 1:21

## Y

**York** [2] - 4:6