# EXHIBIT B

1

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   NUVASIVE, INC.,                 :  CIVIL ACTION
                                     :
 5            Plaintiff,             :
                                     :
 6        v.                         :
                                     :
 7   GLOBUS MEDICAL, INC.,           :
                                     :  NO. 10-849-LPS
 8            Defendant.             :
                                  - - -
 9
                            Wilmington, Delaware
10                        Thursday, November 3, 2011
                           TELEPHONE CONFERENCE
11                            - - -

12
     BEFORE:    HONORABLE LEONARD P. STARK, U.S.D.C.J.
13                            - - -

14   APPEARANCES:

15
                FISH & RICHARDSON, P.C.
16              BY:  TARA D. ELLIOTT, ESQ.

17                   and

18              FISH & RICHARDSON, P.C.
                BY:  MICHAEL A. AMON, ESQ.
19                   (San Diego, California)

20                   Counsel for NuVasive Inc.

21
                POTTER, ANDERSON & CORROON, LLP
22              BY:  RICHARD L. HORWITZ, ESQ.

23                   and

24

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter
```

2

1    APPEARANCES (Continued):

2
                   WINSTON & STRAWN, LLP
3                  BY:   SHANE A. NELSON, ESQ.
                        (Houston, Texas)
4
                              Counsel on behalf of Globus Medical, Inc
5

6

7

8                            - oOo -

9                    P R O C E E D I N G S

10        (REPORTER'S NOTE:  The following telephone

11   conference was held in chambers, beginning at 1:50 p.m.)

12        THE COURT:   Good afternoon, everybody.  This is

13   Judge Stark.  Who is there, please?

14        MR. HORWITZ:  Good afternoon, your Honor.  It's

15   Rich Horwitz in Wilmington for Globus; and with me is Shane

16   Nelson from Winston & Strawn.

17        THE COURT:   Okay.

18        MS. ELLIOTT:  Good afternoon, your Honor.  This

19   is Tara Elliott with Fish & Richardson on behalf of the

20   plaintiff NuVasive; and I have with me my counsel, Michael

21   Amon from the San Diego office.

22        THE COURT:   That is everybody, correct?

23        MR. HORWITZ:  Yes, your Honor.

24        THE COURT:   All right.  I have a court reporter

25   here with me; and this is our case of NuVasive Inc. versus

3

1   Globus medical Inc., our Civil Action No. 10-849-LPS.

2               Today's call is to address the request from

3   defendant Globus to require the plaintiff to reduce the

4   number of asserted claims.

5               Having reviewed the letters, let me tell you

6   what my inclination is but certainly subject to hearing

7   whatever else you want me to think and whatever assistance I

8   can get from you on this call.

9               My inclination is to do something along the

10  lines of what is proposed by NuVasive in its letter which

11  would mean something along the lines, or what I am

12  contemplating doing is:

13              First, reducing the number of claims asserted;

14              Second, reducing the number of terms disputed

15  that we will construe in connection with the Markman

16  process, which I know is ongoing; and,

17              Also placing a limit on the number of prior art

18  references that can be asserted as a basis for invalidating

19  patents in suit.

20              So I'm inclined to do all three of those things,

21  make this case more manageable for all of you and for me,

22  and I'm interested in primarily the timing of doing all of

23  that and how extensive a reduction to impose.

24              So with that, let me turn it over to the parties

25  to tell me whatever it is you want me to hear.  We'll start

4

1      first with Globus as you are the moving party today.

2                    MR. HORWITZ:  Your Honor, this is Rich Horwitz.

3                    I'll start, and Mr. Nelson might join in given

4      the guidance that we have already heard from the Court.

5                    As far as doing all three, we don't have a problem

6      with that.  We think the timing should be different for

7      certain of those elements, and we think the first thing that

8      should happen is there should be a reduction in the number of

9      claims asserted both because of the Markman process and also

10     because of the other issues that are upcoming in this case.

11                   For instance, just two weeks from now, on

12     November 16, we're supposed to do our noninfringement

13     contentions.  We don't think it's appropriate for us to

14     have to do those contentions on all 55 claims that have

15     been raised by the plaintiff.

16                   So we think the first step would be to reduce

17     the number of claims.  We've suggested from 55 to 15.  We

