# EXHIBIT C

```
 1                    IN THE UNITED STATES DISTRICT COURT
                      IN AND FOR THE DISTRICT OF DELAWARE
 2
      PRAGMATUS MOBILE, LLC,              :
 3                                        :     CIVIL ACTION
                 Plaintiff,               :
 4       v                                :
                                          :
 5    AMAZON.COM INC.,                     :
                                          :     NO. 14-436-LPS
 6               Defendant.               :
      ------------------------------------
 7    PRAGMATUS MOBILE, LLC,              :
                                          :     CIVIL ACTION
 8               Plaintiff,               :
         v                                :
 9                                        :
      ASUSTEK COMPUTER INC., et al.,      :
10                                        :     NO. 14-437-LPS
                 Defendants.              :
11    ------------------------------------
      PRAGMATUS MOBILE, LLC,              :
12                                        :     CIVIL ACTION
                 Plaintiff,               :
13       v                                :
                                          :
14    DELL, INC.,                         :
                                          :     NO. 14-438-LPS
15               Defendant.               :
      ------------------------------------
16    PRAGMATUS MOBILE, LLC,              :
                                          :     CIVIL ACTION
17               Plaintiff,               :
         v                                :
18                                        :
      HEWLETT-PACKARD COMPANY,            :
19                                        :     NO. 14-439-LPS
                 Defendant.               :
20                                          - - -

21                        Wilmington, Delaware
                       Tuesday, October 14, 2014
22                        Telephone Conference

23                                - - -

24    BEFORE:          HONORABLE LEONARD P. STARK, Chief Judge

25                                - - -
```

```
 1    PRAGMATUS MOBILE, LLC,                    :
                                                :     CIVIL ACTION
 2             Plaintiff,                        :
      v                                         :
 3                                              :
      LENOVO HOLDING COMPANY INC., et al., :
 4                                              :     NO.  14-440-LPS
               Defendants.                      :
 5    ------------------------------------
      PRAGMATUS MOBILE, LLC,                    :
 6                                              :     CIVIL ACTION
               Plaintiff,                        :
 7    v                                         :
                                                :
 8    CASIO COMPUTER CO. LTD., et al.,          :
                                                :     NO.  14-478-LPS
 9             Defendants.                      :
      ------------------------------------
10    APPEARANCES:

11
                  FARNAN, LLP
12                BY:  BRIAN E. FARNAN, ESQ.

13                       and

14                AGILITY IP LAW
                  BY:  PHILLIP W. MARSH, ESQ.
15                    (Menlo Park, California)

16                       Counsel for Pragmatus Mobile, LLC

17
                  ASHBY & GEDDES, P.A.
18                BY:  STEVEN J. BALICK, ESQ.

19                       and

20                FARELLA BRAUN + MARTEL, LLP
                  BY:  RODERICK M. THOMPSON, ESQ.
21                    (San Francisco, California)

22                    Counsel for Amazon.com, Inc.
                      in Civil Action No. 14cv436-LPS
23

24

25
```

3

```
 1    APPEARANCES:  (Continued)

 2
                  MORRIS JAMES, LLP
 3                BY:  KENNETH LAURENCE DORSNEY, ESQ.

 4                     and

 5                TURNER BOYD, LLP
                  BY:  JOSHUA M. MAZUR, ESQ.
 6                     (Redwood City, California)

 7                     Counsel for Asustek Computer Inc., et al.
                       in Civil Action No. 14cv437-LPS
 8

 9                RICHARDS LAYTON & FINGER, P.A.
                  BY:  STEVEN J. FINEMAN, ESQ.
10
                       and
11
                  FARELLA, BRAUN + MARTELL, LLP
12                BY:  RODERICK M. THOMPSON, ESQ.
                       (San Francisco, California)
13
                       Counsel for Dell, Inc.
14                     in Civil Action No. 14cv438-LPS

15
                  POTTER ANDERSON & CORROON, LLP
16                BY:  RICHARD L. HORWITZ, ESQ.

17                     and

18                K&L GATES, LLP
                  BY:  CURT HOLBREICH, ESQ.
19                     (San Francisco, California)

20                     Counsel for Hewlett-Packard Company
                       in Civil Action No. 14cv439-LPS
21

22                POTTER ANDERSON & CORROON, LLP
                  BY:  RICHARD L. HORWITZ, ESQ.
23
                       Counsel for Lenovo Holding Company Inc., et al.
24                     in Civil Action No. 14cv440-LPS

25
```

