IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GREATBATCH LTD., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-723-LPS |
| AVX CORPORATION and AVX FILTERS CORPORATION, | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

At Wilmington this 13th day of December, 2016:

Pending before the Court are (1) Plaintiff Greatbatch Ltd.'s ("Greatbatch") Motion to Vacate Summary Judgment of No Willful Infringement (D.I. 751) ("Motion to Vacate") and (2) various disputes in the parties' status report of July 29, 2016 (D.I. 778) ("Status Report").

I. **GREATBATCH'S MOTION TO VACATE (D.I. 751)**

Having reviewed the parties' briefing (D.I. 752, 766, 768) and related filings addressing Greatbatch's Motion to Vacate, **IT IS HEREBY ORDERED** that Greatbatch's Motion to Vacate (D.I. 751) is **DENIED**, for the reasons discussed below.

A. **Background**

Greatbatch filed this suit against Defendants AVX Corporation and AVX Filters Corporation ("AVX") on April 25, 2013. (D.I. 1) A jury trial was held between January 11 and

26, 2016 on certain of Greatbatch's asserted patents and AVX's invalidity claims.[1] At the conclusion of the trial, the jury found in Greatbatch's favor on all issues before it and awarded $37.5 million. (D.I. 625)

Prior to trial, AVX had moved for summary judgment of no willful infringement on August 24, 2015. (D.I. 398) ("AVX's Motion") On December 8, 2015, the Court granted AVX's Motion as to U.S. Patent Nos. 5,905,627 ("'627 patent"); 5,333,095 ("'095 patent"); and 6,765,779 ("'779 patent"). (D.I. 546 at 24-26) ("Willfulness Order") The Court's Willfulness Order relied on the Federal Circuit's test for willful infringement articulated in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Specifically, the Court based its decision on *Seagate*'s "objective" prong, which required that, in order to prove willful infringement, a patentee "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.*

Subsequently, the Supreme Court abrogated the objective prong of the *Seagate* test in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1931-34 (2016) ("The principal problem with *Seagate*'s two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages."). In light of *Halo*, Greatbatch moved to vacate the Court's Willfulness Order. (D.I. 768 at 6) ("[T]he basis for Greatbatch's motion is the change in the legal standard.") While *Halo* makes it necessary to reconsider the Willfulness Order, it does not, in this case, require vacating the prior determination that Greatbatch is unable to prove willfulness.

---

[1] The jury returned a verdict of infringement of the '627 and '095 patents, of no invalidity of the '627, '095, '779, '715, and '553 patents, as well as damages with respect to infringement of the '627, '095, and '715 patents. (*See* D.I. 625)

B. <u>Legal Standards</u>

1. <u>Willful Infringement</u>

When damages resulting from patent infringement are found, "the court *may* increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (emphasis added). In *Halo*, the Supreme Court explained that § 284 means that "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo*, 136 S. Ct. at 1932. "Section 284 gives district courts discretion in meting out enhanced damages. It 'commits the determination' whether enhanced damages are appropriate 'to the discretion of the district court' and 'that decision is to be reviewed on appeal for abuse of discretion.'" *Id.* at 1934 (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014)).

*Halo* describes the types of conduct that may warrant an award of enhanced damages: "enhanced damages are generally appropriate under § 284 *only in egregious* cases. . . . The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* at 1932 (emphasis added). "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."[2] *Id.* at 1933.

> Yet none of this is to say that enhanced damages *must* follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise their discretion in a manner free from the inelastic

---

[2] Greatbatch argues repeatedly in its Motion to Vacate briefing that AVX improperly relies on arguments developed *during this litigation* to show no willful infringement. (*See, e.g.*, 768 at 7) The Court disagrees. As discussed below, AVX relies on defenses developed *before* this litigation.

3

constraints of the *Seagate* test.

*Id.* at 1933-34 (emphasis added). Enhanced damages are "***not*** to be meted out in a ***typical*** infringement case." *Id.* at 1932 (emphasis added).

