**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

GREATBATCH, LTD.,                    )
                                     )
            Plaintiff,               )          C.A. No. 13-723-LPS
                                     )
      v.                             )
                                     )          **REDACTED**
AVX CORPORATION and                  )          **PUBLIC VERSION**
AVX FILTERS CORPORATION,             )
                                     )
            Defendants.              )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR STEVEN M. PILGRIM, PH.D.

OF COUNSEL:

Ronald E. Cahill (*pro hac vice*)
Paul J. Cronin (*pro hac vice*)
James C. Hall (*pro hac vice*)
Heather B. Repicky (*pro hac vice*)
Alison C. Casey (*pro hac vice*)
NUTTER, MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
(617)439-2000
rcahill@nutter.com
pcronin@nutter.com
jhall@nutter.com
hrepicky@nutter.com
acasey@nutter.com


Tim F. Williams (*pro hac vice*)
DORITY & MANNING
Two Liberty Square
75 Beattie Place, Suite 1100
Greenville, SC 29601
(864) 271-1592
timw@dority-manning.com

Dated: May 12, 2017

Robert W. Whetzel (#2288)
Chad M. Shandler (#3796)
Todd Coomes (#4694)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302)651-7700
whetzel@rlf.com
shandler@rlf.com
coomes@rlf.com
rawnsley@rlf.com

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT .......................................... 1

II.  LEGAL STANDARD ................................................................................................... 2

III. ARGUMENT ................................................................................................................ 3

    A.   Prof. Pilgrim's State of Mind, Intent, and Motive Opinions, As Well As His
        Conclusions as to AVX Admissions, Should Be Excluded. ................................... 3

    B.   There Are No Facts or Data to Support Prof. Pilgrim's Opinion as to Infringement
        of the '779 Patent by *All* AVX Ingenio FFTs. .................................................... 7

        1.   AVX Made Both ▮▮▮▮▮▮▮▮▮▮ Ingenio FFTs............................................ 7

        2.   Prof. Pilgrim Has No Evidence To Support His Conclusion that ▮▮▮▮
            Ingenio FFTs Infringe the '779 Patent. ....................................................... 8

        3.   Prof. Pilgrim's Excuse for Failing to Analyze ▮▮▮▮ Ingenio FFTs
            Must Be Rejected. ...................................................................................... 10

    C.   Prof. Pilgrim's Reliance on Images and Data from EAG Does Not Satisfy
        Rule 702 and *Daubert*. ...................................................................................... 12

        1.   The Images Generated by EAG and Relied Upon by Prof. Pilgrim
            Have ▮▮▮▮▮▮▮▮▮▮ ...................................................................................... 12

        2.   Prof. Pilgrim's Reading of EAG's EDS Images Is Subjective and
            Not Scientifically Grounded. ..................................................................... 15

IV.  CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca UK Ltd. v. Watson Labs, Inc.*,
No. 10-915-LPS, 2012 WL 6043266 (D. Del. Nov. 14, 2012)....................................................4

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
749 F. Supp. 2d 210 (D. Del. 2010)........................................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 597 (1993)...........................................................................................................1, 2

*Durrell ex rel. S.H. v. Lower Merion Sch. Dist.*,
No. 10-6070, 2012 WL 2953956 (E.D. Pa. July 19, 2012), *aff'd*, 729 F.3d 248
(3d Cir. 2013)......................................................................................................................4

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000)................................................................................................3

*Schneider ex rel. Estate of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003).............................................................................................9, 12

*In re Flonase Antitrust Litig.*,
884 F. Supp. 2d 184 (E.D. Pa. 2012) ..................................................................................4

*McGowan v. Cooper Indus., Inc.*,
863 F.2d 1266 (6th Cir. 1988) ...........................................................................................7

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004).................................................................................4, 6

*Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*,
No. 04-940-JJF, 2006 WL 2241018 (D. Del. Aug. 4, 2006) .....................................................3

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................................4

*In re Rosuvastatin Calcium Patent Litig.*,
MDL No. 08-1949-LPS, 2009 WL 4800702 (D. Del. Dec. 11, 2009) ..................................1, 4

