## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREATBATCH, LTD., | ) |
|       Plaintiff, | ) ) ) C.A. No. 13-723-LPS |
| v. | ) ) **REDACTED** |
| AVX CORPORATION and AVX FILTERS CORPORATION, | ) ) **PUBLIC VERSION** ) ) |
|       Defendants. | ) |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR STEVEN M. PILGRIM, PH.D.

OF COUNSEL:

Ronald E. Cahill (*pro hac vice*)
Paul J. Cronin (*pro hac vice*)
James C. Hall (*pro hac vice*)
Heather B. Repicky (*pro hac vice*)
Alison C. Casey (*pro hac vice*)
Nutter, McClennen & Fish LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
(617)439-2000
rcahill@nutter.com
pcronin@nutter.com
jhall@nutter.com
hrepicky@nutter.com
acasey@nutter.com

Tim F. Williams (*pro hac vice*)
Dority & Manning
Two Liberty Square
75 Beattie Place, Suite 1100
Greenville, SC 29601
(864) 271-1592
timw@dority-manning.com

Robert W. Whetzel (#2288)
Chad M. Shandler (#3796)
Todd Coomes (#4694)
Jason J. Rawnsley (#5379)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302)651-7700
whetzel@rlf.com
shandler@rlf.com
coomes@rlf.com
rawnsley@rlf.com

Dated: June 2, 2017

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 1

    A. Prof. Pilgrim's Opinions That Implicate Intent—Or Could Be Interpreted As Referring To Or Inferring AVX's State of Mind—Are Inadmissible. .......................... 1

    B. Federal Rule of Evidence 702 Prohibits Prof. Pilgrim From Opining That All AVX Ingenio FFTs Infringe the '779 Patent. ................................................. 4

        1. Prof. Pilgrim Has No Evidence To Show that ▌▌▌ Parts Are Representative of Parts Made Before 2014. ............................................................................................ 5

        2. Greatbatch's Attempt to Reargue Its Spoliation Motion Should Be Rejected .............. 6

    C. Prof. Pilgrim's Opinions Based on Images from EAG Do Not Satisfy Rule 702. .............. 8

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AstraZeneca UK Ltd. v. Watson Labs, Inc.*,
   No. 10-915-LPS, 2012 WL 6043266 (D. Del. Nov. 14, 2012) .................................................. 2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .......................................................................................................... 4, 8

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004) .................................................................................. 2, 3

*In re Rosuvastatin Calcium Patent Litig.*,
   MDL No. 08-1949, 2009 WL 4800702 (D. Del. Dec. 11, 2009) .................................. 1, 2, 4

*St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*,
   935 F. Supp. 2d 782 (D. Del. 2013) ....................................................................................... 5

*United States v. Frabizio*,
   445 F. Supp. 2d 152 (D. Mass. 2006) ..................................................................................... 8

*W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*,
   C.A. No. 11-514-LPS-CJB, 2015 WL 12815314 (D. Del. Nov. 20, 2015) ...................... 2, 3

**Other Authorities**

Federal Rule of Evidence 702 .................................................................................................. 1, 4, 7

## I. INTRODUCTION

"The Supreme Court has assigned 'to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Rosuvastatin Calcium Patent Litig.*, MDL No. 08-1949, 2009 WL 4800702, at *8 (D. Del. Dec. 11, 2009) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Prof. Pilgrim's opinions (i) as to AVX's state of mind, (ii) that *all* Ingenio FFTs—including ▮ parts—infringe the '779 patent, and (iii) that rely on data from EAG do not meet this standard. And nothing in Greatbatch's opposition suggests that these aspects of Prof. Pilgrim's opinion can properly be admitted under Federal Rule of Evidence 702.

## II. ARGUMENT

### A. Prof. Pilgrim's Opinions That Implicate Intent—Or Could Be Interpreted As Referring To Or Inferring AVX's State of Mind—Are Inadmissible.

