IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GREATBATCH LTD.,

    Plaintiff,

v.

AVX CORPORATION and
AVX FILTERS CORPORATION,

    Defendants.

C.A. No. 13-723-LPS

Brian E. Farnan, FARNAN LLP, Wilmington, DE

James R. Muldoon, HARRIS BEACH PLLC, Syracuse, NY

Neal L. Slifkin, Laura W. Smalley, Steven P. Nonkes, HARRIS BEACH PLLC, Pittsford, NY

    Attorneys for Plaintiff.


Robert W. Whetzel, Chad M. Shandler, Todd Coomes, Jason J. Rawnsley, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Ronald E. Cahill, Paul J. Cronin, James C. Hall, Heather B. Repicky, Alison C. Casey, NUTTER, MCCLENNEN & FISH LLP, Boston, MA

Tim F. Williams, DORITY & MANNING, Greenville, SC

    Attorneys for Defendants.

**MEMORANDUM OPINION**

March 30, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the parties' – Plaintiff Greatbatch Ltd. ("Greatbatch" or "Plaintiff") and Defendants AVX Corporation and AVX Filters Corporation ("AVX" or "Defendants") – motions resulting from two jury trials: (1) AVX's motion to set aside the damages verdict and for a new trial on damages (D.I. 1066); and (2) Greatbatch's request for enhanced damages (D.I. 1067).[1] Briefing on the motions was completed on November 3, 2017. (D.I. 1067, 1068, 1078, 1080, 1091, 1093) Thereafter, the parties submitted notices of subsequent authority. (D.I. 1102, 1105) The Court heard oral argument on January 18, 2018. (*See* D.I. 1112) ("Tr.")

For the reasons discussed below, the Court will grant AVX's motion to set aside the damages verdict and for a new trial on damages and deny Greatbatch's request for enhanced damages.

## I. BACKGROUND

This patent infringement case has charted a convoluted history. It involves four patents – the '095 patent, the '627 patent, the '715 patent, and the '779 patent – and three accused products – AVX's Frontier, NG3, and Ingenio filtered feedthroughs ("FFTs"), some of which come in multiple versions.

Trial on all four patents was originally set to begin January 11, 2016. However, on January 5, 2016, the Court granted summary judgment that AVX's Ingenio FFTs infringed the

---

[1]Also pending before the Court is AVX's Rule 50(a) motion for judgment as a matter of law for non-infringement of U.S. Patent Nos. 6,888,715 and 6,765,779. (D.I. 1034) As the Court did not grant the motion and AVX did not renew it, the motion will be denied as moot. *See* Fed. R. Civ. P. 50(b).

1

'715 patent as a sanction for AVX's late production of core technical documents and deferred trial of the issues of willful infringement of the '715 patent and infringement of and damages for the '779 patent. (D.I. 573, 591)

Thereafter, on January 11, 2016, the Court proceeded with an 11-day jury trial on the remaining issues: invalidity of all the patents-in-suit, infringement of the '627 and '095 patents, and damages regarding the '627, '095, and '715 patents. (*See* D.I. 689, 690, 691, 693, 694, 695, 696, 697, 698, 699, 700 (hereinafter, "2016 Tr.")) On January 26, 2016, the jury returned a verdict, finding infringement of claim 12 of the '627 patent by AVX's Frontier and NG3 products, infringement of claims 4, 6, and 9 of the '095 patent by AVX's Ingenio product, no invalidity of the '627, '095, '779, or '715 patents,[2] and a lump sum damages award to Greatbatch of $37.5 million for infringement of the '095, '627, "and/or" '715 patents. (D.I. 625)

On April 18, 2016, the Court granted AVX's motion for reconsideration of the Court's January 5, 2016 sanctions order, vacated its order granting summary judgment that AVX's Ingenio FFTs infringed the '715 patent, and held that "[t]o the extent Greatbatch intends to maintain its claim for damages for infringement of the '715 patent, Greatbatch will be permitted to try infringement of the '715 patent at a second jury trial to be scheduled at a future date." (D.I. 709 at 20)