18     still stand on that suggestion.  We think that should be

19     done now or very soon so that it will streamline the process

20     for not just Markman but for the case as a whole going

21     forward.

22                   I just want to emphasize that this comes up now

23     because we're kind of in the middle of the Markman process,

24     but the focus shouldn't be necessarily on Markman.  It only

25     comes up now because it was just recently when the plaintiff

5

1   expanded the asserted claims in the end of September, and

2   it just so happened that it was around the time that the

3   Markman exchange was going on, so that is why it kind of got

4   focused here.

5           So that is our position on the claims that are

6   asserted.  We think that should happen now.

7           As far as limiting the number of terms that are

8   in dispute, we're in a little bit of a difficult situation

9   here, your Honor.  We alluded to it just briefly in the

10  papers that were filed.  Frankly, I haven't seen a case like

11  this before, and I'm not going to get into a lot of details

12  about it.  But in the Markman briefs that were filed, we

13  filed a brief with our positions and the plaintiff filed a

14  brief that kind of gave the typical background of the

15  invention and some claim construction principles and

16  basically said everything should have its plain and ordinary

17  meaning, so I'm not sure what we're going to be up against

18  once they finally say anything other than that, if they ever

19  say anything other than that.

20          So we're a little bit in the dark on the claim

21  terms in dispute issue, although I will say that we were

22  able to address the terms that we felt were in dispute given

23  the page limits that the parties agreed to and your Honor

24  so ordered.  So I'm not sure that that is as big an issue

25  right now.  Mr. Nelson might want to chime in when I'm done

6

1    and say something else about that.

2                On the invalidity contentions, your Honor,

3    frankly we don't think it's appropriate to address that now.

4    They never filed an opening letter so we never filed a

5    response letter so that we could give you our full position

6    on this issue.  But I will tell you this much right now.

7                Based on my experience, the invalidity

8    contention or pieces of prior art reduction never happens

9    this early in a case.  It always happens much later in a

10   case.  Usually, it's not only after the claims have been

11   limited to some extent but it's also after a Markman

12   decision has come out so that you know what you are facing,

13   so you know what claims are at issue, and you know what the

14   construction of those claims are.

15               It would be highly prejudicial for us to be

16   limited in our invalidity contentions at this time, so we

17   would ask that that just be put off.  And,

18               We didn't put this in our papers, your Honor,

19   because we never filed a response paper, but we have been

20   following another litigation that NuVasive is in with

21   Medtronic which is out in California, and it's the exact

22   same NuVasive team and so they will be able to address this,

23   but it's my understanding that in that case, NuVasive relied

24   on hundreds of pieces of prior art to invalidate the

25   Medtronic patent, one is prior art to the NuVasive patent

1    in this suit.  And,

2              In that case, in June, the final invalidity

3    contentions included approximately 120 references for the

4    three patents, and 82 of those references were for the

5    retractor-related patents which is the prior art to the

6    patent in this suit.

7              As of the end of July of this year, in their 282

8    statement, they relied on 206 pieces of prior art, and the

9    trial was in September of this year, your Honor.

10             We're nowhere in that time frame now, and we

11   don't think that they should be imposed in this case.  We're

12   not aware of any case where these kind of restrictions have

13   been imposed on invalidity contentions and the number of

14   prior art references anywhere near as early as they're

15   seeking to do in this case.  So we think that should be put

16   off until long after they reduce the number of claims and

17   also long after the Court issues its Markman order, whenever

18   that will be in the future.

19             THE COURT:  Okay.  Thank you.

20             Mr. Nelson, did you want to add anything?

21             MR. NELSON:  I think Mr. Horwitz did a good job.

22   I might add something later on, but for now I'm good.

23             THE COURT:  Thank you.  Let me hear from the

24   plaintiff.

25             MR. AMON:  Your Honor, this is Mike Amon.

8