4

```
 1    APPEARANCES:   (Continued)

 2

 3                   POTTER ANDERSON & CORROON, LLP
                     BY:  RICHARD L. HORWITZ, ESQ.

 4                         and

 5                   SILLS CUMMIS & GROSS, PC
                     BY:  SCOTT D. STIMPSON, ESQ., and
 6                        KATHERINE M. LIEB, ESQ.
                         (New York, New York)

 7
                              Counsel for NEC Corporation of America
 8                            in Civil Action No. 14cv478-LPS

 9
                              Brian P. Gaffigan
10                            Registered Merit Reporter

11

12

13

14

15

16

17                            - oOo -

18                    P R O C E E D I N G S

19            (REPORTER'S NOTE:  The following telephone

20    conference was held in chambers, beginning at 12:19 p.m.)

21            THE COURT:  Good afternoon, everybody.  This is

22    Judge Stark.  Who is there, please?

23            MR. FARNAN:  Good afternoon, Your Honor.  Brian

24    Farnan on behalf of the plaintiff, and with me is Philip

25    Marsh from Agility IP Law.
```

```
 1              THE COURT:  Okay.

 2              MR. BALICK:  Your Honor, Steven Balick for Ashby

 3    & Geddes for Amazon.  And I'm joined by Roderick Thompson

 4    from Farella Braun + Martel.

 5              THE COURT:  Okay.

 6              MR. DORSNEY:  Good afternoon, Your Honor.  Ken

 7    Dorsney for Asus from Morris James.  With me on the line is

 8    my co-counsel, Joshua Mazur from Turner Boyd.

 9              THE COURT:  Okay.

10              MR. FINEMAN:  Good morning, Your Honor.  Steve

11    Fineman at Richards Layton on behalf of Dell; and I also

12    have Roderick Thompson from Farella Braun + Martel with me.

13              THE COURT:  Okay.

14              MR. HORWITZ:  Your Honor, it's Rich Horwitz from

15    Potter Anderson on behalf of Lenovo by myself.

16              On behalf of HP, Curt Holbreich from K&L Gates.

17              And on behalf of NEC, Scott Simpson and Kate

18    Lieb from Sills Cummis.

19              THE COURT:  Okay.  Thank you.

20              Is that everybody?

21              MR. FARNAN:  Yes, Your Honor.

22              THE COURT:  I have my court reporter here with

23    me.  For the record, we're here to discuss scheduling in

24    I believe it's seven related matters.  They all involve

25    Pragmatus Mobile LLC as the plaintiff.  The first one is
```

1    versus Amazon.com Inc., it's our Civil Action No.

2    14-436-LPS, and the other matters are 14-437, 14-438,

3    14-439, 14-440, and 14-478.  So I am corrected.  I believe

4    it's six matters and not seven.

5           I have reviewed the proposed scheduling order

6    and wanted a chance to speak to you all about primarily

7    what is in dispute there.  So let me here first from the

8    plaintiff, please.

9           MR. MARSH:  Good morning, Your Honor.  Philip

10   marsh from Agility IP Law on behalf of Pragmatus Mobile LLC,

11   the plaintiff.  How would you like to do this, Your Honor?

12   Would you like to do paragraph by paragraph or what disputes

13   remain, hearing from each side?

14          THE COURT:  I want to hear from you on anything

15   you want to address first, and then I will turn to defendants.

16          MR. MARSH:  Oh, okay.

17          THE COURT:  So all of the issues that you want

18   to be heard on, you should address.

19          MR. MARSH:  Okay.  Absolutely.  Thank you for

20   the clarification.

21          So, Your Honor, we've substantially reached

22   agreement on the scheduling order.  There remains six

23   paragraphs where we have some disputed issues that we were

24   not able to work out and we could use the Court's guidance

25   on those issues.

1          The first issue is in paragraph 7(d) of the

2     proposed scheduling order.  This relates to defendants'

3     initial invalidity contentions.

4          With respect to that issue, Your Honor, the

5     plaintiff -- well, first of all, we reached an agreement

6     as to the date by which those should be served, and that is

7     February 13th, 2015.

8          The dispute that remains is that we, the

9     plaintiff here argues that the defendants' invalidity

10    contentions should be a chart mapping reference to each of

11    the claim elements, and the defendants should provide any

12    reasons or motivations why one of ordinary skill would

13    combine any of the references in any combinations asserted

14    by the defendants.

15         It's our view, Your Honor, that that is the

16    only way we're going to know what the defendants actual

17    contentions are.  I think in some cases we have seen just

18    kind of a laundry list of references thrown in, and that is

19    really not going to be sufficient, especially here where

20    Your Honor has requested or has ordered actually that we

21    make a preliminary reduction of asserted claims before the

22    claim construction hearing.  That's something that the

23    defendants asked for and the Court agreed to in our last

24    hearing.  In view of that, we really think it's necessary to

25    understand what the defendants' position is with respect to

 1    their invalidity contentions.

 2              It's interesting, Your Honor, when we talked

 3    about this before, the parties, we actually had a call on

 4    August 18th, 2014.  I remember it well because it was during

 5    a vacation that I had.  During that call, I was told by the

 6    defendants that really our proposal was their understanding

 7    of how they needed to provide invalidity contentions anyway,

 8    so I'm a little surprised when we weren't able to reach

 9    agreement on this.  But our view is that like what the

10    defendants have told me, that that really is kind of the

11    basic requirement for invalidity contentions.

12              The defendants here argue that the form

13    paragraphs in 7(d) and 7(c) from the Court's form scheduling

14    order, that those paragraphs are sufficient by themselves.

15    And they alternatively argue if our proposal is adopted by

16    the Court that the same specificity requirement should apply

17    in paragraph 7(c).

18              Let me just say that here, the Court has asked us

19    to change the form scheduling order, so sticking to the form

20    scheduling order in our view doesn't make a lot of sense.

21    What we're trying to address is a need that is caused by the

22    deviation from the form scheduling order that the defendants

23    requested and the Court agreed with and that is that initial

24    reduction of claim terms.  So in order for us to make a

25    meaningful reduction, we really need to understand what their

1    contentions are in the initial invalidity contentions.   So

2    that's really our position on that issue.