In *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016), the Federal Circuit applied *Halo*, stating that: (1) "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages," (2) "an infringer's subjective bad faith alone may support an award of enhanced damages," and (3) "we do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury." Thus, "there is a right to a jury trial on the willfulness question." *Id.* at 1341 n.13.[3]

In *WBIP*, the defendant appealed the district court's determination that defendant willfully infringed the asserted patent claims. *Id.* at 1324. The defendant first argued that its defenses developed during litigation were "objectively reasonable." *Id.* at 1340. The Federal Circuit rejected this argument, holding that a defendant "cannot insulate itself from liability for enhanced damages by creating an (ultimately unsuccessful) invalidity defense for trial after

---

[3]This does not, however, mean that summary judgment may never be granted on the issue of willfulness. Federal Rule of Civil Procedure 56 was part of the "established law" that neither *Halo* nor *WBIP* changed. Where, as here, a party fails to adduce sufficient evidence to support a reasonable jury finding a subjective intent to infringe, that party's willful infringement claim may not survive a motion for summary judgment. Even if circumstances may not often warrant granting summary judgment on issues of subjective intent, *see Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) ("[A] court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind . . . ."); *Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1567 (Fed. Cir. 1991) ("As a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment."), this does not mean summary judgment cannot be granted in the circumstances when it is warranted, as here.

4

engaging in the culpable conduct of copying, or 'plundering.'" *Id.* at 1340-41 (citing *Halo*, 136 S. Ct. at 1933). Here, by contrast, AVX sought and obtained invalidity and non-infringement opinions of counsel ***before*** litigation and developed designs and processes to avoid infringement. Greatbatch has cited no evidence of AVX "copying" or "plundering" Greatbatch's patented technology.

The defendant in *WBIP* also argued that "the record did not contain substantial evidence that [defendant] knew about the patents at the time it was infringing." *WBIP*, 829 F.3d at 1341. The Federal Circuit disagreed, holding that "there was substantial evidence for the jury's finding that [defendant] had knowledge of the patents in suit at the time of infringement." *Id.* at 1341-42 (citing evidence presented at trial). In the instant case, as discussed below, it is undisputed that AVX knew about the '627, '095, and '779 patents before this litigation and at the alleged "time of infringement." However, a party's pre-suit knowledge of a patent is not sufficient, by itself, to find "willful misconduct" of the type that may warrant an award of enhanced damages. *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring). The key inquiry in this case is whether there is evidence ***in addition to AVX's pre-suit knowledge of the patents*** that could show that AVX's infringement was "egregious," "deliberate," "wanton," or otherwise characteristic of the type of infringement that warrants the Court exercising its discretion to impose the "punitive" sanction of enhanced damages. *Id.* at 1932. Greatbatch bears the burden of proof to show willful infringement by a preponderance of the evidence. *See id.* at 1934.

### 2. <u>Summary Judgment</u>

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the moving party, AVX bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be genuinely disputed may be supported by "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B). If a moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Thus, the "mere existence of a scintilla of evidence" in support of

the nonmoving party's position is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

### C. Discussion

Considering AVX's Motion *de novo* under *Halo*, and in light of the parties' supplemental filings, the Court declines to vacate its Willfulness Order. Greatbatch has cited evidence showing that AVX had pre-suit knowledge of the '627, '095, and '779 patents (*see* D.I. 752 at 9-10) (citing evidence of AVX's pre-suit knowledge of '627, '095, and '779 patents by 2008, 1998, and 2011, respectively). However, the record also demonstrates AVX's good faith efforts to *avoid* infringement of any valid patents. Greatbatch does not point to evidence from which a reasonable jury could find any infringement of these patents by AVX was "egregious," "deliberate," atypical, or otherwise characteristic of the type of infringement that could support a finding of willful infringement. Hence, there is no basis on which the Court could award enhanced damages under *Halo*.

#### 1. Willful Infringement

##### a. '627 Patent

Greatbatch argues that AVX's opinions of counsel addressing invalidity of the '627 patent were so unreasonable that they constitute evidence of willful infringement. (D.I. 441 at 25-29; D.I. 752 at 8-9) The Court disagrees. No reasonable jury could find that the invalidity opinions relied on by AVX (D.I. 753 Exs. 8-10) were so deficient that they qualify as evidence of bad faith infringement by AVX. In particular, no reasonable jury could find that the 20-page invalidity opinion authored by attorneys at Dority & Manning and relied on by AVX was "conclusory," "incompetent," "preliminary," or "incomplete," notwithstanding Greatbatch's

characterizations. (D.I. 752 at 8-9) (citing *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1226 (Fed. Cir. 2006); *Amsted Indus. v. Buckeye Steel Castings*, 24 F.3d 178, 182-83 (Fed. Cir. 1994))