*Salas v. Wang*,
846 F.2d 897 (3d Cir. 1988)...............................................................................................3

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
No. 1:10-CV-00122-GNS, 2017 WL 1334304 (W.D. Ky. Apr. 10, 2017) ..............................10

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*,
   623 F. Supp. 2d 518 (D. Del. 2009) ................................................................................4

*W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*,
   No. 11-515-LPS-CJB, 2015 WL 12815314 (D. Del. Nov. 20, 2015) ................................3, 4

*Watkins v. New Castle County*,
   374 F. Supp. 2d 379 (D. Del. 2005) ................................................................................3

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................3

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Federal Rule of Evidence 702 imposes a duty on the Court to "ensur[e] that an expert's testimony *both* rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 597 (1993) (emphasis added). Here, three aspects of the expert opinion of Steven M. Pilgrim, Ph.D. offered by Greatbatch are neither reliable nor relevant:

- opinions on the state of mind of AVX and its employees;

- opinions that *all* AVX Ingenio FFTs infringe the asserted claims of the '779 patent; and

- opinions relying on certain images created by EAG laboratories.

Both Rule 702 and governing law mandate that these opinions by excluded.

First, Prof. Pilgrim opines on the state of mind of AVX and its employees. For example, Prof. Pilgrim offers his conclusions as to what constitutes an "admission" or "acknowledgement" of infringement by AVX based on his review of documents and testimony. He also opines that AVX employees were ███████████████████████ Not only does Prof. Pilgrim have no specialized knowledge or expertise to render these conclusions, but Courts have long held that opinions as to "intent, motive, or state of mind" are beyond the bounds of permissible expert testimony. *See, e.g., In re Rosuvastatin Calcium Patent Litig.*, MDL No. 08-1949-LPS, 2009 WL 4800702, at *8 (D. Del. Dec. 11, 2009).

Second, Prof. Pilgrim's opinion that *all* AVX Ingenio FFTs infringe the asserted claims of the '779 patent is not supported by *any* evidence and, thus, constitutes a bare legal conclusion. In particular, Prof. Pilgrim never analyzed, reviewed, or considered whether ████████████ ████████████████████████████████████████ ████████████████ infringe. Moreover, Prof. Pilgrim cannot state whether the alleged infringing connection in parts that ████████████████████████████████

██████████████████████ or both.  As such, there is no basis to conclude that ██████

Ingenio FFTs infringe the '779 patent and his opinions as to those parts should be excluded.

Third, Prof. Pilgrim's analysis of and reliance on certain images created by EAG

Laboratories ("EAG") does not meet the *Daubert* standards.  Not only does Prof. Pilgrim

incorrectly state that certain aspects of the imaged parts are representative of parts sold to Boston

Scientific Corp. ("BSC") when they are not, but he does not know and is unable to provide any

information as to how EAG created the images.  In fact, there are numerous versions of the same

image of the same part, including images that support AVX's non-infringement defense.  Prof.

Pilgrim ignores these images and, instead, chooses to rely on images ██████████████████

████████  He then applies his subjective judgment as to what these images show and concludes that

they demonstrate infringement.  Because the EAG images cannot reliably form the basis of Prof.

Pilgrim's opinion as to infringement of production-level Ingenio FFTs, such evidence is not

helpful to the trier of fact and his reliance on them can only serve to confuse the jury.

Accordingly, AVX requests that the Court exclude as inadmissible those portions of Prof.

Pilgrim's opinions which (1) constitute legal conclusions and opinions on intent, motive, or state

of mind, (2) concern infringement of the '779 patent ██████████████████████, and (3) are

based on images of Ingenio FFTs with known defects.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony,

which is a question of law. *See Daubert*, 509 U.S. at 588–89.  Under Rule 702, "(1) the proffered

witness must be an expert; (2) the expert must testify to scientific, technical or specialized

knowledge; and (3) the expert's testimony must assist the trier of fact." *See W.L. Gore & Assoc.,*

*Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS-CJB, 2015 WL 12815314, at *2 (D. Del. Nov. 20, 2015)

(citing *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995)).  Moreover, expert testimony

2

is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (describing Rule 702 requirements as "thee distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit"). The party offering the expert testimony bears the burden of showing that it meets each of these admissibility standards. *See B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).