Greatbatch all but concedes that Prof. Pilgrim's opinions and testimony concerning intent, state of mind, motive, and "admissions" of infringement should be excluded. [D.I. 954 at 2–6.] Nevertheless, its proposal to remove from the Supplemental Report only *some* of Prof. Pilgrim's explicit statements regarding AVX's alleged awareness or admissions of infringement falls far short of limiting his opinions to those allowable under Federal Rule of Evidence 702.[1] Prof. Pilgrim should not be allowed to present *any* opinion or testimony that refers to or implicates AVX's state of mind or otherwise constitutes legal conclusions.

---

[1] AVX's motion is *not* limited to the paragraphs it identifies as "examples" in its opening brief. [*See, e.g.*, D.I. 939 at 4, 6 ("For example . . . ").] There are additional paragraphs within Prof Pilgrim's Supplemental Report that are nearly identical to those identified by AVX and similarly include opinions as to, for example, so-called admissions of infringement. [*See, e.g.*, D.I. 940-1 (Ex. 1) ¶ 90B (" ▮ . . . ."); ¶ 94 ("…and thus acknowledges infringement); ¶ 127D (" ▮ "); ¶ 133 ("It remains my opinion, that AVX admitted infringement . . . .").] Greatbatch's proposed Amended Supplemental Expert Report—which does not address these additional paragraphs—is not satisfactory for this reason alone.

1

In addition to conclusions as to motive or intent, expert testimony which could be interpreted as *inferring* state of mind is excludable. *See, e.g., W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*, 2015 WL 12815314, at *3 n.8 (D. Del. Nov. 2015); *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 n.9 (D. Del. 2004); *AstraZeneca UK Ltd. v. Watson Labs, Inc. (NV)*, No. 10-915-LPS, 2012 WL 6043266, at *2 (D. Del. Nov. 14, 2012). It thus is irrelevant whether the expert expressly testifies as to intent or whether the expert presents testimony from which state of mind could be inferred. In both instances the testimony is improper. *W.L. Gore & Assoc.*, 2015 WL 12815314, at *5 (holding that an expert could not offer opinion as to what the facts in the record "indicate" to him about materiality and intent); *see also In re Rosuvastatin Calcium Patent Litig.*, 2009 WL 4800702 at *9 (excluding impermissible expert opinion from which intent could be inferred). Here, AVX identified certain exemplar paragraphs within Prof. Pilgrim's Supplemental Report that comment—either expressly or implicitly—on AVX's intent. [*See, e.g.*, D.I. 939 at 4, 6 ("For example . . . ").] None of these paragraphs are admissible.

In addition, large portions of Sections IV and V of the Supplemental Report are merely Prof. Pilgrim's unscientific narration and review of documents and testimony. [D.I. 939 at 5.] For example, Prof. Pilgrim devotes several paragraphs of his report to his perception that there are inconsistencies in the record. [*See, e.g.*, Ex. 1 (Pilgrim 2/9/17 Rpt.) ¶¶ 117–129; D.I. 954 at 1 (noting that Prof. Pilgrim's Supplemental Report "simply comment[s] on AVX's admittedly inconsistent documentations").][2] Greatbatch identifies no issue to which these paragraphs could be relevant, nor do these paragraphs implicate any scientific or technical expertise on which

---

[2] References to "Ex. 1" through "Ex. 28" are to the exhibits attached to the Declaration of Jason J. Rawnsley [D.I. 940]. References to "Ex. 29" through "Ex. 33" are to the exhibits attached to the Declaration of Jason J. Rawnsley, submitted herewith.

expert testimony is appropriate. Indeed, their only apparent purpose is to call into question the credibility of AVX's witnesses and to reflect on AVX's state-of-mind, intent, and motive—both issues exclusively reserved for the fact finder.