Beginning on August 7, 2017, the Court held a phased five-day jury trial (*see* D.I. 1060, 1061, 1062, 1063, 1064, 1065 (hereinafter, "2017 Tr.")) on the issues of infringement of the '715 and '779 patents and willful infringement of the '715 patent. Phase one resulted in a jury verdict

---

[2]The jury also found no invalidity of U.S. Patent No. 7,327,553, a patent no longer at issue in this case due to the cancellation of all asserted claims under 37 C.F.R. § 42.73(b) following an IPR proceeding. (D.I. 1058 at 3 n.2)

2

of no infringement of the '715 patent by AVX's platinum-pin Ingenio FFTs, infringement of dependent claims 7 and 15 of the '715 patent by AVX's palladium-pin Ingenio FFTs with split washers and palladium-pin Ingenio FFTs with reduced diameter washers of less than 16 mils, and no infringement of the '779 patent. (D.I. 1030) In phase two, the jury was unable to reach a unanimous verdict as to whether AVX's infringement of the '715 patent was willful. (D.I. 1035, 2017 Tr. at 1095)

On August 28, 2017, the Court ordered the parties to provide briefing on: (1) "whether, assuming a new jury were to find AVX's infringement to be willful, the Court would or would not enhance damages;" and (2) "a motion to set aside the prior damages verdict and for a new trial on damages." (D.I. 1053 at 1-2)

## II. LEGAL STANDARDS

### A. Motion to Set Aside Verdict and for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence and a new trial must be granted to prevent a miscarriage of justice, *see Roebuck v. Drexel Univ.*, 852 F.2d 715, 717 (3d Cir. 1988); (2) newly discovered evidence exists that would likely alter the outcome of the trial, *see Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); (3) improper conduct by an attorney or the court unfairly influenced the verdict, *see Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999); or (4) the jury's verdict was facially inconsistent, *see Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996).

The decision to grant or deny a new trial is committed to the sound discretion of the

3

district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc., v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under deferential abuse of discretion standard). "In the Third Circuit, a jury verdict is not to be set aside merely on the basis of the Court substituting its judgment for that of the jury. Rather, the verdict must be permitted to stand if it is supported by evidence so long as nothing suggests that the decision was guided by partiality, prejudice, mistake, or corruption." *Day v. Abumohor*, 1992 WL 162958, at *1 (D. Del. June 19, 1992) (internal citations omitted).

Where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – a new trial grounded on the verdict being against the great weight of evidence should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991). Moreover, "[w]here the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations." *Id.* at 1352.

## B.  Enhanced Damages

When damages resulting from patent infringement are found, "the court *may* increase the

4

damages up to three times the amount found or assessed." 35 U.S.C. § 284 (emphasis added). In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016), the Supreme Court explained that § 284 means "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *See also id.* at 1934 ("Section 284 gives district courts discretion in meting out enhanced damages.").

*Halo* further explains that "enhanced damages are generally appropriate under § 284 ***only in egregious*** cases. . . . [Enhanced damages are] ***not*** to be meted out in a ***typical*** patent infringement case." *Id.* at 1932 (emphasis added). *Halo* continues: "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* Yet

> . . . none of this is to say that enhanced damages ***must*** follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount.

*Id.* at 1933 (emphasis added). The party seeking enhanced damages has the burden of proving by a preponderance of the evidence that they should be awarded. *See id.* at 1934.