```
 1              Starting with the issue of claim construction, as
 2      we raised in our papers, in our responsive brief, the number
 3      of terms that Globus has put up for claim construction is not
 4      tied and there is no direct correlation to the number of
 5      asserted claims.
 6              In fact, your Honor, out of the 25 terms that
 7      Globus has proposed for claim construction, all of them can
 8      be found in just eight claims.  So there is no guarantee of
 9      any kind that if you were to limit the number of asserted
10      claims at this stage, that would in any way significantly
11      reduce the Court's or the party's burden for claim construction.
12              On that same point, of all the claims asserted,
13      55 asserted claims, only four of them are independent.  My
14      point in raising that, your Honor, is that even if we were
15      to choose to go with purely independent claims in this case,
16      we would still have to prove up that the defendants meet all
17      the limitations of the independent claims; and, again, that
18      doesn't eliminate the need to construe the terms of the
19      independent claims that Globus has put forward.  So I don't
20      believe, and NuVasive doesn't believe, that there is any
21      benefits by reducing the number of asserted claims for claim
22      construction purposes.
23              With respect to reducing the number of asserted
24      claims and what NuVasive views as a corresponding burden on
25      it of reducing the number of invalidity contentions, you
```

9

1    know, I think Mr. Horwitz arguments apply equally both ways.

2              We think by limiting the number of asserted

3    claims now, that would prejudice NuVasive from the benefit

4    of additional discovery which we anticipate taking over the

5    next couple of months.  And as Globus just articulated, we

6    would very much like to have the benefit of the Court's

7    claim construction in choosing which claims to go forward

8    with.

9              But we don't think that that is absolutely

10   necessary.  Our proposal contemplates giving us the ability

11   to take additional discovery and, at a period of time 30

12   days prior to opening expert reports, to limit the number

13   of asserted claims.

14             We recognize that it will be beneficial and more

15   appropriate for Globus to limit the number of invalidity

16   prior art after we have limited or reduced the number of

17   asserted claims, and our proposal contemplates that.  So

18   with respect to timing, we think that the time for limiting

19   number of asserted claims should be at some time in the

20   future after we have had the ability to take additional fact

21   discovery that will further shape and define our case, your

22   Honor.

23             THE COURT:  Okay.  Is that it?

24             MR. NELSON:  Yes.  I don't know if you have any

25   questions for us, your Honor.

10

1            THE COURT:  No, not as this point.

2            Mr. Horwitz, is there anything else you want to

3       say?

4            MR. HORWITZ:  Yes.  Just a couple more.

5            As I think I said before, the focus isn't just

6       on the Markman process.  I think we're all in agreement on

7       that in terms of the number of claims at issue.  But we

8       still have a serious concern about the effect of this on

9       the rest of discovery.  I mention in particular the

10      noninfringement contentions that we would have to do in two

11      weeks on the 55 claims.  And,

12           I'm not sure what they think the additional

13      discovery is going to do for them.  In fact, in looking at

14      their infringement contentions that they have given us even

15      on the newly asserted claims which they gave us at the end

16      of September, there are none of those claims where their

17      contentions are based exclusively on the recent depositions

18      and other things that they have taken.  Primarily, it was

19      all based on information that they had long ago.  And, I

20      will just give you one example.

21           The newly asserted claim 9 in the '840 patent

22      relies primarily on the same evidence of the previously

23      asserted claims on the '840 patent.  I think there were

24      eight claims before and now they've added, I don't know, it

25      looks like about 18 or 20 or 19 more claims.

1          So I don't think they need any more time.  I

2     think they may want some more time to drag things out and to

3     keep open all of their options, but in terms of efficiency

4     and narrowing the case and avoiding disputes, we think that

5     the time is ripe to do that now.  And,

6          On the invalidity side, I really didn't hear

7     anything to rebut my comments and my understanding of when

8     that typically happens in cases or any reason to change that

9     kind of a process where it's much later in the case.

10          So that's all I have, your Honor.

11          THE COURT:  Okay.

12          MR. AMON:  Your Honor, if I could address a few

13     more points?

14          THE COURT:  Is this Mr. Amon?

15          MR. AMON:  Yes, it is.  I'm sorry.

16          THE COURT:  Go ahead.

17          MR. AMON:  With respect to the invalidity

18     contentions, again, it's a balancing of burdens.

19          We have provided detailed contentions and provided

20     them evidence to the documents produced and to deposition

21     testimony taken of why we believe Globus products and surgical

22     technique infringe our asserted patents.

23          It sounds like Globus is just wanting to not to

24     have to respond to an interrogatory asking them to provide

25     their noninfringement positions.  I mean I understand them

1    not wanting to spend resources on that, but that doesn't

2    mean that they don't have to do it.

3              We have evidence in support of our asserted

4    claims, and we think that additional discovery will provide

5    us the ability to further refine and make the proper

6    election going forward.  But, again, we think requires

7    additional time.

8              With respect to the invalidity contentions,

9    again, it's a matter of equity, your Honor.  If you look

10   at their invalidity contentions which are attached as an