3          It's interesting.   I think you may see, as we

4    discuss later in connection with paragraph 7(g), Your Honor

5    will see that the defendants want to keep up to 60 prior art

6    references.   That may be revealing as to why they don't want

7    to chart these things.   But our view is that that really is

8    something that we need to see.

9          Also, their comment about the same level of

10   specificity in paragraph 7(c) should be, that it should be

11   treated equally with whatever proposals are adopted here.

12   What we agree in general we'll find with equal treatment.

13   It doesn't make a lot of sense because paragraph 7(c) as a

14   form order actually already addresses this and says that we

15   need to have a claim chart and that we need to map the claim

16   terms to the accused products.   So we're trying to address

17   what we view as a difference between those two paragraphs

18   and just make sure that we get an adequate disclosure from

19   the defendants so we're able to make our initial reduction

20   of claim terms.

21          So that is our position with respect to the

22   dispute in paragraph 7(b).

23          Moving on to the next dispute, unless Your Honor

24   has any questions.   That would be paragraph 7(f).

25          In that paragraph, there are competing proposals

1    with regard to the defendants' final invalidity contentions.

2    Here again, the parties agree the final invalidity contentions

3    should be served by October 2nd of 2015.

4            The difference comes here that the plaintiff

5    argues that the final contentions should be within the scope

6    of the initial invalidity contentions, but we make room for

7    two exceptions.  One would be any changes required because

8    of claim construction and two would be any changes required

9    because of new information not available to the defendants

10   at the time of the initial contention.

11           The reason why we argued for this, Your

12   Honor, is that we need to understand what the scope of the

13   defendants' theories are going to be.  The date we have

14   agreed on, October 2nd, 2015, that is more than a month

15   after the parties have agreed that we should make a final

16   reduction on the asserted claim terms.  That date, where we

17   have agreed to make our final reduction on asserted claim

18   terms, is August 28th.

19           What we are trying to avoid here through our

20   proposal is the situation where there is an initial set

21   of contentions and one theory.  We then make our final

22   reduction based on that and based on claim construction.

23   Then the defendants come in and change their theory, and

24   then we're stuck with some claims based on the wrong theory.

25   So we're trying to avoid that situation.  We really feel

1    like we need to understand that their final contentions are

2    going to be within the scope of those theories set forth in

3    their initial contentions with the exception of those two

4    situations that I outlined.

5           We think this is actually pretty standard.  I

6    mean this is a situation where we feel like if they weren't

7    within the theory, we could potentially move the Court for

8    some relief.  But we would like to build it in ahead of time

9    before any dispute down the road.

10          Let's see.  Here again, the defendants argue

11   that the form paragraphs and the form scheduling order are

12   sufficient.  Again, this is another situation where we're

13   actually trying to address something that the defendants

14   requested a change from the form scheduling order in the

15   form of another reduction, a final reduction of claim terms.

16   And we're trying to address that by asking for a slight

17   tweak of the form scheduling order with respect to what is

18   required in their final contentions.

19          So it doesn't make a lot of sense in our view to

20   say, hey, the form scheduling order is sufficient.  We have

21   already deviated from that, and we're just trying to make

22   sure there is no dispute that arises from that deviation.

23          THE COURT:  All right.  You can go on to 7(g),

24   please.

25          MR. MARSH:  Thank you.  Your Honor, if I could

Case 1:13-cv-00723-LPS   Document 366-3   Filed 07/23/15   Page 13 of 36 PageID #: 6850
Case 1:14-cv-00436-LPS   Document 26   Filed 11/06/14   Page 12 of 35 PageID #: 216

12

1    just mention one thing.  If they're not required to keep

2    within those contentions, then we might suggest that we need

3    to flip that date for the final reduction until after their

4    final contentions.  That might be another way to address that.

5                Paragraph 7(g), this relates to reductions of

6    asserted claims and prior art.  Here again, we have agreement

7    as to the date.  In this case, Your Honor, we argue that our

8    initial reduction of claim terms should be March 6th of 2016.

9    That is after the defendants' initial reduction of prior art

10   references.

11               The reason that we argued for that is we're more

12   than happy to go first on contentions.  We're more than

13   happy to go first in the final reduction of asserted claims

14   and claim terms.  But there is really no reason for us to

15   reduce the number of terms that we're asserting unless we

16   understand what their defenses are.  So because we're going

17   first in every other instance, Your Honor, we would suggest

18   that it makes sense for the defendants here to go first with

19   respect to their initial reduction of prior art references,

20   to give us some guidance as to what their stronger defenses

21   are and what really makes sense to reduce.  There is really no

22   reason for us to reduce claims other than that we're required

23   to do that, and we're just looking for some guidance here to

24   help us do that.

25               THE COURT:  And remind me how many patents and

Case 1:13-cv-00723-LPS   Document 366-3   Filed 07/23/15   Page 14 of 36 PageID #: 6851
Case 1:14-cv-00436-LPS   Document 26   Filed 11/06/14   Page 13 of 35 PageID #: 217

13

1    patent claims are there right now in this case?

2             MR. MARSH:  Yes.  So each claim, each of the

3    six cases has one patent in common, which is the '795

4    patent.  There are two cases, the case against Dell and the

5    case against HP, that have an additional patent, the '124

6    patent.  So with respect to the '795 patent, that patent has

7    33 claims in it.  The '124 patent has 21 claims.