Notably, the *same* prior art identified in the Dority & Manning opinion was later used during *inter partes* review proceedings to invalidate multiple claims of the '627 patent, including claim 11 – from which claim 12, the only asserted claim, depends. (D.I. 535 at 1)[4] The reasonableness of AVX's invalidity positions with respect to the '627 patent is further evidenced by the Court's denial of Greatbatch's motion for summary judgment of no invalidity of the '627 patent with respect to certain alleged prior art (*see* D.I. 546 at 32) and the fact that validity of the '627 patent has been a hotly-contested issue, throughout this case. *See Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, 2014 WL 1612648, at *8 (W.D. Tex. Apr. 22, 2014) ("[T]he sheer volume of litigation surrounding these patents belies the notion that their validity is a cut and dry issue that only an incompetent attorney could question.").

Other evidence cited by Greatbatch, including Boston Scientific Corporation's ("BSC")[5] initial doubts about AVX's invalidity opinions and AVX's offer to indemnify BSC (D.I. 752 at 9), is insufficient to support a reasonable jury's finding of "egregious" misconduct of the type contemplated by *Halo*.[6] As discussed above, the Dority & Manning opinion was at least

---

[4] The Dority & Manning opinion also cites the '598 prior art patent (D.I. 753 Ex. 8), which arguably discloses the only limitation added by claim 12 that is not in claim 11: an asymmetrical capacitor. (*See* U.S. Patent No. 4,606,598 at Fig. 1 and accompanying description)

[5] AVX sold its accused products to BSC. (D.I. 400 at 2-3)

[6] As a general matter, it is unclear how a jury could (or whether it should) be asked to distinguish between "egregious" and "typical" infringement under the Supreme Court's *Halo* standard. *See Halo*, 136 S. Ct. at 1932 (describing "egregious infringement behavior" in context

competent and reasonable. Moreover, AVX's offer to indemnify BSC could be viewed as evidence that AVX did *not* believe it was infringing a valid patent. *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 636, 644 (D. Del. 2008) ("Universal's indemnification offer *refutes* the second prong of *Seagate*, that it knew, believed, or should have known that TAWS could infringe.") (emphasis added).

Even post-*Halo*, the reasonableness of AVX's invalidity defenses is pertinent to willfulness because these defenses were developed *before* litigation.[7] Here, importantly, these reasonable defenses were known to AVX at the time of the challenged, culpable conduct, which *Halo* directs must generally be the temporal focus of the willfulness inquiry. *See* 136 S. Ct. at 1933 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). In these circumstances, AVX's reasonable pre-litigation defenses are pertinent to assessing AVX's subjective intent. Here, AVX's reasonable pre-litigation defenses could lead a reasonable juror to conclude only that AVX's infringement was *not* willful. *See generally id.* (stating courts must "continue to take into account the *particular circumstances* of each case in deciding whether to award damages and in what amount") (emphasis added).

### b. '095 Patent

Greatbatch attacks the reasonableness of AVX's reliance on another Dority & Manning opinion (D.I. 753 Ex. 3), which concluded that AVX's products did not infringe the '095 patent because they did not include the particular "ferrules" claimed in the '095 patent. (D.I. 441 at 29-

---

of *District Courts'* (not jury's) discretion to grant enhanced damages).

[7]As the Federal Circuit noted in *WBIP*, "Proof of an objectively reasonable *litigation-inspired* defense to infringement is no longer a defense to willful infringement." 829 F.3d at 1340.

9

31; D.I. 752 at 9-10) Although this opinion was authored in 1998, before the accused products in this litigation were designed or manufactured, AVX reviewed the opinion in 2008 and determined that the same non-infringement position articulated in the opinion also applied to AVX's accused products. (D.I. 753 Ex. 4) Greatbatch contends the 2008 review of the 1998 opinion was "a slipshod, unreliable opinion." (D.I. 752 at 9)