## III.    ARGUMENT

### A.    Prof. Pilgrim's State of Mind, Intent, and Motive Opinions, As Well As His Conclusions as to AVX Admissions, Should Be Excluded.

In addition to his infringement analysis, Prof. Pilgrim now (i) proffers expert opinions on the state-of-mind, intent, and motive of AVX employees and (ii) assumes the role of the trier of fact to make legal conclusions as to what constitutes so-called "admissions" of infringement. These opinions—largely contained in Sections IV and V of Prof. Pilgrim's February 9, 2017 Supplement Report—constitute improper expert testimony and, therefore, should be excluded. [Ex. 1 (Pilgrim 2/9/17 Rpt.).][1]

Expert testimony regarding legal conclusions is not permissible. *See Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, No. 04-940-JJF, 2006 WL 2241018, at *1 (D. Del. Aug. 4, 2006); *see also Salas v. Wang*, 846 F.2d 897, 905 n.5 (3d Cir. 1988) (stating that the Federal Rules do "not permit experts to testify as to legal conclusions."); *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009) (same); *Watkins v. New Castle County*, 374 F. Supp. 2d 379, 393 (D. Del. 2005). Further, "expert witnesses are not

---

[1] All references to "Ex.___" are to the exhibits attached to the Declaration of Jason J. Rawnsley, filed herewith.

3

permitted to testify regarding 'intent, motive, or state of mind, or evidence by which such state of mind may be inferred." *AstraZeneca UK Ltd. v. Watson Labs, Inc.*, No. 10-915-LPS, 2012 WL 6043266, at *2 (D. Del. Nov. 14, 2012); *see also W.L. Gore & Assoc., Inc.*, 2015 WL 12815314, at *3 n.8. For example, in *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 n.9 (D. Del. 2004), the Court excluded testimony

> which could be interpreted as referring to or inferring [defendant's] state of mind, including: referring to [defendant] "recognizing" that its business activities might infringe . . . , that [defendant] may have been "concerned," and that [defendant] had "concluded" whether it infringed or not.

*Id.* (citations omitted); *see In re Rosuvastatin Calcium Patent Litig.*, 2009 WL 4800702, at *8–9 (excluding expert testimony from which state of mind could be inferred).[2] Prof. Pilgrim, like the expert in *Oxford Gene Technology*, devotes two entire sections and forty paragraphs of his supplemental report to a review of documents and testimony in order to either expressly opine on the state of mind of AVX employees or to infer an admission or acknowledgement of infringement.

Prof. Pilgrim expressly opines that AVX employees were aware of infringement.  In his Supplemental Report, he states: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████  [Ex 1 (Pilgrim 2/9/17 Rpt.) ¶ 116.] Prof. Pilgrim expounded on this opinion at his most recent deposition:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

---

[2] *See also In re Flonase Antitrust Litig.*, 884 F. Supp. 2d 184, 193 (E.D. Pa. 2012); *Durrell ex rel. S.H. v. Lower Merion Sch. Dist.*, No. 10-6070, 2012 WL 2953956, at *7 n.5 (E.D. Pa. July 19, 2012) ("An expert's opinion regarding intent would not be admissible at trial."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").



[Ex. 2 (Pilgrim 4/27/17 Dep.) at 197.][3]  Not only does Prof. Pilgrim provide no facts or data

regarding what ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████  by AVX.  Moreover, after acknowledging

that his opinion—which is not about the accused products but rather about the state of mind of Mr.

Rios and Dr. Panlener—is not scientific, he asserts that it is based on his reading of emails

involving Mr. Rios produced in the case.  [Ex. 2 at 197–98.][4]  But Prof. Pilgrim has no special

knowledge or expertise that enables him to read documents or interpret emails:

[Id. at 198.]  Put simply, Prof. Pilgrim's conclusions as to AVX's state of mind are based on his

unspecialized review of the evidence and do not meet the *Daubert* standard.