Similarly, Prof. Pilgrim's assertions that AVX's conduct was "highly unusual" or not consistent with industry standards is inadmissible. [*See* D.I. 939 at 5.] Even when an expert has been permitted to testify concerning generally-accepted or usual standards of conduct, courts have excluded expert testimony and opinion that attempts to apply those standards to a party. *See, e.g., W.L. Gore & Assocs.*, 2015 WL 12815314, at *4 (allowing expert to provide overview of duties to the PTO, but not whether patentee met those duties); *Oxford Gene Tech.*, 345 F. Supp. 2d at 443 (holding that expert would not be allowed to testify as to whether or not defendant's behavior met the standard of reasonableness in confronting allegation of infringement). Prof. Pilgrim's opinion is such an application; he does not—because he cannot—detail the standards in the industry related to, for example, documentation or manufacturing controls. Rather, as Greatbatch itself admits, "Prof. Pilgrim merely makes a common sense observation . . . . that it is very unusual for a company in such a highly-regulated industry to act in this manner." Not only does this observation only go to AVX's intent, but it is the very kind of testimony that this Court has found inadmissible. Prof. Pilgrim's subjective beliefs as to AVX's conduct, not based on any technical or scientific expertise, should not be allowed; this sort of "color commentary" is not helpful to the finder of fact.

In addition, notwithstanding Greatbatch's assertion that Prof. Pilgrim is qualified to opine on "manufacturing issues" and has a "perfectly reasonable basis for his opinion," his resume and Greatbatch's own words belie this point. Outside of his university employment, Prof. Pilgrim worked for only a handful of years at Martin Marrietta Laboratories in the materials research

3

group and for the last few months has been employed by Corning Incorporated.[3]  [Ex. 3 (Pilgrim's CV); D.I. 954 at 6.]  This is not sufficient evidence to established that Prof. Pilgrim has special expertise in manufacturing processes or with respect to regulatory compliance to opine on "manufacturing issues."  Further, as stated above, Greatbatch itself calls his review a "common sense observation," not an expert analysis.

Finally, contrary to Greatbatch's suggestion, neither AVX nor the Court should be forced to parse through Prof. Pilgrim's Supplemental Report, including the forty paragraphs that comprise Sections IV and V, to find opinions that are not excludable.  *See In re Rosuvastatin Calcium Patent Litig.*, 2009 WL 4800702, at *9 ("While it might be possible to parse through Hino's 98-paragraph report and find something not excludable, this is not a task the Court should have to undertake in the first instance.").  Prof. Pilgrim decided to direct numerous paragraphs within Section IV and V to opinions that AVX intended to infringe, knew it infringed, or admitted infringement.  To support those opinions, he commented on and summarized dozens of documents as well as testimony in the record.  It is not AVX's or the Court's burden to determine if there is anything in that commentary and those summaries that could be admissible under Rule 702 and *Daubert*.

### B.  Federal Rule of Evidence 702 Prohibits Prof. Pilgrim From Opining That *All* AVX Ingenio FFTs Infringe the '779 Patent.

There are no facts or data to support Prof. Pilgrim's conclusion that ▌▌▌▌ Ingenio FFTs (i.e., parts made before January 2014) infringe the '779 patent.  Greatbatch does not contest this point.  [D.I. 954 at 6–12.]  Instead, it attempts to blame AVX for Prof. Pilgrim's inability to come forth with *any* evidence to support his opinion.  This attempt is futile.

---

[3] Prof. Pilgrim has been employed by Corning Incorporated since January 2017 as an "Educational Intern" in connection with "Technical Talent Pipelining."  [Ex. 3.]