### III. DISCUSSION

#### A. AVX's Motion to Set Aside the Damages Verdict and for a New Trial on Damages

AVX bases its motion on three grounds: (1) the 2017 jury verdict that certain Ingenio FFTs do not infringe the '715 patent contradicts the assumption upon which the 2016 damages award was premised; (2) because Greatbatch insisted on a general verdict form, there is no means

5

by which to extract the damages attributed to the '715 patent from the lump-sum awarded by the 2016 jury; and (3) the post-trial final and non-appealable invalidation of claims 11 and 13 of the '627 patent provide non-infringing alternatives that AVX was unable to present to the 2016 jury as a matter of law. (D.I. 1068 at 1) The Court agrees with AVX on all three points and will, therefore, grant the motion to set aside the damages verdict and order a new trial on damages.

A new trial as to damages may be required "where the jury render[s] a single verdict on damages, without breaking down the damages attributable to each patent." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1262 (Fed. Cir. 2014) (vacating single sum damages award premised on mistaken assumption when award did not specify how it was apportioned between two patents). That is what occurred here.

The 2016 verdict form stated, in relevant part:

> *You are only to award damages if you have found an Asserted Claim of the '095, '627, and '715 patent to be infringed and valid.*
>
> *For purposes of assessing damages only, you are to assume that the '715 patent is infringed for the Ingenio product.*
>
> If you have found that AVX has infringed an Asserted Claim of the '095, '627, and/or '715 Patent and that that Asserted Claim is not invalid, what is the total amount Greatbatch has proved by a preponderance of the evidence that it is entitled to be paid?
>
> Amount (in US dollars): _____

(D.I. 625 at 4).

During trial, AVX proposed a verdict form that, upon an award of damages, would have required the jury to identify the amount of damages, if any, attributable to the '715 patent. (D.I.

6

602 at 4) AVX explained that, due to its intent to renew the motion for reconsideration of the sanctions imposed by the Court, which included granting summary judgment of infringement of the '715 patent, allowing this additional question on the verdict sheet would "avoid an issue where we wouldn't have any relief other than to retry the entirety of the damages case." (2016 Tr. at 1501) Greatbatch opposed this additional question, insisting that "the Ingenio is covered by both [the '715 and '095] patents" and therefore, even if the holding regarding the '715 patent was vacated or reversed, the damages award would still stand if the '095 patent were found to be valid and infringed. (*Id.* at 1502, 1162)[3]

As the Court previously noted, however, "[t]he '095 [patent] expired and did not cover the entire period for which damages was awarded on the '715 [patent]." (D.I. 877 at 134) Thus, upon a finding that the '715 patent was not infringed by all Ingenio products – as was found in the 2017 jury trial – the damages award would have to be premised entirely on infringement of the '627 patent or a combination of infringement of the '627 and '095 patents in order to withstand being vacated due to the 2017 trial. But since the Court instructed the 2016 jury to assume infringement of the '715 patent for Ingenio products, and in light of that jury's finding that the asserted claims of the '715 patent were not invalid, that jury must have associated some part of its award with the '715 patent. Further, because the damages "are tied up in a single damages verdict" (*id.*), there is no way of determining how the jury came to its decision or what

---

[3]Additionally, during the 2017 trial, AVX proposed an infringement verdict form broken out by both patent and product. (D.I. 987, 1008) Greatbatch opposed this method, seeking instead a more general verdict broken out solely by patent. (*See id.*; D.I. 2016 Tr. at 16-19) The Court agreed with AVX that a more specific verdict form was more beneficial. (2016 Tr. at 36 (Court stating, "I do want to get help from the jury and break things down somehow by part... I am not at all persuaded that I should ask one broad general question to this jury about '715 infringement. I don't think that will be sufficiently helpful to the Court going forward."); *see also* D.I. 1028)

7

amount it attributed to the various patents and products.

Not only does the 2017 verdict negate one of the assumptions upon which the damages were based, but due to the format of the verdict sheet and the fact that the award is a single lump sum, a retrial of damages on all products – including the NG3 and Frontier – is required to, at a minimum, extract damages for the non-infringing platinum-pin Ingenio FFTs from the verdict and evaluate whether those products are non-infringing alternatives to palladium-pin Ingenio FFTs, which could mitigate the award of lost profits or price erosion damages.