11   exhibit to our responsive letter brief, you can see that

12   they have provided over 110 different combinations that are

13   uncharted.  They've just said combine A with B with C and

14   that is one combination, and they did that 110 different times.

15   In addition, they provided more than 400 backup references

16   and have reserved the right to add additional references.

17             We have no way of determining what their

18   invalidity case will look like given the lack of specificity

19   in their invalidity contentions.

20             THE COURT:  All right.  Mr. Amon, what about

21   the procedural argument that they didn't really have a fair

22   chance to respond to this since evidently it was not clear

23   that that was going to be part of what was in dispute today?

24             MR. AMON:  Your Honor, we raised that issue with

25   them during the meet and confer.  It was also part of our

Case 1:10-cv-00849-LPS   Document 88   Filed 11/23/11   Page 13 of 22 PageID #: 3112

13

1    proposal to Globus during the meet and confer process that we

2    would limit the number of asserted claims and, thereafter,

3    within a two-week time frame, we would ask that they limit

4    the number of prior art invalidity sources.  So that they were

5    caught off guard, it seems a little disingenuous to me.

6              MR. HORWITZ:  Ah.

7              THE COURT:  Hold on a second, Mr. Horwitz.

8              Mr. Amon, you propose in your letter that

9    NuVasive would reduce the number of asserted claims by

10   30 days before opening expert reports are due.  Do you have

11   that date in front of you?

12             MR. AMON:  I believe opening expert reports are

13   due February 17th, your Honor, if memory serves.

14             THE COURT:  Okay.  Thank you.

15             All right.  Mr. Horwitz, you may go ahead.

16             MR. HORWITZ:  Yes.  Your Honor, on the

17   invalidity point, a couple of points.

18             There are hundreds of prior art references that

19   are listed on the face of the patents in suit, so it's not

20   our fault that there is crowded art in this area.  They

21   realized that when they tried to get these patents.

22             No. 1.  If they've felt that they had an

23   affirmative issue that they wanted to bring to the Court on

24   the limitation of prior art references, they should have

25   filed an opening letter.  They didn't.  So it's a fact, we

1    haven't responded to that in writing.   We're doing what we

2    can on the phone today.

3             They haven't responded to the very similar

4    case that they've just gone through where they were in

5    our position where they had hundreds of references that

6    they were relying on right up until the time before trial.

7             Your Honor, if we had to limit the primary

8    number of references that we would rely on but not the

9    combinations, I'm not going to go that far because I don't

10   think that is appropriate, we could limit the number of

11   primary references in our expert reports to, say, 25

12   references.   We would be willing to do that.

13            Now, the one point that I want to flag for your

14   Honor right now, and I don't know how this I going to shake

15   out, and I know we've had these issues in other cases and

16   it might affect this, and that is we're in the middle of

17   Markman briefing now.   We're going to have the argument.

18   Mr. Amon just said the opening briefs are due in February,

19   and if we don't have a decision by then, that may affect the

20   timing.   There may be some request to see if we can extend.

21            I'm just not sure where that is going to shake

22   out when we get there but we would be willing to limit

23   around that time to, say, 25 references.

24            THE COURT:   As you sit here, Mr. Horwitz, you

25   don't have reason to doubt that February 12th or thereabouts

1    is the date for the opening expert reports?

2                    MR. HORWITZ:  I can --

3                    MR. AMON:  Your Honor, this is Mike Amon.  I

4    have the order open now, and I can confirm that it is

5    February 17th for opening expert reports.

6                    THE COURT:  Okay.  Thank you for that.

7                    So, Mr. Horwitz, you are offering at this point

8    to reduce the number of prior art references by some time,

9    I'm not sure when, before February 17th or just on

10   February 17th in your report?

11                   MR. HORWITZ:  In our report.

12                   THE COURT:  Okay.  Mr. Amon, do you want to

13   address that real quick?  That offer?

14                   MR. AMON:  Yes, your Honor, I think that, again,

15   that doesn't properly balance the equities.  It's better

16   than not limiting them.  I will say that.  But we would

17   still urge that if we're going to be required to limit the

18   number of asserted claims prior to the filing of expert

19   reports, the same should apply to Globus limiting the number

20   of prior art sources for invalidity contentions.  And,

21                   Again, it goes to the burden of having to

22   prepare expert reports and responsive positions.

23                   MR. HORWITZ:  Your Honor, the last word on that.

24   This is Rich Horwitz again.

25                   The burdens aren't the same, your Honor.  They

1    need to provide a reasonable number of claims that we can go

2    forward with even for our contentions before expert reports.

3    That is why we raised this issue when we did.

4              When we have our noninfringement contentions, I

5    mean, your Honor, we have our noninfringement contentions

6    due in two weeks.  They won't have to respond on invalidity

7    until they see our expert reports.  They have a pretty good

8    idea of what we're relying on from our contentions, and

9    they'll have a better idea then.  And,

10             Still, I haven't heard anything where Mr. Amon

11   has suggested that the equities that he is requesting here

12   are supported by any of the cases that either side has

13   discussed, and the typical pattern that this Court and other

14   courts have done, which is to require some narrowing of the

15   asserted claims much earlier and then, frankly, when we get

16   close to trial -- and I know we have done this with your

17   Honor before, even in the context of a pretrial conference,