8             Our initial proposal, as you saw, was a

9    reduction of ten percent.  We were seeking -- with respect,

10   let me address the '795 patent since that is common to every

11   case.  Our thought was that we would go down to about 30

12   claims initially.  The reason that we said ten percent is we

13   were just trying to come up with a rubric that would make a

14   common proposal make sense across all the cases since there

15   are different patents involved, but what we were thinking

16   with respect to the '795 patent is we would go down to about

17   30 claims.

18            Now, Your Honor, I saw that recently on

19   September 22nd, the Court had ordered, in the Enzo Life

20   Sciences case, had ordered an initial reduction by the

21   plaintiff down to no more than 25 asserted claims.  Now,

22   that was actually after claim construction.  But even though

23   we are before claim construction here, Your Honor, we would

24   be happy to go down to 25 asserted claims for the '795 patent.

25            And then for the '124 patent, in the two cases

1    where that applies, we could go down, you know, maybe 15

2    would make sense.  We were thinking initially 18 to 19.  But

3    if we went down to 15, that would make a total of 40 claims

4    in the two cases that involve the two patents.  We think

5    that that is a reasonable proposal.

6            The defendants had proposed no more than 15

7    total claims and no more than ten per patent.  In our view,

8    first of all, that proposal is a little ambiguous to us

9    because of the way that it applies across the different

10   cases, whether there is one patent or two.  But it's also

11   quite a Draconian cut.  What they're proposing is, because

12   they're saying no more than 10 claims per patent, I mean

13   that would reduce, that would cut 23 claims out of the '795

14   patent.  That is a reduction of more than 70 percent.  And

15   if we use the maximum of 10 claims for the '795 patent, then

16   we only have five remaining.  That would be a reduction of

17   76 percent with respect to the '124 patent in cases where

18   that applies.

19           In our view, that is far too Draconian a cut

20   for the initial claim reduction.  In fact, in our view,

21   their proposal for the initial reduction is actually in the

22   ballpark of what we could present at trial which is another

23   indicator that it's going too far.

24           With respect to prior art, they argue -- so we

25   have argued that the prior art references in the initial

1    reductions should be reduced to no more than 20 prior art

2    references.  We think that is a lot of references.  That is

3    pretty generous.

4            The defendants argue they should be limited to

5    no more than 60 references.  And then also, on top of that,

6    they add this caveat that references that describe a single

7    system, or here they call it an instrumentality, shall count

8    as a single prior art reference.  And that is no matter how

9    much prior art references are describing that single system.

10           In our view, that is really unworkable as well.

11   If we go by their proposal, I mean the total claims in both

12   patents, before any cuts, is, there is 33 in the '795 and 21

13   in the '124.  So that is a total of 54 claims.

14           They're essentially saying that they would like

15   a new reference for every single claim and kind of not

16   taking into account even that there is a lot of repetition

17   and single references might apply across several claims.  We

18   think that is just, it's not really a meaningful reduction

19   at all.

20           In addition, the proposal that as many

21   references as they want that applied to a single system

22   would count as one reference, in our view that is totally

23   unworkable.  We have actually seen this in several recent

24   cases where defendants tend to cite a "system" and they say

25   that the system anticipates whichever patent claims they're

1    asserting it against, but then their system, their evidence

2    that the system supposedly anticipates is really a string

3    of six or seven prior art references, so really what they're

4    making is kind of an obviousness argument because they don't

5    have references to make this anticipation argument.

6              So we submit that that is not really, that is

7    not something we should have to deal with here.  I mean I

8    think that they should be limited to a number of references

9    and make their position clear and not try to sneak in an

10   anticipation reference or an anticipation argument that

11   really is a dressed up obviousness argument, if that makes

12   sense.  So that is that paragraph in our disputes.

13             Oh, we also think that they're -- no, that is it

14   for that paragraph.

15             Paragraph 7(h) deals with the final reduction

16   numbers for asserted claims in the prior art.

17             Here we have agreement as to the dates, although

18   as I mentioned before, the date of August 28th, 2015 for

19   our final reduction of claim terms, if we're not able to

20   get some specificity and maybe get them limited within the

21   theories presented in their initial contention other than

22   the two exceptions that I articulated, then we would suggest

23   that maybe that date needs to be pushed back, and it might

24   make sense to do that on October 2nd and have a simultaneous

25   exchange.

1            That said, what we're arguing for here in

2    connection with paragraph 7(h), we're arguing that the final

3    reduction of claims should be, that that should actually be

4    down to 15 claims per patent.  We think that that is very

5    reasonable.  And,

6            In fact, I noted that in that recent Enzo Life

7    Sciences case that I mentioned earlier that was issued by

8    the Court on September 22nd, the Court actually went with a

9    number of 15 per patent.  I mean there is only one patent in

10   suit there, but the Court said that the final reduction of

11   asserted claims needed to be to more than 15.  So we're

12   right in line with that.

13           The defendants here are proposing that the final

14   claims should be limited to no more than eight total, and no

15   more than five claims per patent.  We think, again, that is

16   going way too far.

17           The limitation really hurts in the two patent

18   cases, you know, the cases that involve both patents because

19   in that scenario, if we're limited to five claims, which

20   again we think that that is unreasonable on its face by

21   itself, that in that case, then we would only have three

22   claims left over for the other patent and that is really

23   unworkable.