Having reviewed the 1998 opinion – as well as email correspondence showing that AVX reviewed the opinion in 2008 and determined that the same non-infringement arguments applied to the products accused in this case – the Court concludes that no reasonable jury could find that these non-infringement opinions are sufficient evidence (in conjunction with AVX's undisputed knowledge of the patent) to support a finding of willful infringement. The 1998 opinion analyzed the '095 patent with respect to literal infringement and infringement under the doctrine of equivalents, and reasonably concluded that AVX's products available at that time did not infringe because they did not include a "cylindrical conductive ferrule" required by the claims. (D.I. 753 Ex. 3 at 10) The undisputed documentary evidence shows that in 2008 AVX had a "discussion" with a Dority & Manning attorney about the 1998 opinion and determined that the non-infringement arguments contained in that earlier opinion applied to the accused products in this case. (D.I. 753 Ex. 4 at 1) There is no evidence that these opinions were unreasonable or incompetent. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 (Fed. Cir. 1992) ("That an opinion is 'incompetent' must be shown by objective evidence."), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc).

Greatbatch cites a document from the record created in the January 2016 trial in support of its view that AVX's infringement of the '095 patent was willful. (*See* D.I. 768 at 10) (citing

D.I. 769 Ex. 16 (PTX-176)) Specifically, Greatbatch argues that the document is evidence that AVX infringed the '095 patent by "copying a Greatbatch product." (*Id.*) The trial transcript indicates that this document refers to AVX using samples of one of Greatbatch's ***unfiltered*** feedthrough products to assist AVX's development of a ***filtered*** solution. (Trial Transcript, D.I. 694 at 1098) Greatbatch's evidence that AVX may have copied aspects of ***unfiltered*** feedthrough products is irrelevant to the issue of infringement of Greatbatch's patents at issue in this case, which cover ***filtered*** feedthroughs.

### c. '779 Patent

Greatbatch challenges the reasonableness of AVX's efforts to avoid infringement of the '779 patent, arguing that these efforts actually evidence willful infringement, because "AVX's own documents show that it had doubts about the effectiveness of those measures." (D.I. 441 at 31-32; D.I. 752 at 10) The Court previously rejected these arguments in its Willfulness Order, holding that the record showed that AVX "made significant efforts to avoid infringement of the '779 patent." (D.I. 546 at 25-26) Far from being evidence of egregious piracy, this evidence shows, at most, AVX's doubts about its ability to implement precautionary manufacturing processes and get them "right every time," to avoid any infringement. (*See* D.I. 753 Ex. 7 at 1) (email authored by Dr. Richard Panlener, former General Manager at AVX, stating, "Given that we must get the blasting process right every time . . . to avoid the GB patent issue, what are the prospects of getting it right with a manual process?") No reasonable jury could find willful infringement of the '779 patent based on Greatbatch's evidence.

Considering the totality of the evidence, there is no genuine dispute of material fact as to whether AVX willfully infringed the '627, '095, or '779 patent. AVX is entitled to judgment of

no willful infringement as a matter of law. Therefore, the Court will not vacate its Willfulness Order.

### 2. Court's Discretion to Enhance Damages

The Supreme Court's *Halo* opinion makes clear that the ultimate decision regarding whether to award enhanced damages is committed to the sound discretion of a District Court. *See* 136 S. Ct. at 1932. A finding of willfulness may be a necessary – but is not a sufficient – condition to permit the Court to exercise its discretion. District Courts have considered various factors in determining whether to award enhanced damages post-*Halo*, including the non-exclusive factors listed in *Read*, 970 F.2d at 827.[8] *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2016 WL 4480542, at *6-7 (E.D. Tex. Aug. 24, 2016) (applying *Read* factors post-*Halo*); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *5-8 (N.D. Cal. Aug. 22, 2016) (same). As discussed above, Greatbatch has failed to identify evidence of egregious infringement of the '627, '095, or '779 patent. On the current record, considering the pertinent *Read* factors and the totality of the circumstances, the Court would not exercise its

---

[8]The *Read* factors include:

> (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct.

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2016 WL 4480542, at *6 (E.D. Tex. Aug. 24, 2016).

discretion to enhance damages – even if a jury were to unreasonably return a verdict finding willfulness. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2016 WL 4377096, at *20 (S.D. Cal. Aug. 17, 2016) (declining to award enhanced damages, even after jury found willful infringement); *XY, LLC v. Trans Ova Genetics, LC*, 2016 WL 6664619, at *3 (D. Colo. Nov. 10, 2016) (same).