Similarly, Sections IV and V of Prof. Pilgrim's Supplemental Report, which reads more

like a legal brief outline than an expert opinion, are littered with opinions regarding so-called

acknowledgements and admissions of infringement.  For example:

---

[3] In all events, Prof. Pilgrim is not qualified to render any expert opinions as to manufacturing and control processes.  He has no specialized expertise in manufacturing or industrial processes, including high-reliability manufacturing and quality assurance systems.  Notwithstanding that he may have performed some "manufacturing troubleshooting" more than 20 years ago, he was a scientist in Martin Marietta Laboratories' materials research group and performed research or experimental/theoretical support, not manufacturing.  [Ex. 2 (Pilgrim 4/27 Dep.) at 55; Ex. 3.] Indeed, Prof. Pilgrim has been in academia since 1994.

[4] Prof. Pilgrim agrees that he has to resort to his review of documents and testimony because he is not a mind reader.  [Ex. 2 (Pilgrim 4/27/17 Dep.) at 192–93.]



[Ex. 1 (Pilgrim 2/9/17 Rpt.) ¶¶ 110–112, 115, 117, 127.] Again, these statements are merely Prof. Pilgrim's unscientific interpretation of documents and statements—and nothing more. Indeed, they are the very kinds of statements that were excluded by the Court in *Oxford Gene Tech.*, 345 F. Supp. 2d at 443 n.9. These opinions go to AVX's "intent, motive or state of mind" in preparing the document or making a statement, and are thus improper. Further, they are improper legal conclusions as Prof. Pilgrim (i) makes his own determination as to what is an "admission" and (ii) usurps the role of fact-finder, weighing the different evidence and determining which is credible and not credible. *See, e.g., McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (finding inadmissible expert testimony as to whether defendant met industry custom because it addressed matters that were equally within the competence of the jurors). Accordingly, Prof. Pilgrim's state-of-mind, "admission," and document-conflict opinions should not be allowed to be presented at trial.

**B.    There Are No Facts or Data to Support Prof. Pilgrim's Opinion as to Infringement of the '779 Patent by *All* AVX Ingenio FFTs.**

Prof. Pilgrim opines that all AVX Ingenio FFTs sold to Boston Scientific Corp. ("BSC") infringe the '779 patent. [Ex. 1 (Pilgrim 2/9/17 Rpt.) at 35–42.] This opinion, however, is not supported by any facts or data because Prof. Pilgrim ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ As a result, his infringement opinion as to this category of parts is nothing more than speculation, assumption, and a bare legal conclusion.

*1.    AVX Made* ████████████████████ *Ingenio FFTs.*

For purposes of the '779 patent there are two separate and distinct categories of accused Ingenio FFTs—████████████████████████████████████



─────────────────
5 ████████████████████████████████████████████████████████, as summarized by Prof. William B. Johnson in his expert report. [*See* Ex. 4 (Johnson 3/22/17 Rpt.) at 32.]

7



2.  ***Prof. Pilgrim Has No Evidence to Support His Conclusion that*** ▮
    ***Ingenio FFTs Infringe the '779 Patent.***

Prof. Pilgrim presents no evidence that Ingenio FFTs made pursuant to AVX's

manufacturing processes before January 2014 infringe the '779 patent. Each of the asserted claims

8

of the '779 patent—claims 8 and 10—depend from claim 1, which requires "an oxide resistant conductive pad on a surface of the ferrule conductively coupled to the second termination surface." Prof. Pilgrim opines that that infringing conductive coupling occurs ███████████ ███████ [Ex. 1 (Pilgrim 2/9/17 Rpt.) at 37; *see also* Ex. 2 (Pilgrim 4/27/17 Dep.) at 175–76; Ex. 7 (Pilgrim 5/21/15 Rpt.) at 26 ("█████████████████████████████████████████ ███████████████████████") (emphasis added)).] In other words, Prof. Pilgrim concludes that ████████████████████████████████████████████████████ ██████████ Critically, he cannot determine whether it is █████████████████ ██████████████████████████████████████████████████████████████ ██████████████ He cannot make this determination because he never cross-sectioned—or analyzed images of—█████████ Ingenio FFTs vis-à-vis the '779 patent. [Ex. 1 (Pilgrim 4/27/17 Dep.) at 176; Ex. 4 (Johnson 3/22/17 Rpt.) at 42 ("I also note that Prof Pilgrim provides *no* analysis of any Ingenio FFT that ████████████████████").][6]