### 1.   *Prof. Pilgrim Has No Evidence To Show that* ▓ *Parts Are Representative of Parts Made Before 2014.*

It is axiomatic that the patent holder—Greatbatch—bears the burden of proof on infringement. *St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*, 935 F. Supp. 2d 782, 784–85 (D. Del. 2013) (citing *Medtronic Inc. v. Boston Scientific Corp.*, 695 F.3d 1266, 1272 (Fed. Cir. 2012)). Greatbatch, however, seeks to turn this fundamental and well-established principle on its head. Throughout its opposition brief, Greatbatch argues that *AVX's experts* fail to demonstrate that parts ▓ are *not* representative of ▓ parts. [*See, e.g.*, D.I. 954 at 8 (noting that AVX's expert provides no opinion "demonstrating that a ▓ part is not representative of ▓ parts).] First, it has been and remains AVX's contention that no Ingenio FFT—▓—infringes the '779 patent. [*See, e.g.*, D.I. 956 (Smalley Decl.) Ex. 2 at 11–13.] Second, AVX has no obligation to offer an expert opinion on the issue of non-infringement, let alone proffer a specific expert opinion on the representativeness of certain parts.

Greatbatch is forced to focus on AVX's experts because Prof. Pilgrim does not even allege that ▓ parts are or can be representative of parts made before January 2014. He cannot make such an allegation because it is not true. Since at least July 2015, Greatbatch has known that AVX ▓ [D.I. 954 at 7.][4] The ▓ [D.I. 939 at 7–8.] Thus application of even a modicum of common sense leads one to conclude that ▓ are different than—and thus not representative of—▓

---

[4] AVX produced documents showing ▓ [Ex. 6] and Prof. Pilgrim addressed the ▓ in his May 2015 Report [Ex. 7 at 25–27]. Moreover, Greatbatch itself admits that AVX produced the document showing ▓ in July 2015—nearly two years ago. [D.I. 954 at 7.]

for purposes of the '779 patent. Prof. Pilgrim's failure to rely on analysis of ▮ parts, and inability or unwillingness to testify that ▮ parts are representative of ▮ parts, is sufficient reason to exclude his opinions on this issue.

In addition, Prof. Pilgrim is unable to state whether the allegedly infringing connection is the result of (i) the ▮, (ii) other ▮▮▮, or (iii) both. [D.I. 939 at 9.]⁵ As a result, it is Prof. Pilgrim, not AVX, who has inserted the question of ▮ parts into the infringement analysis. And because Prof. Pilgrim has no facts or data on ▮ parts, his opinion that the ▮▮ is wholly speculative.

### 2. *Greatbatch's Attempt to Reargue Its Spoliation Motion Should Be Rejected.*

The history of AVX's provision of Ingenio FFTs for Greatbatch's analysis during *two fact discovery and two expert discovery periods* is well known to the Court. [*See, e.g.*, D.I. 838 at 3–9.] Greatbatch has had substantial opportunities to review and analyze numerous parts AVX had in its possession, custody, or control. [*See, e.g., id.*; D.I. 939 at 10-11.] In fact, despite the fact that post-verdict discovery focused on infringement allegations vis-à-vis the '715 patent, the Court expressly ruled that Greatbatch was entitled to analyze any part using any methods "regardless of whether the methods were previously performed or *whether they may also produce new evidence relevant to infringement of '779 patent.*" [D.I. 791 (emphasis).] From all the parts available, Greatbatch chose certain rejected parts to analyze. [Ex. 29] It chose not to request, look at, or analyze hundreds of other rejected parts, including the parts without ▮

---

⁵ At times Prof. Pilgrim has stated that it is, in fact, the ▮▮▮ that allegedly causes infringement. For example, in May 2015, he concluded, "[I]t is my opinion that this ▮▮▮ and that it is the likely cause of the ▮▮▮." [Ex. 7 at 27.]

identified in AVX's opening brief.[6] Moreover, Greatbatch inexplicably decided to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. 2 at 177, 184 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).][7]

Greatbatch now repeats the very same facts and arguments it presented in its spoliation motion, which the Court denied. As the Court has already concluded:

> It's unfortunate that the parties weren't able to work something out, but what happened was most definitely not in the Court's view solely the fault of AVX. And importantly, Greatbatch . . . has always known that it has the burden of proof on infringement. And Greatbatch has no good explanation for why, even with the extensive period of post-discovery, it did not test parts that it was offered.