These problems with the damages verdict cannot be cured by Greatbatch's proposed calculations, for at least two reasons. (*See* D.I. 1078 at 18) First, Greatbatch's arithmetic does not consider the effect of the 2017 verdict on its price erosion theory or the additional impact of a finding that platinum-pin Ingenio FFTs are non-infringing alternatives to palladium-pin Ingenio FFTs. Second, the variables Greatbatch bases its calculations on are taken from a demonstrative chart submitted to the jury during deliberation but never admitted into evidence. (*See* 2016 Tr. at 2128-29 (Greatbatch counsel stating "the slides are not in evidence since they are demonstratives"); *see also* D.I. 627 at 4 (Court instructing jury that "damage analysis slides are not in evidence")) The chart has no independent probative value and there is no way to discern, beyond mere speculation, how the jury came to its lump sum award or how much of that award it attributed to the various patents and products.[4]

AVX argues that a new trial on damages is required also as a result of the Federal Circuit's final and non-appealable decision confirming the invalidity of claims 11 and 13 of the

---

[4]Even if the demonstrative could be considered admitted into evidence, in light of the various other problems with the 2016 damages verdict, the Court will not speculate what the jury did to reach its decision.

'627 patent. (D.I. 1068 at 15) AVX contends that the invalidity of these claims means there are now non-infringing alternatives to claim 12, the only asserted claim of the '627 patent, which negates Greatbatch's entitlement to lost profits and price erosion damages for the Frontier and NG3 products. (*Id.*)

Claim 11 is directed to internally-grounded FFTs and claims 12 and 13, which depend from claim 11, relate to asymmetrical and symmetrical feedthrough filter capacitors, respectively. During the 2016 trial, Greatbatch premised its damages argument on the fact that there were no non-infringing alternatives to claim 11 other than externally-grounded FFTs, which the evidence at trial showed AVX failed to successfully design. (2016 Tr. at 754, 801; D.I. 1078 at 8) Greatbatch further alleges now that, "[a]t the time of trial, AVX had known for over 12 months that the PTAB had instituted *inter partes* review of claims 11 and 13, and for over 2 months that the PTAB had finally rejected claims 11 and 13. Nevertheless, AVX never offered or disclosed an expert opinion that an FFT practicing claim 13 was a non-infringing alternative to an FFT practicing claim 12." (D.I. 1078 at 6)

Contrary to Greatbatch's assertions (*id.* at 6-10), AVX was not permitted to introduce evidence of the IPR proceedings surrounding the '627 patent during the 2016 trial because the Court granted Greatbatch's motion to preclude such evidence. (*See* D.I. 594 at 72-74) (granting Greatbatch's motion *in limine* to preclude evidence or argument regarding IPR with respect to '627 patent)[5] Due to Greatbatch's litigation conduct, AVX was not aware that claim 12 was the

---

[5]Moreover, the Court does not agree with Greatbatch that AVX waived an argument that claims 11 and 13 are non-infringing alternatives to claim 12. The Court's rulings precluding IPR evidence (at Greatbatch's request) made it clear the Court would not have allowed such an argument at trial by AVX. (*See* D.I. 594 at 73 (Court finding risk of juror confusion, unfair prejudice to patentee, and enormous amount of time required for both parties to fairly present

9

sole asserted claim of the '627 patent until weeks before the pre-trial conference. (D.I. 530 at 1) Until that time, the only arguably non-infringing alternative was an externally-grounded FFT; upon narrowing the asserted claims, and in light of the Federal Circuit's final ruling on invalidation of claims 11 and 13, evidence of possible non-infringing alternatives to the '627 patent may exist – a fact question that should be decided by a jury, which necessitates a retrial of damages.