18   where the parties say at that point, yes, we're going to

19   limit, we're going to "really" limit now, we're going to

20   "really" limit our number of the claims that we're going to

21   go forward on, and we're going to "really" limit our number

22   of prior art references.

23             But they're not apples and apples, they're

24   apples and oranges, so we don't think we should be held to

25   the same timetable that they should be held consistent with

1       the practice in this court and other courts.

2                       THE COURT:  Okay.

3                       MR. AMON:  Your Honor, this is Mike Amon.  If I

4       may, just one point.

5                       THE COURT:  Go ahead.

6                       MR. AMON:  I take issue with Mr. Horwitz's

7       position that we can determine where they're coming from on

8       validity given the breadth of their invalidity contentions

9       as they stand now.

10                      That is the only point I want to raise.

11                      THE COURT:  Okay.  Thank you.

12                      Well, let me tell you what we are going to do.

13                      In my view, the dispute that is clearly and

14      fully before me is simply the request by Globus that the

15      Court order a reduction in the number of asserted claims.

16      The request is that they be reduced from 55 to 15 and that

17      they be done some time before November 18th.

18                      I'm going to grant in part and deny in part that

19      request.

20                      I am going to require that the plaintiff

21      reduce the number of asserted claims to 15, which is five

22      per patent, although the number 15 did not need to be met by

23      five per patent.  It can be a total of 15 however allocated

24      among the patents in suit as plaintiff wishes.  And,

25                      I'm not going to make the plaintiff do that in

18

1   the next week or two.  I am going to give them approximately

2   60 days from now to do it.  I'll give them until January

3   15th, 2012 to do it.

4           In the Court's view, this balances the party's

5   competing interests as well as the Court's interest in

6   managing this case and all of its other cases in an

7   effective and reasonable and efficient manner.

8           I recognize that this ruling requires, as a

9   consequence, that the defendant will have to provide its

10  noninfringement contentions with respect to all 55 asserted

11  claims that are currently in the case.  In the Court's view,

12  given how the case has developed and where we are now, that

13  is not inappropriate.  Therefore, that burden is on the

14  defendant and it will have to meet that burden.

15          While I recognize that the parties view it as

16  essentially coincidental that this dispute arose in the

17  middle of the ongoing Markman process, the Court is very

18  focused on the Markman process.  Having had a chance to look

19  at your case a bit in the course of preparing for today, the

20  Court is going to, and hereby does, reduce the number of

21  claim terms that are in dispute -- that is, that are not

22  in dispute but the number of disputes that the Court will

23  resolve in connection with the ongoing Markman process.

24          We will resolve no greater than 15 disputes with

25  respect to claim terms in connection with the upcoming

1    Markman hearing.

2              Therefore, in your upcoming answering claim

3    construction briefs, you need, and should, only address a

4    maximum of 15 disputes.  And, I'm going to direct the

5    parties to meet and confer and to agree on that list of 15

6    and advise the Court of that list of 15 no later than next

7    Wednesday.

8              Again, while I understand there may be

9    additional disputed terms beyond the 15, it's my view that

10   I am not obligated to resolve every claim dispute that the

11   parties have in connection with the Markman process.  I need

12   to resolve them all by the time I charge the jury but, of

13   course, that is a long time away, and there is no guarantee

14   whatsoever, as counsel who have practiced in front of me

15   know, there is no guarantee as to when you will get a

16   Markman ruling, and you should assume for purposes of plan

17   that you will not have a Markman ruling before your expert

18   reports are due, although you may have one but you should

19   assume you won't.

20             All else being equal, the fewer disputes we have

21   to resolve in connection with the Markman process, the more

22   efficient we can be in doing so, and that is part of what

23   motivates the ruling today with respect to the number of

24   disputes that the Court will resolve in connection with the

25   Markman.

Case 1:10-cv-00849-LPS   Document 88   Filed 11/23/11   Page 20 of 22 PageID #: 3119

20

1          Finally, in terms of whether the number of prior

2     art references are going to be reduced by court order at

3     this time, I'm not entering any order today.  Nothing about

4     what I am saying today constitutes an order directing the

5     defendant to reduce the number of asserted prior art references.

6          However, that being said, everybody recognizes,

7     including defendant, that the number of prior art references

8     is going to have to be reduced, just as a matter of practical-

9     ity.  And, it's going to need to be done in a timely manner,

10    but I am not going to impose any specific schedule or number

11    at this time.

12         If the plaintiff wishes to ask the Court to

13    impose a specific reduction and a specific time frame for

14    doing that, then you are hereby authorized to file a letter

15    on that issue due one week before the Markman hearing, and

16    if such a letter comes in, the defendant is given the

17    opportunity to respond to that letter.  I'll make that

18    letter due within two days of the plaintiff's letter and

19    that issue as to the timing by which I should reduce the

20    number of asserted prior art references and the timing for

21    doing it will be addressed as part of the Markman hearing,

22    if I do get that dispute.

23         I don't want to have any more argument, but I

24    have said quite a lot and want to make sure I have been

25    sufficiently clear.

21