24           In our view, 15 is totally reasonable.  It's

25   totally in line with what this Court has done even very

1    recently in the Enzo Life Sciences case, and we don't think

2    we should be limited beyond that.

3            Let's see.  With respect to the prior art

4    references, we argue that the defendants should be limited

5    to no more than ten references on their final reduction.

6    They argued for 20, and then they say not more than five

7    for any single claim.

8            In our view, ten references is really even

9    beyond what they'll be able to realistically present at

10   trial.  We believe this final reduction should really be

11   final, so it should be the number that they intend to

12   present at trial.

13           They propose 20 references, which there is no

14   way they're going to be able to present 20 references at

15   trial.  And the five reference maximum per claim that they

16   propose is really unrealistic.  I mean essentially what

17   they're contemplating is a five reference combination on a

18   claim, and I don't think I have ever seen that be successful

19   in recent history.  In our view, that is an unreasonable

20   proposal.

21           With respect to paragraph 8(b), this paragraph

22   deals with the document production substantial completion

23   date.  The disagreement here is just mainly on dates.  We

24   propose April 16th, 2015.  And they propose a couple months

25   later, on June 12th, 2015.

1          In our view, the April date is much more

2     appropriate here for two reasons:  One, it's before the

3     interim status report which is on April 23rd.  And it's

4     before the claim construction briefing which begins on

5     April 17th.

6          We feel like we should know the discovery

7     deficiencies, if any, before the interim status report.  I

8     mean that is the whole point of the report is to address any

9     deficiencies.  If we don't have a substantial completion by

10    that date, then it's going to be very difficult for us to

11    say exactly what those deficiencies are.  We would like to

12    really solidify and understand where we stand before that

13    interim status report.  Also, we believe we should have the

14    benefit of substantially all of defendants' production by

15    the time that we're drafting claim construction briefing.

16          Their proposed date actually comes after all of

17    the briefing would be completed for claim construction.  And

18    we don't understand why they would want to delay it until

19    after the completion of claim construction briefing.  In our

20    view, that is something that we really need before we get to

21    claim construction, and there is no real reason for the two

22    month delay.  I don't know what they really gain from that.

23          THE COURT:  Thank you.

24          MR. MARSH:  Finally --

25          THE COURT:  Yes.  Before I turn it over to

1   defendants, because we're starting to run out of time, is

2   there a dispute on the number of claim terms that the Court

3   will construe?  You have different proposals, but I couldn't

4   tell if you have a dispute.

5          MR. MARSH:  Yes.  I think the only dispute is

6   that they want to -- the main dispute is that they want to

7   say that there is going to be no less than ten terms unless

8   all parties agree.  We don't think that is really appropriate.

9   I mean they want to kind of force it up to ten terms and

10  require that.  Our view is that that was the maximum that

11  was set by the Court during the last hearing.

12         THE COURT:  But if you don't agree that it

13  should be less than ten, then it would be ten; right?

14         MR. MARSH:  Right.  But I guess what I'm saying

15  is, in our view, there probably are fewer than ten, but I

16  think we should talk that out.  We should have an opportunity

17  to land somewhere in the middle.  If we think there are

18  three terms or five terms that should be in dispute, and

19  they feel like that there are ten and that is the maximum

20  set by the Court, the presumptive limit at least set by the

21  Court, then in our view we should be able to land somewhere

22  in between there because of the difference of opinion, and

23  we shouldn't default up to the presumptive maximum that the

24  Court set.

25         THE COURT:  All right.  Thank you.  Is there one

1   person speaking for the defendants?

2            MR. THOMPSON:  Yes, Your Honor.  This is Robert

3   Thompson for both Dell and Amazon.  Others may have comments

4   but I'm going to take the lead.

5            THE COURT:  Okay.  Go ahead.

6            MR. THOMPSON:  Thank you, Your Honor.

7            With respect to the last point first, the

8   dispute is whether plaintiff could essentially have a veto

9   power over five claim terms.  I think their position has

10  been plain and ordinary meaning, no construction necessary,

11  and that would effectively give them a chance to reduce it

12  to five instead of ten.

13           We're happy to say that they can choose five or

14  we can choose five, but we're concerned that the ten number

15  will get down to five pretty quickly if the plaintiff has

16  control over five.  So that is why we have suggested the

17  language being that ten terms unless all parties agree to a

18  lesser number.  Maybe we will all agree that we don't need

19  all ten, but unless we all agree, we think it is prudent to

20  keep all ten.

21           Your Honor, back to paragraph 7 where I think

22  most of the dispute is.  That is the four subparagraphs.

23           To step back a moment, I think the real dispute

24  here is one of timing and order.  Looking at the appendix to

25  the proposal, the proposed scheduling order, I think it

1   comes out most clearly here where we list in order the

2   dates proposed.  And you will see, Your Honor, that the

3   plaintiff's proposal is that they would provide initial

4   claim chart on January 5 but would not have a reduction of

5   claim terms at that time.  So I guess we can anticipate a

6   claim chart asserting every claim.  That's 33 in one patent

7   and 21 on the other.  And they're proposing that they not

8   have to reduce asserted claims until March 6th whereas you

9   can see 7(d) and 7(g), those are the defendants obligations,

10  the initial invalidity contentions and the initial reduction

11  of prior art references are February 13.