### D. Conclusion

AVX has shown that there is no genuine dispute of material fact that it did not willfully infringe the '627, '095, and '779 patents. Greatbatch has failed to rebut AVX's showing.[9] Therefore, the Court denies Greatbatch's Motion to Vacate.

## II. STATUS REPORT DISPUTES (D.I. 778)

Having reviewed the parties' arguments related to their disputes in the Status Report (D.I. 778), **IT IS HEREBY ORDERED** that:

(1) AVX's request to vacate the jury's damages verdict and retry the issue to a new jury is **DENIED**.

(2) If the Court decides to send the issue of willful infringement of U.S. Patent No. 6,888,715 ("'715 patent") to a jury, that issue shall be bifurcated from a trial on infringement for the '715 patent. The pertinent circumstances in this case are similar to those in *Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010), and the Court will

---

[9]Even under the lowered evidentiary burden of a preponderance of the evidence established in *Halo*, 136 S. Ct. at 1934, Greatbatch cannot show a genuine dispute of material fact.

bifurcate (or phase the trial) for reasons similar to those articulated in *Laboratory Skin Care*.[10]

(3) The parties shall meet and confer and, **no later than ten (10) days after entry of this Order**, file with the Court letter briefs no longer than five (5) pages addressing the following issues:

    (a) their proposal(s) for the number of days and hours necessary to present the remaining infringement issues to a jury;[11]

    (b) whether and *why* the issue of infringement of the '779 patent should or should not be tried to a jury;[12] and

    (c) whether the Court should reconsider its ruling(s) regarding lawyer-as-witness issues, including analysis of whether lawyer-as-witness testimony could be presented to a jury consistent with the required balancing of Federal Rule of Evidence 403.

(4) The parties shall follow the time frames set forth in Local Rule 16.3(d)(1)-(3) for the preparation and filing of their joint proposed pretrial order for the jury trial on infringement of the '715 patent (and, if necessary, the '779 patent). Each side shall be limited to **three (3)** motions *in limine*, which shall be included in the proposed pretrial order according to the procedures set forth in the Amended Scheduling Order (D.I. 79 ¶ 16). Both parties' opening *in*

---

[10] The Court does not decide at this time whether willful infringement for the '715 patent should be tried to a jury. Likewise, the Court does not decide at this time whether two juries would decide infringement and willfulness, respectively, or whether a single jury would decide both issues in consecutive phases.

[11] After receiving the parties' proposal(s), the Court will determine dates for (1) submission of a joint proposed pretrial order, (2) a pretrial conference, and (3) a jury trial.

[12] Greatbatch failed to articulate in the Status Report any reasons why this issue should be tried to a jury. In its forthcoming submission, Greatbatch shall indicate whether it seeks damages related to infringement of the '779 patent and, if not, why the issue should go to a jury.
14

*limine* requests shall be exchanged on the deadline specified by Local Rule 16.3(d)(1), and responses to *in limine* requests shall be exchanged on the deadline specified by Local Rule 16.3(d)(2).

(5) Regarding AVX's equitable defenses of laches and estoppel, a one-day bench trial will be scheduled in accordance with the procedures previously ordered by the Court (D.I. 643 at 3). The parties' stipulated procedures for preparation and filing of the proposed pretrial order and post-trial briefing for the bench trial (D.I. 778 at 5-6) are **ADOPTED**.[13]

(6) The Court shall hold a hearing on January 10, 2017 at 10:00 a.m. on the following motions:

(a) the parties' motions for summary judgment on the issue of willful infringement and enhanced damages with respect to the '715 patent (D.I. 797, 799);

(b) Greatbatch's Motion for Entry of Partial Final Judgment of Infringement and Validity of the '627 patent (D.I. 827); and

(c) Greatbatch's Motion for Sanctions (D.I. 830).

Each side will be allocated ninety (90) minutes for its presentation. Should either side intend to present testimony at the hearing, it shall notify the Court – including by disclosing the identity of the witness(es) who will testify – no later than January 3, 2017.

                                                                    _____
                                                                    HON. LEONARD P. STARK
                                                                    UNITED STATES DISTRICT JUDGE

---

[13] As stipulated by the parties (D.I. 778 at 6), the Court will consider whether summary judgment briefing may be submitted on the issue of laches after the Supreme Court issues its decision in *SCA Hygiene Aktiebolag v. First Quality Baby Products, LLC*, No. 15-927.