Without any relevant data as to parts ████████████████, Prof. Pilgrim can only speculate that the ████████████████████████████████████ causes infringement. Such speculation does not satisfy Fed. R. Evid. 702. *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (holding expert testimony must be based on the "methods and procedures of science" rather than "subjective belief or unsupported speculation"); *cf. SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 1:10-CV-00122-GNS, 2017 WL 1334304, at *7–8 (W.D. Ky. Apr. 10, 2017) (finding expert opinion

---

[6] The only ████████████████████████████████████████████████████ ████████████████████████████████ Moreover, Prof. Pilgrim expressly noted that he is not using this part as a basis for his infringement opinion. [Ex. 8 (Pilgrim 4/11/17 Rebuttal to Johnson) ¶ J40.1.]

reliable because ten samples of the nine representative product groups were tested).

      **3.**     ***Prof. Pilgrim's Excuse for Failing to Analyze*** ████████ ***Ingenio FFTs Must Be Rejected.***

Prof. Pilgrim unfairly and incorrectly attempts to blame AVX for his speculative opinion as to infringement of ████████ Ingenio FFTs. He asserted both in his report and during deposition that AVX did not provide any ████████ FFTs for testing. [Ex. 8 (Pilgrim 4/11/17 Rebuttal to Johnson) ¶ J42.1; Ex. 2 (Pilgrim 4/27/17 Dep.) at 176.] This assertion is false.

In February 2015, AVX provided to Greatbatch a list of all rejected and defective Ingenio FFTs maintained by AVX in the ordinary course. [Ex. 9.] This list included Ingenio FFTs made ████████████████—that is, ████████ parts. In fact, one such part was recently marked as an exhibit at the deposition of Prof. Pilgrim. [*See* Ex. 10 (Pilgrim Ex. 2159); Ex. 2 (Pilgrim 4/27/17 Dep.) at 180–84.] Prof. Pilgrim testified that ██████████████████████████████ ████████████████████████████████ [Ex. 2 at 177, 180, 184.] These parts include not only the ████████ Ingenio FFT marked at Prof. Pilgrim's deposition, but also:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Notably, none of these parts were rejected for anything having to do with ████████ ████████████████████████████████.[7] Thus, numerous ████████

---

[7] In his supplemental report, Prof. Pilgrim allegedly relies on aspects of certain other rejected parts to support his infringement opinion. [Ex. 1 (Pilgrim 2/9/17 Rpt.) ¶ 56.] Moreover, as to the

Ingenio FFTs were available for testing by Greatbatch and Prof. Pilgrim both during the fact discovery in 2015 and during the supplemental discovery period in 2016.



In addition, AVX produced to Greatbatch rejected parts ███████████████████. This included an Ingenio FFT ███████████████████████ ███████████████████████ [*See* Ex. 11.]   On August 31, 2016, the Court allowed Greatbatch to "analyze the sample Ingenio parts using whatever methods Plaintiff desires, regardless of whether the methods were previously performed or whether they may also produce new evidence relevant to infringement of '779 patent." [D.I. 791.]  One of Greatbatch's labs, S&N Laboratories, did analyze this part. [*See* Ex. 12 (image shown to left).]  Specifically, Greatbatch's attorneys directed S&N Labs to

████████████████████████████████████████████

████████ [Ex. 13.] ████████████████████████

██████████ [*See* Ex. 14.]  Despite having cross-sectioned several other rejected Ingenio FFTs, EAG never cross-sectioned this part.[8]

---

particular Ingenio FFTs ████████████ from the list of rejected parts that he did *not* examine, Prof. Pilgrim testified that ████████████████████████████████ ████████████████████████████████████████ [Ex. 2 (Pilgrim 4/27/17 Dep.) at 179.]