[Ex. 15 at 136.] Today, Greatbatch still does not have a good explanation for why it did not request, inspect, or analyze a single ▮▮▮▮ part AVX offered. In fact, neither Greatbatch nor Prof. Pilgrim can explain why parts rejected for reasons having nothing to do with the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are not suitable evidence.

In addition, Prof. Pilgrim's failure to analyze ▮▮▮▮ parts is not an issue to be resolved by the jury. Rule 702 requires that an expert opinion be "based on sufficient facts and data," and imposes on the Court the duty to "ensur[e] that an expert's testimony . . . rests on a

---

[6] Greatbatch claims that AVX did not make available the reasons why the parts were rejected. [D.I. 954 at 11.] This is not true. AVX made available a log categorizing the reason for the defect, and the actual parts (which are tagged with a note indicating the reason for rejection) were physically presented to Greatbatch's counsel in early 2015. [*See, e.g.*, Ex. 9]. All these parts were then again made available for Greatbatch to review in 2016. On May 26, 2016, AVX informed Greatbatch that it would be amenable to making available "Ingenios deemed defective, including those parts previously made available to and rejected by Jim Muldoon on January 26, 2015." [Ex. 30]. In response, Greatbatch identified only those parts listed in the Stipulation Concerning Inspection of Parts. [Ex. 29.]

[7] Greatbatch criticism of AVX's reference to the part from ▮▮▮▮▮▮▮▮▮▮ is without basis. [*See*, D.I. 954 at 12.] Although AVX agrees that this particular part ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that alone does not render the part irrelevant. For example, if Prof. Pilgrim had analyzed the part, he may have been able to conclude that there was evidence of infringement despite the ▮▮▮▮▮ and despite the lack of ▮▮▮▮▮. This would have provided some support for his opinion that the ▮▮▮, by itself, can cause an infringing connection. This is a theory for which Prof. Pilgrim currently has *no* evidence.

7

reliable foundation." *Daubert*, 509 U.S. at 597. Here, there is *no* reliable foundation to support Prof. Pilgrim's all-inclusive infringement conclusion because he never examined ▆ parts. Even more troubling, however, is that Greatbatch once again effectively seeks to present discovery disputes—and implicate counsel as witnesses—at trial. [D.I. 954 at 10.] For all of the reasons supporting the Court's earlier denial of that possibility [Ex. 31 at 141:21–143:17], it should deny it again in this context.

### C. Prof. Pilgrim's Opinions Based on Images from EAG Do Not Satisfy Rule 702.

In its motion AVX challenges Prof. Pilgrim's reliance on EDS images generated by EAG not because adjustments were necessary or even made, but because Prof. Pilgrim relies on images with known ▆. At bottom, there is no means to assess the reliability of Prof. Pilgrim's opinion derived exclusively from his personal and subjective observation of images with known errors.[8]

Although Greatbatch devotes a large portion of its opposition to a discussion of ▆ [D.I. 954 at 13–17], Prof. Pilgrim does *not* appear to rely on images with such ▆. Instead, he looks at images that ▆ and claims—"because of his experience interpreting SEM/EDS"— he can determine where ▆.[9] [*Id.* at 16.] But "the Court has no way of determining whether [Prof. Pilgrim's] years of experience add up to actual expertise."

---

[8] AVX's motion need not be supported by an expert declaration as there is a plethora of evidence already in the record on which AVX can rely, including the testimony of Greatbatch's own experts and laboratories.

[9] There is no allegation that Dr. Hillman or anyone at DfR considered or relied on EDS data that ▆. Accordingly, Greatbatch's criticisms of AVX's expert are simply inapposite.