The Court does not agree with Greatbatch that granting a new trial on damages will undo the Court's sanction previously imposed on AVX. (*See* D.I. 1112 at 38) A new trial on damages now does not lessen the deterrent effect of the Court's prior-imposed sanctions; the sanction still fully stands. In granting summary judgment of infringement of the '715 patent and deferring the issue of willful infringement of the '715 patent and infringement of and damages for the '779 patent until a later trial, the Court deprived AVX of trying damages and liability of the '715 patent together and allowed Greatbatch almost a year of additional discovery. Moreover, the conduct leading to those sanctions (AVX's late production of core technical documents) is unrelated to the conduct necessitating a new trial. While Greatbatch contends that "part of the Court's sanction was that Greatbatch need not . . . prove damages again," the condition under which that statement was premised – that Greatbatch would "ultimately prevail in proving AVX

---

their positions "with respect to what has happened in the IPR, what has not happened in the IPR with respect to claim 12, what remains to be done, . . . [and] ***the implications of the finding with respect to claim 11 for claim 12***" outweighed any probative value of the IPR) (emphasis added); *see also Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 241 (D. Del. 2017) ("To penalize a defendant for failing to raise (and incur the associated expenses of) a motion or defense that the Court would have undoubtedly rejected would, in this Court's view, be inconsistent with both the language and spirit of the rules of procedure and not otherwise in the interest of justice.") (internal quotation marks omitted))

10

infringes the '715 patent" – did not occur. (D.I. 1112 at 37; D.I. 709 at 23)

In sum, because the $37.5 million damages award is based on the incorrect assumptions that all Ingenio FFTs infringe the '715 patent and that no non-infringing alternatives to the '715 and '627 patents exist, and because there is no way of knowing how the jury came to its lump sum award – basing its decision on a finding of infringement of one or a combination of the asserted patents and products – the award must be vacated and a new trial as to damages is necessary.[6] To clarify, the Court is not granting a new trial based on a finding that substantial evidence does not support the jury's verdict. Instead, because the assumptions upon which the verdict was reached are no longer supported, the Court finds the damages verdict "cries out to be overturned" and exercises its discretion to grant a new trial to prevent a miscarriage of justice. *See Roebuck*, 852 F.2d at 717; *Williamson*, 926 F.2d at 1352-53.

## B. Greatbatch's Request for Enhanced Damages

Greatbatch predicates its request for enhancement on multiple grounds. First, Greatbatch contends that AVX knew of the '715 patent, knew its Ingenio FFTs infringed the '715 patent, and proceeded to make and sell infringing Ingenio FFTs anyway. Second, Greatbatch contends that AVX engaged in egregious litigation misconduct. Neither of these contentions, singly or in combination with the other *Read* factors[7], persuade the Court to enhance damages, even if

---

[6]Unlike in *Promega Corp. v. Life Tech., Corp.*, 2017 WL 5242434 (Fed. Cir. Nov. 13, 2017), Greatbatch did not base its damages calculation on alternative theories of infringement such that an award based on a subset of damages is precluded, nor did Greatbatch waive its right to a subset of damages. Nevertheless, because the Court finds multiple problems with the 2016 verdict in light of the 2017 verdict and post-trial evidence, a new trial as to damages is warranted.

[7]The *Read* factors are: (1) whether the infringer deliberately copied the invention; (2) whether the infringer, when aware of the patent, investigated and formed a good faith belief of invalidity or noninfringement; (3) the infringer's behavior as a party to litigation; (4) defendant's size and

11

willfulness were found.