```
1              Are there any questions, Mr. Horwitz?

2              MR. HORWITZ:  Your Honor, no questions, but I

3    do still want to keep up the flag that I mentioned, that

4    because of the way plaintiff chose to file their opening

5    brief on Markman, I'm not sure whether we're going to come

6    back to you for more relief either in connection with the

7    report that we give next week or some time after their

8    responsive brief is filed so that everybody will be in a

9    position of having all the arguments in front of the Court

10   by the time we get there for the Markman hearing.

11             THE COURT:  Okay.  Duly noted.  We'll see what

12   happens on that.

13             Is there anything else, Mr. Horwitz or Mr. Nelson?

14             MR. NELSON:  No, your Honor.

15             THE COURT:  Okay.  Mr. Amon?

16             MR. AMON:  Your Honor, just one question.

17             So there is no need for us, if we are interested

18   in filing that letter, to call the Court in the future to

19   get a hearing date on moving to limit the number of prior

20   art sources?  We can just submit the letter up to one week

21   prior to the Markman hearing; correct?

22             THE COURT:  That is exactly right.  Yes.

23             Is there anything else?

24             MS. ELLIOTT:  Your Honor, this is Tara Elliott.

25   If I may ask one question of clarification?
```

Case 1:13-cv-00723-LPS   Document 366-2   Filed 07/23/15   Page 23 of 23 PageID #: 6837
Case 1:10-cv-00849-LPS   Document 88   Filed 11/23/11   Page 22 of 22 PageID #: 3121

22

1              THE COURT:  Yes.

2              MS. ELLIOTT:  Your Honor permitted an

3    enlargements of the number of pages for briefing.  I think

4    that request is predicated on the number of terms that were

5    submitted by Globus.  Does your Honor still wish to have

6    that size or volume of briefing or would your Honor want to

7    address that in light of your order of today?

8              THE COURT:  I appreciate you raising it, but I

9    have given you the number of pages, so if either side thinks

10   you need them, you may do so.  Obviously, just address the

11   15 terms however.

12             Is there anything else?

13             MS. ELLIOTT:  No, your Honor.  Thank you.

14             THE COURT:  All right.  Thank you all very much.

15   Good-bye.

16             (Telephone conference ends at 2:22 p.m.)

17

18        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.
19

20                       /s Brian P. Gaffigan
                         Official Court Reporter
21                       U.S. District Court

22

23

24

25