12          Your Honor, we believe it makes no sense for

13  defendants to be charting all invalidity contentions against

14  all claims in both patents when we know and we just heard

15  Mr. Marsh say they're going to be reducing their claim

16  terms.  They're not going to be asserting all claim terms in

17  both patents.  That is just a make-work exercise.  We don't

18  believe it's appropriate.

19          By the same token, it makes even less sense for

20  us to have an initial reduction of prior art references

21  before we even know what claims are being asserted in their

22  initial reduction of asserted claims.  We can't make a

23  reduction of prior art references if we're assuming that all

24  claims are being asserted against us as of February 13.

25          Therefore, we believe that both obligations, the

Case 1:13-cv-00723-LPS   Document 366-3   Filed 07/23/15   Page 24 of 36 PageID #: 6861
Case 1:14-cv-00436-LPS   Document 26   Filed 11/06/14   Page 23 of 35 PageID #: 227

23

1    initial claim chart and the initial reduction of asserted

2    claims, should take place on the same day, January 5, and

3    then we would react to those with our invalidity contentions

4    and initial reduction of prior art references on February 13.

5              Indeed, that is the way the parties have agreed

6    that it should work for the final reduction.  It certainly

7    makes sense to do it for the initial reduction as well.

8              With respect to the content of the initial

9    contentions, I think our point is simply that, I don't really

10   think there is a dispute here.  These parties are experienced

11   counsel.  We know what is acceptable in Delaware.  We can be

12   guided by our local counsel as to both the initial claim

13   charts and the initial invalidity contentions.  I don't think

14   there is going to be a dispute there.

15             What we're concerned about again is the

16   specificity that the plaintiff is suggesting in 7(d).  If

17   you apply that kind of specificity to every claim in both

18   patents, which is what they're asking, that is a whole lot

19   of work that doesn't need to be done.

20             Again, if the Court is inclined to impose some

21   specificity, we do think, and I think Mr. Marsh was agreeing

22   that it should be a two-way street and specificity should

23   be required for both, we don't think that is a necessary

24   exercise but it should be a two way street if it's done.

25             THE COURT:  Mr. Thompson, help me understand

Case 1:13-cv-00723-LPS   Document 366-3   Filed 07/23/15   Page 25 of 36 PageID #: 6862
Case 1:14-cv-00436-LPS   Document 26   Filed 11/06/14   Page 24 of 35 PageID #: 228

24

1    where it would be too much work and unnecessary to do the

2    chart and disclose the motivation at 7(d).

3           MR. THOMPSON:  It would only be too much work,

4    Your Honor, if we're charting against claims that would be

5    dropped momentarily.  For example, the '124 patent only has

6    one independent claim but it has 21 claims in all, so that

7    is 20 dependent claims.  If we're having to chart to find

8    references with respect to each of those, that is a big

9    burden, and then the motivation to combine the same way.

10          We don't mind the specificity provided it's

11   realistic, that is, against claims that are actually going

12   to be in dispute and not a make-work exercise.

13          THE COURT:  You can go on.

14          MR. THOMPSON:  Thank you, Your Honor.

15          With respect to the number of claim terms, this

16   is 7(g), ten percent, I think Mr. Marsh was suggesting he

17   might be able to go to 25 claim terms in the '795 patent

18   and -- sorry -- 15 claims, not terms, in the '124 patent.

19   The '124 patent, as I mentioned, has only one independent

20   claim.

21          First of all, if he is willing to make that

22   kind of reduction before we have to respond, that would

23   lessen our burden, but a ten percent reduction from 33 and

24   24 claims is really pretty meaningless.

25          With respect to the number of prior art

1    references, 60 admittedly is a large number, but right now,

2    we have the prospect of having to chart against all claims

3    in both patents, which is 54 claims, so that is why that

4    number is large for us.  It certainly could be reduced if we

5    have any more manageable number of claims being asserted.

6          I think the number of claims being asserted and

7    the number of prior art references, that dispute is pretty

8    well straightforward.  I will say that with respect to the

9    final reduction, I heard Mr. Marsh say that his argument

10   was we should, defendants should be limited to no more than

11   ten references because we couldn't present more than that

12   at trial.

13         Well, that is mixing apples and oranges.  This

14   is the final contentions given, limiting the universe from

15   which we will select references to assert at trial.

16   Certainly, we're not necessarily going to be asserting all

17   the references that are in the final invalidity contentions

18   at trial.  We make that judgments before trial.  But that

19   doesn't speak to a reason for imposing an arbitrary even

20   more limiting number of references on us before trial.

21         So, Your Honor, that's the argument on 7(d), et

22   cetera.  I really think it does come down, most importantly

23   for defendants, to timing, just to make sure an orderly

24   process proceeds with plaintiff reducing the number of

25   claims asserted and us reacting to that so that we're not

26

 1   doing something for nothing and the process is proceeding

 2   orderly.

 3          With respect to the substantial completion

 4   date for document production, to give Your Honor some

 5   perspective, we all have received common requests for

 6   production of documents recently, 92 in number.  There is

 7   going to be an effort I think to impose a very large burden

 8   about document production, so we suggest that June 12th is

 9   a more realistic date to comply with the demands that the

10   plaintiff is imposing.  That is why we suggested April 16

11   would just be too quick for that.

12          And, Your Honor, I did touch on the reduction

13   of claim terms earlier.  The one nuance that may not be

14   apparent is -- this is page 15 of the scheduling order.