[8] AVX anticipates that Greatbatch will again attempt to fault AVX's counsel for not agreeing to stipulate as to the representative nature of the rejected parts.  AVX addressed this argument in opposition to Greatbatch's spoliation motion.  [D.I. 838 at 4–5, 15–16.]  Moreover, the Court has already rejected Greatbatch's position.  On January 10, 2017, it noted, "We heard a lot today about why the parties didn't agree on the stipulation or some sort of scenario []deeming certain types of parts representative of the larger group of parts . . . It's unfortunate that the parties weren't able to

In conclusion, AVX made available numerous ██████ Ingenio FFTs for testing by Greatbatch. Why these parts were not provided or made available to Prof. Pilgrim for his analysis is unknown. The result, however, is that Prof. Pilgrim has no facts or data to support his conclusion that Ingenio FFTs made ████████████ infringe the '779 patent. The only part of his opinion that is supportable (although incorrect) relates to Ingenio FFTs ████████. Thus his opinion that *all* Ingenio FFTs infringe should be excluded.

### C.   Prof. Pilgrim's Reliance on Images and Data from EAG Does Not Satisfy Rule 702 and *Daubert*.

Prof. Pilgrim supports his infringement opinion with images created by EAG during the post-trial discovery period in 2016 and 2017. These images, however, are inherently unreliable and therefore Prof. Pilgrim cannot show that his opinions that rest on them are "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Schneider ex rel. Estate of Schneider*, 320 F.3d at 404. As a result, the Court should not allow Prof. Pilgrim to testify at trial as to these images.

### 1.   *The Images Generated by EAG and Relied Upon by Prof. Pilgrim Have* ██████████

In 2016 and 2017, EAG generated numerous images of AVX Ingenio FFTs, but how those images were created is unknown and what they show is, at best, subjective speculation.

As background, EAG was provided with several Ingenio FFTs that AVX had rejected and pulled from the manufacturing line in 2013. [Ex. 14; Ex. 16, Ex. 17 (Hix Dep.) at 15–17.] ████
████████████████████████████████████████████████████████████

---

work something out, *but what happened was most definitely not in the Court's view solely the fault of AVX. And importantly, Greatbatch knows, has always known that it has the burden of proof on infringement. And Greatbatch has no good explanation for why, even with the extensive period of post-discovery, it did not test parts that it was offered.*" [Ex. 15 (1/10/17 Hr'g Tr.) at 136 (emphasis added).]

███████████████████████████████████████████[9] EAG serially cross-sectioned these parts and then created images of the sectioned parts using a scanning electron microscope ("SEM") and energy-dispersive spectrometry ("EDS"). [*See, e.g.*, Ex. 18.] The purpose of this analysis was to determine ███████████████████████████████
███████████████████████████████████

Originally, EAG generated images of the FFTs based on the ████████████████████
████████████████████████████████ [Ex. 19 (Neva Dep.) at 22–24.] Then in January 2017, Prof. Pilgrim himself recognized that ████████████████████████████████████
█████████████████████████ [Ex. 20.] In essence, ██████████████████ 
████████████████████████████████████████████████████
████████████████████ [Ex. 19 (Neva Dep.) at 49 (discussing ████████████████
███████████████); Ex. 2 (Pilgrim 4/27/17 Dep.) at 124 (acknowledging that there was ███████
████████████████████████████████████).]

As a result on February 4, 2017 (just three months ago), Prof. Pilgrim requested that EAG ████████████████████████████████████████████████████████████
████████████████████████████████ [Ex 21.][10] EAG did, in fact, ████████████
████████████████████████████ [Ex. 19 (Neva Dep.) at 51–54.] In other

---

[9] In his supplemental report, Prof. Pilgrim states that ████████████████████████████
████████████████████████████████████████ [Ex. 1 ¶ 56; *see also* Ex. 2 (Pilgrim 4/27/17 Dep.) at 213–14.] Nevertheless, Prof. Pilgrim then cites to ████████████ [*See, e.g.*, Ex. 1 (Pilgrim 2/9/17 Rpt.) at 31.] In addition, Prof. Pilgrim's report is wrong as to ██████████████████████████████████ [*See, e.g.*, Ex. 1 (Pilgrim 2/9/17 Rpt.) ¶ 71; Ex. 2 (Pilgrim 4/27/17) at 161–63.]