8

*United States v. Frabizio*, 445 F. Supp. 2d 152, 166 (D. Mass. 2006). In fact, his "very subjective" analysis [Ex. 24 at 73–76] has no standards, controls, or known error rates. *See id.* (excluding expert testimony from a photographic expert distinguishing between real and altered photographs based on visual observation because, among other things, error rates were unknown and there were no standards or controls). It, therefore, is unsurprising that Prof. Pilgrim reaches different conclusions on different days [*see, e.g.*, D.I. 939 at 16]—a fact that Greatbatch and Prof. Pilgrim do not even address.[10]



In addition, neither Prof. Pilgrim nor EAG can now identify what ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it produced. [D.I. 939 at 15.] For example, Prof. Pilgrim in his report cites to a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [Ex. 1 at 33.] But Prof. Pilgrim could not distinguish with any certainty ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at his deposition. [Ex. 32 (Pilgrim 4/27/17 Dep.) at 170:16–173:4.] Nor could he determine how the ▇▇▇▇▇▇▇ (e.g., ▇▇▇▇▇▇▇▇▇▇▇). [*Id.* at 173:5–8.] As a result, it is unclear what methodology EAG used to create images that Prof. Pilgrim sometimes refers to and at other times ignores.[11]

---

[10] Greatbatch argues that "[t]he human eye is well-known for distinguishing variations in color intensity." [D.I. 954 at 20.] This argument suggests both (1) that a conclusion as to the presence or absence of lead varies person-by-person and (2) that no specialized expertise is necessary to interpret the images. Either way, Prof. Pilgrim's reliance on EAG's images and conclusions concerning them are excludable.

[11] In his most-recent declaration, Prof. Pilgrim claims that some of the images in his Supplemental Report were the result of ▇▇▇▇▇▇▇ or ▇▇▇▇▇▇▇ [D.I. 955 at ¶12.] This claim is inconsistent with his deposition testimony that he did not know whether the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [*See, e.g.*, Ex. 32 (Pilgrim 4/27/17 Dep.) at 173:5–8.] Moreover, Prof. Pilgrim did not even know whether EAG produced to him images ▇▇▇▇▇▇▇▇▇▇▇ before he completed his Supplemental Report on February 9, 2017. [*Id.* at 135:7–136:9.] In fact, late that that day, EAG sent Prof. Pilgrim a third set of images ▇▇▇▇▇▇▇ [Ex. 33.]

9

RLF1 17655535v.1

Because Prof. Pilgrim's "very subjective" opinions as to what the EAG images show are not the result of "reliable principles and methods" they are not admissible.

## III. CONCLUSION

For all the foregoing reasons, and those set forth in AVX's Opening Brief, the Court should grant AVX's Motion to Exclude Expert Testimony of Professor Steven M. Pilgrim, Ph.D.

OF COUNSEL:

Ronald E. Cahill
Paul J. Cronin
James C. Hall
Heather B. Repicky
NUTTER, MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Tim F. Williams
DORITY & MANNING
Two Liberty Square
75 Beattie Place, Suite 1100
Greenville, SC 29601
(864) 271-1592

Dated: June 2, 2017

*/s/ Robert W. Whetzel*
Robert W. Whetzel (#2288)
Chad M. Shandler (#3796)
Todd Coomes (#4694)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
whetzel@rlf.com
shandler@rlf.com
coomes@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants AVX Corporation and AVX Filters Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2017, I caused to be served true and correct copies of the foregoing document by electronic mail on the following counsel:

Brian E. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302)777-0300
bfarnan@farnanlaw.com

Neal L. Slifkin
Laura W. Smalley
Steven P. Nonkes
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, NY 14534
(585)4196-8800
nslifkin@harrisbeach.com
lsmalley@harrisbeach.com
snonkes@harrisbeach.com

James R. Muldoon
HARRIS BEACH PLLC
333 West Washington Street, Suite 200
Syracuse, NY 13202
(315) 423-7100
jmuldoon@harrisbeach.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com