Greatbatch alleges that AVX was aware of the '715 patent and deliberately copied Greatbatch's design. (D.I. 1067 at 6-7) Specifically, Greatbatch points to AVX's use of Greatbatch's unfiltered feedthroughs ("UFTs") as the basis for AVX's Ingenio product. (*Id.*) The Court, however, has already rejected this argument, holding that "evidence that AVX may have copied aspects of *unfiltered* feedthrough products is irrelevant to the issue of infringement of Greatbatch's patents at issue in this case, which cover *filtered* feedthroughs." (D.I. 857 at 5) Moreover, as Greatbatch states, "[t]he central issue concerning infringement of the '715 patent was whether, in AVX's Ingenio FFTs, solder around the pins came into contact with the gold braze seals" (D.I. 1067 at 1), but AVX's Ingenio FFTs intentionally included pin washers to "act like a dam" and prevent the solder from contacting the gold braze (D.I. 1080 at 6). That AVX intentionally avoided infringement also supports a finding that AVX did not act with motivation for harm, but rather with a profit motive – a motive that does not support enhancement. *See Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 701 (D. Del. 2017) ("The fact that the infringer acted pursuant to a financial motive does not distinguish this case from the garden-variety infringement case.") (internal quotation marks omitted).

Greatbatch also asserts that AVX failed to implement changes to the Ingenio FFTs upon learning of infringement allegations. (D.I. 1067 at 8). However, the evidence presented at trial showed that AVX engineer Rigoberto Rios took remedial action by experimenting with different

---

financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-28 (Fed. Cir. 1992).

pin washers within days of becoming aware of the issue and ultimately advised AVX (and BSC) of the need for smaller inner diameter washers. Even before receiving approval from BSC, AVX implemented Mr. Rios's suggestions in order to avoid infringing Greatbatch's patents. (*See* D.I. 1081 Ex. I at 466)

Regarding AVX's alleged litigation misconduct, the Court has already addressed Greatbatch's recycled arguments and sanctioned AVX when appropriate. (*See, e.g.,* D.I. 877 at 136-138) Moreover, this was a close case – as demonstrated, in part, by the fact that a jury was unable to reach a unanimous decision on willfulness – and Greatbatch did not lack litigation and discovery disputes of its own. In fact, the Court previously referred to "this particularly contentious action" as involving "a tortuous gauntlet of discovery disputes." (D.I. 709 at 2)

AVX did act with an attempt to conceal its misconduct, which does favor enhancement. (*See, e.g.,* D.I. 1069 Ex. 15 at 1 (referring to "TOP SECRET" and "clandestine" project for development of Ingenio FFTs); D.I. 1069 Ex. 16 at 50-52 (Heidelberg explaining attempt to prevent Ingenio project from becoming public)) However, the remaining factors, and those addressed above, outweigh this factor. The size and financial condition of the alleged infringer is typically a factor weighing against enhancement when the alleged infringer is "in such perilous financial condition that an award of enhanced damages might put it out of business." *Idenix*, 271 F. Supp. at 701. AVX is a large and healthy company, and thus, this factor is given little weight here. Finally, the duration of misconduct was short as, upon discovering a potential patent infringement issue, AVX began remedial action within days.

In sum, six factors weigh against enhancement (no deliberate copying, good faith belief of non-infringement, remedial action, short duration of infringement, closeness of case, and no

13

motivation for harm), one factor weighs in favor of enhancement (attempt to conceal), and two factors are neutral (both parties were particularly litigious and AVX's size and financial condition). Accordingly, the Court concludes that an award of enhanced damages is not warranted. As the Court has had two trials on the asserted patents and products and seen all of the evidence, it can make this finding even before a finding on willfulness.[8]

## IV. CONCLUSION

For the reasons stated above, the Court will grant AVX's motion to set aside the damages verdict and for a new trial on damages (D.I. 1066) and deny Greatbatch's request for enhanced damages (D.I. 1067). An appropriate Order follows.

---

[8] In considering the totality of the circumstances, the Court solely evaluated conduct related to the '715 patent and AVX's Ingenio product, the only product implicated by the '715 patent. However, had the Court also considered the NG3 and Frontier products as well as the other asserted patents, Greatbatch's showing on enhancement would be even lesser because Greatbatch did not prove AVX willfully infringed the '627 or '095 patents and did not prove AVX infringed the '779 patent.