15   There is a slight, and I underscore "slight," disagreement

16   about the form of the joint claim construction chart.  And

17   it may be a little subtle, but the idea that is called out,

18   of course, is that the parties will exchange claim terms and

19   proposed constructions and then meet and confer and try to

20   agree on as much we can.  And then for all terms remaining

21   in dispute, we'll prepare a joint claim construction chart

22   to be submitted to the Court.

23          Defendants suggest that in that chart we should

24   give to the Court all of the disputed claim terms and then

25   indicate which of those terms will be identified as the ten

1      that would be briefed.

2               Plaintiff just wants to cover the ten that will

3      be briefed and not cover the earlier or the other claim

4      terms that we would have discussed and debated and have a

5      disagreement about.

6               Your Honor indicated that it might be necessary

7      to go beyond ten claim terms at some point.  We would just

8      like to make sure that the parties' efforts are reported in

9      a way that could be picked up and discussed later on, if

10     necessary.

11              THE COURT:  All right.  Thank you.  One question

12     for you.  Back on 7(h).  With respect to the asserted prior

13     art references, this parenthetical you have in your proposal

14     of not more than five for any one asserted claim, what is

15     that accomplishing?

16              MR. THOMPSON:  That's accomplishing -- I think

17     Mr. Marsh's concern was that we would be using the same

18     references multiple times against one claim, so that if --

19     I think that was really trying to address his concern that

20     there would be overkill on the number of obviousness references.

21     I don't think that is an important point either way, though.

22              THE COURT:  All right.  Does any other defendant

23     want to be heard?

24              MR. MAZUR:  Yes, Your Honor.  Sorry.  This is

25     Joshua Mazur for the Asus defendants.  I just wanted to add

1    briefly to Mr. Thompson's comments about specifically

2    paragraph 7(f).

3              Again, on 7(d), there is a specific note on

4    defendants' proposal that if initial specificity is required

5    for defendants' contentions, the same should apply to

6    plaintiff.

7              I would add that if you do adopt plaintiff's

8    proposal on 7(f) that these same requirements shall also

9    apply to plaintiff's charts and the scope of plaintiff's

10   infringement contentions, their final infringement

11   contentions.

12             The other point, Your Honor, was on paragraph

13   8(b) on the document production.  Frankly, it's very hard

14   for us to know at this point how burdensome the document

15   gathering process is going to be.  We don't receive

16   plaintiff's identification of the accused products until

17   this Friday.

18             If it's ten products, that will obviously be a

19   lot less burdensome and potentially would be achievable by

20   April 2015.  If we are talking about a thousand products,

21   getting it, having that initial two months would make a huge

22   difference, Your Honor.  Simply, we just don't know at this

23   point.  Plaintiff hasn't set the scope of the case yet.

24             Those are my comments, Your Honor.  Thank you.

25             THE COURT:  Mr. Mazur, or maybe back to

1   Mr. Thompson, help me.  Going back to the specificity.  The

2   additional specificity the plaintiff is calling out is very

3   specific to invalidity.  What additional particular specificity

4   would you be looking for me to require from them in terms of

5   infringement if I were to go with their language on the

6   invalidity contentions?

7          MR. MAZUR:  Your Honor, this is Joshua Mazur again.

8          As to 7(f), they proposed that our final

9   invalidity contentions shall be limited to the scope of the

10  theories set forth in our initial invalidity contentions

11  with two exceptions that were identified earlier.

12         We would simply say or, sorry, Asus would simply

13  say, and I'm not sure if the other defendants join, that if

14  that holds for invalidity contentions, it also should hold

15  that for infringement contentions, the final infringement

16  contentions must be within the scope of the theories set

17  forth in the initial infringement contentions.  Plaintiff

18  can't go off on a new theory that would reset the scope of

19  the case.

20         THE COURT:  Okay.  Thank you.  Is there any

21  other defendant on that point or anything else?

22         MR. THOMPSON:  Yes, Your Honor.  This is

23  Roderick Thompson again.  Just very quickly.

24         We had considered referring to local rules from

25  other courts but thought that was not appropriate.  But the

 1    standard local rules of several other courts for patents

 2    will spell out specificity with respect to both the initial

 3    and final infringement contentions of a similar scale to

 4    what Mr. Marsh has proposed here.

 5              THE COURT:  Thank you.  Is there any other

 6    defendant?

 7              All right.  Thank you.  Well, since we're nearly

 8    out of time, I don't have time for any rebuttal here.

 9              Let me give you my rulings and some dates.  The

10    end result of this is I want to see a revised scheduling

11    order reflecting today's discussion and rulings, and let me

12    have it by Friday of this week, please.

13              I think the first dispute is at page 6, and it

14    has to do with these contentions.

15              I'm going to go with what the plaintiff has

16    proposed here as 7(d) and 7(f).  And I am going to further

17    impose on the plaintiff that for their final infringement

18    contentions that they be within the scope of their earlier

19    contention unless they can show some good cause to deviate

20    from that.

21              I think in light of the scope of this case and

22    the number of parties and the fact that I am going to require

23    plaintiff to a couple of times reduce the number of asserted

24    claims, and I am going to require them to do that first, it

25    will be helpful to ensure, particularly since there is no

1    dispute substantively, but ensure in the order that this

2    specificity the plaintiff is looking for in terms of the

3    initial and final invalidity contentions is going to be

4    forthcoming from the defendants.  It will help the case move

5    along according to the way in which we all envision that it

6    should.  So that is 7(d) and 7(f).