[10] At the time Prof. Pilgrim relied on EAG to perform EDS analysis, he did not even know ██████████████████████████████████████████████ [Ex. 2 (Pilgrim 4/27/17 Dep). at 124.]

words, ███████████████████████████ █████████

███████████████████████ [*Id.*]

    Subsequently, EAG discovered that it could ██████████████████████████

███████████████████████ [Ex. 19 (Neva Dep.) at 54–56.] This time, ██████

██████████████████████████████████ [*Id.* at 56.] The end

result is that ███████████████████████████████

██ For example, below are three different versions of images for the same level of "Sample 2."



---

[11] Just last evening, Greatbatch produced a document to AVX from another of its labs—S&N Labs—suggesting that it could ███████████████████. [Ex. 22.]

[12] Notably, EAG (which is represented by Greatbatch's counsel in this case) produced this image as well as several other images just this past Monday, May 8, 2017—that is *after* the depositions of EAG and Prof. Pilgrim concluded. [Ex. 23.] There is no excuse for this late production given that these images are responsive to a subpoena that AVX served on EAG over four months ago. Their belated production is another reason as to why AVX has no information as to how these images were created.

Because Prof. Pilgrim uses ████████████████████ to opine on infringement [Ex.
2 (Pilgrim 4/27/17 Dep.) at 67], ████████████████████—is dispositive.
As shown above, the far left image (on which Prof. Pilgrim relies) includes ████████
and appears to have ████████████████████.[13] On
the other hand, the far right image only has ████████████████
These images demonstrate ████████████████████
████████████ But neither Prof. Pilgrim nor EAG now identify ████████
████████████████████ [See, e.g., Ex. 2 (Pilgrim 4/27/17 Dep.)
at 137–139, 159–161; Ex. 19 (Neva Dep.) at 53, 70–74.] All of these images—████████
████████—cannot be the basis for any opinion unless and until each ████████
████████████████ is evaluated for fairness and accuracy, a task that Prof. Pilgrim
never performed. In fact, it is entirely unclear what methodology EAG employed in generating
the EDS images, no less whether that methodology was sound. The EAG images, thus, are without
foundation and cannot form the basis for any expert opinion.



> ### 2. Prof. Pilgrim's Reading of EAG's EDS Images Is Subjective and Not Scientifically Grounded.

Not only does Prof. Pilgrim lack any useful or relevant information as to how EAG
generated the EDS images on which he relies, but his conclusions based on certain of those images
constitute pure speculation. Although there are known scientific methods to mitigate the problem
of ████████████████████, Prof. Pilgrim did not utilize
those methods. Rather, he simply glanced at the EDS images and concluded there is infringement.
Prof. Pilgrim's "say so" cannot pass muster on Fed. R. Evid. 702.

---

[13] ████████████████████████████████████
████████████ [Ex. 2 (Pilgrim 4/27/17 Dep.) at 152.]

Prof. Pilgrim's review of the EDS images—including images that include ███████ ████████████████—consists of simply looking at the images.  He asserts that ███ ████████████████████████████████████████████████████████████ [Ex. 2 (Pilgrim 4/27/17 Dep.) at 155–56.]  Notably, Prof. Pilgrim did not measure ███████ ██████



[*Id.* at 155.]  This unscientific approach to analyzing the images leads to inconsistent results.  For example, Prof. Pilgrim concluded in his report in February 2017 that the EDS image (EAG000000120) ████████████████████ [Ex. 1 (Pilgrim 2/9/17 Rpt.) ¶ 69.]  And yet, at his deposition just a few months later, Prof. Pilgrim reviewed that very same EDS image and concluded that ████████████████████████ He testified that ████████████████████████████ ███████████ [Ex. 2 (Pilgrim 4/27/17 Dep.) at 155–56.]  He further explained, ████████ ████████████████████████████████████████████████████████ ████ [*Id.*]  How Prof. Pilgrim determines when something is ████████████████ ████████████████████████, and whether he applies consistently his line-drawing methods is unknown and unknowable.  As a result, Prof. Pilgrim's analysis appears to rest entirely on his eyeballing of the EDS images at any given moment.