7           Turning to 7(g).  In terms of the date, we'll

8    adopt the defendants' dates.  So, again, the plaintiff will

9    need to reduce the asserted claims first.  And the number

10   will be no more than 20 asserted claims from the '795 patent

11   and no more than 10 from the '124 patent.  I think that that

12   is reasonable in light of the number of claims and again in

13   light of the scope of the case and in light of the necessary

14   reducing and focusing of the case that will be necessary.

15          Then in terms of the prior art references, the

16   defendants will have to make an initial reduction down to

17   no more than 30 prior art references, and I will keep the

18   language that the defendants have proposed with respect to

19   prior art instrumentality.  I think this is a reasonable

20   reduction being required by the Court and is all the more

21   reasonable in light of the number of claims that will be

22   left in the case at that point.

23          Moving on to 7(h), the final reduction.  We'll

24   go with the defendants' language here but the numbers will

25   be different.  The plaintiff can keep up to ten claims of

1    the '795 patent and up to five claims of the '124 patent at

2    that point in the case.

3            And then the prior art references, again, we'll

4    go with the defendants' language here, but it will be no

5    more than 15 references, so no more than a total of 15 prior

6    art references at that point.

7            Again, I see that all as a reasonable focusing

8    of the case as it proceeds.

9            In terms of document production, date for

10   substantial completion, I'm going to adopt the plaintiff's

11   proposal here of April 16, 2015.  That is primarily because

12   I think if it can be done, it will be helpful for the

13   plaintiff, as it suggests, to have that information before

14   you report to the Court on your status report, but more

15   importantly before you really dive into the claim

16   construction briefing.

17           Now, it's a date for good faith substantial

18   completion.  If it turns out that can't be done because the

19   case develops in a way that it gets too big, the number of

20   accused products, for instance, is bigger than anybody

21   realistically anticipates today, then obviously you all

22   need to meet and confer and perhaps you will work out an

23   agreement to extend that date.  If you don't, then you will

24   be back to me and we'll talk about it in the context of a

25   concrete dispute.

1          Moving on, I think at page 15 is the next issue.

2     This is, at 15 and 16, about claim terms to be construed.

3          I'm going to adopt the defendants' language

4     at both 15 and 16.  I understand about the joint claim

5     construction chart, and I think it will be beneficial for

6     any disputes that you have discussed and fall by the wayside

7     only because of my limit of ten at the initial Markman

8     hearing.  Those should be memorialized somewhere just in

9     case we have to come back to them.

10          And the ten, I'm hopeful that it's less than

11     ten, but if either side in good faith thinks we have ten

12     terms, up to ten terms that are in dispute and are material

13     and need to be construed, then you are going to be able to

14     brief and argue the up to ten, and I will make a decision

15     once I am familiar with the merits of the arguments whether

16     I really need to construe all ten.  And I think defendants'

17     language accomplishes that.

18          Some dates.

19          Paragraph 14.  The hearing on claim construction

20     will be on August 25th, 2015.  August 25, 2015, beginning at

21     9:00 a.m.

22          That's a little bit later than you all wanted.

23     We couldn't accommodate your request.  If you want to

24     change the dates for briefing, and some of the other claim

25     construction dates, that is fine.

1          Then other dates, at page 18, the hearing on

2     case dispositive motions will begin on 11:00 a.m. on the

3     date you have, April 26th, 2016.

4          The trial sequencing conference will be July

5     29th, 2016 at 1:30.

6          The pretrial conference will be at 11:30 on

7     September 2nd.  September 2, 2016.

8          Then trial will begin on September 12th.

9     September 12, 2016.

10          I'm late for another call, but if there are any

11     questions, I'll try my best.  First from the plaintiff.

12          MR. MARSH:  No questions.  Is it same starting

13     time for the trial, Your Honor, 9:30 a.m.?

14          THE COURT:  Yes.  And any questions from

15     defendants?

16          MR. MARSH:  No questions, Your Honor.

17          MR. THOMPSON:  Nothing from defendants, Your

18     Honor.

19          THE COURT:  Thank you all very much.

20          MR. MAZUR:  Your Honor, I'm sorry.  Joshua Mazur

21     also for the Asus defendants.

22          On the paragraph 7(f)/7(e) issue, you said for

23     good cause for the plaintiff.  Should we adopt the same

24     "for good cause" language for both plaintiff and defendants

25     where those two examples would be examples of good cause?

1          THE COURT:  I'm going to leave you to see if

2     you can work that out.  I think that the two examples they

3     gave probably would be good cause.  If you can talk them

4     into further examples or more general language, if you agree

5     on something, I'll be happy to sign it.  If you don't, then

6     I'll see the dispute.

7          Is there anything else?  Okay.

8          MR. MAZUR:  No.  Thank you, Your Honor.

9          MR. MARSH:  Not from the plaintiff, Your Honor.

10    Thank you.

11         THE COURT:  Good-bye.

12         (Telephone conference ends at 1:05 p.m.)

13

14    I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

15

16                          /s/ Brian P. Gaffigan
                         Official Court Reporter
17                        U.S. District Court

18

19

20

21

22

23

24

25