Greatbatch's other testifying expert—Dr. Thomas Lam—agrees.  Dr. Lam reviewed the *very same* EDS image (EAG000000120) of Sample 2.  [Ex. 24 (Lam 4/28/17 Dep.) at 66–68.] First, he acknowledged that ████████████████████████████████████ [*Id.*

at 68.] Second, he testified regarding how one could ███████████████████

█████████████████████



[*Id.* at 70–71 (emphasis added).] Prof. Pilgrim did not use this approach; rather he chose the "very subjective" method.

     In addition, Prof. Pilgrim failed to employ recognized methods to eliminate or mitigate the issues arising in images as a result of ████████████████ For example, the EAG technician responsible for creating the EDS images of AVX's Ingenio FFTs testified that ██████████████ ██████████████████████████████████████ [Ex. 19 (Neva 4/20/17 Dep.) at 49.] ████████████████████████████ ████████████████ [*Id.*] Neither Prof. Pilgrim nor Greatbatch appear to have considered this approach. In addition, Dr. Lam testified that ████████████████████ ████████████████████████████████████████ ████████████████ [Ex. 24 (Lam 4/28/17 Dep.) at 73–76; Ex. 25 (Lam 4/11/17 Rpt.) at 4–5.] Dr. Lam was never provided the data to perform this analysis. [Ex. 24 at 73–74.]

     At bottom, Prof. Pilgrim's "very subjective" opinions based on images created by EAG using unknown methods are not "the product of reliable principles and methods" and, therefore, are not admissible. The Court should, therefore, preclude Prof. Pilgrim from relying on or testifying concerning any of the EDS images generated by EAG.[14]

---

[14] AVX notes that it has filed a request to extend the deadline for filing *Daubert* motions. [D.I. 927.] This request is based on the fact that the labs that generated the data and images on which Prof. Pilgrim relies have continued to produce documents beyond the deadline for expert

IV.    **CONCLUSION**

For all the foregoing reasons, the Court should preclude Prof. Pilgrim from offering any opinions (i) as to the state of mind, intent, or motive of AVX, including offering any opinions as to what does or does not constitute an admission or acknowledgement of infringement; (ii) concerning infringement of the '779 patent by any Ingenio FFT made before January 2014; and (iii) that rely upon EDS images generated by EAG.

OF COUNSEL:

Ronald E. Cahill
Paul J. Cronin
James C. Hall
Heather B. Repicky
Alison C. Casey
NUTTER, MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Tim F. Williams
DORITY & MANNING
Two Liberty Square
75 Beattie Place, Suite 1100
Greenville, SC 29601
(864) 271-1592

Dated:  May 12, 2017

/s/ Jason J. Rawnsley
Robert W. Whetzel (#2288)
Chad M. Shandler (#3796)
Todd Coomes (#4694)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
whetzel@rlf.com
shandler@rlf.com
coomes@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants AVX Corporation
and AVX Filters Corporation*

---

discovery, including up through yesterday evening.  In addition, AVX is seeking relief with respect to the depositions of two labs since the 30(b)(6) deponents were not prepared to testify in response to questions within the scope of the noticed topics.  AVX does not believe that the Court's ruling on the separately-pending requests affects the arguments or relief sought in this motion.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2017, I caused to be served true and correct copies of

the foregoing document by electronic mail on the following counsel:

Brian E. Farnan
FARNAN LLP
919 North Market Street, 12ᵗʰ Floor
Wilmington, Delaware 19801
(302)777-0300
bfarnan@farnanlaw.com

Neal L. Slifkin
Laura W. Smalley
Steven P. Nonkes
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, NY 14534
(585)4196-8800
nslifkin@harrisbeach.com
lsmalley@harrisbeach.com
snonkes@harrisbeach.com

James R. Muldoon
HARRIS BEACH PLLC
333 West Washington Street, Suite 200
Syracuse, NY 13202
(315) 423-7100
jmuldoon@harrisbeach.com

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com