1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                               - - -
     GREATBATCH LTD.,
4                                         :      CIVIL ACTION
              Plaintiff,                  :
5    v                                    :
                                          :
6    AVX CORPORATION, and                 :
     AVX FILTER CORPORATION,              :
7                                         :      NO. 13-723-LPS
              Defendants.
8                               - - -

9                          Wilmington, Delaware
                         Monday, November 19, 2018
10                        *Telephone Conference*

11                              - - -

12   BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

13   APPEARANCES:                - - -

14              FARNAN, LLP
                BY:  ROSEMARY J. PIERGIOVANNI, ESQ.
15
                    and
16
                HARRIS BEACH, PLLC
17              BY:   JAMES R. MULDOON, ESQ.
                     (Syracuse, New York)
18
                    and
19
                HARRIS BEACH, PLLC
20              BY:  LAURA W. SMALLEY, ESQ.
                     (Pittsford, New York)
21
                          Counsel for Greatbatch Ltd.
22
                                   Brian P. Gaffigan
23                                 Official Court Reporter

24

25

1    APPEARANCES:   (Continued)

2

3                RICHARDS LAYTON & FINGER, P.A.
                 BY:   ROBERT W. WHETZEL, ESQ., and
                       JASON JAMES RAWNSLEY, ESQ.
4

5                      and

6                NUTTER McCLENNEN & FISH, LLP
                 BY:   RONALD E. CAHILL, ESQ., and
                       MICAH W. MILLER, ESQ.
7                      (Boston, Massachusetts)

8                        Counsel for AVX Corporation
                         and AVX Filter Corporation
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          - oOo -

 2                  P R O C E E D I N G S

 3              (REPORTER'S NOTE:  The following telephone

 4   conference was held in open court, beginning at 2:47 p.m.)

 5              THE COURT:  Good afternoon, everyone.  This is

 6   Judge Stark.  Who is there, please?

 7              MS. PIERGIOVANNI:  Good afternoon, Your Honor.

 8   This is Rosemary Piergiovanni from Farnan representing

 9   Greatbatch.  I have on the line with me Jim Muldoon from

10   Harris Beach, and Laurie Smalley, also from Harris Beach.

11              THE COURT:  Okay.

12              MR. RAWNSLEY:  And, Your Honor, this is Jason

13   Rawnsley of Richards Layton & Finger for AVX; and I'm joined

14   by Robert Whetzel of Richards Layton; and Ron Cahill and

15   Micah Miller of Nutter McClellan.

16              THE COURT:  I have my court reporter here with

17   me.  For the record, it is our case of Greatbatch Limited

18   versus AVX Corporation, et al, Civil Action No. 13-723-LPS.

19   This is the time that I set to talk about two of the motions

20   to strike that are pending and were the subject of letter

21   briefs.

22              I want to first discuss Greatbatch's motion to

23   strike portions of AVX's report related to noninfringing

24   alternatives.  So let me hear from Greatbatch first on that

25   one, please.
```

1          **MS. SMALLEY:  This is Laurie Smalley from**

2     **Harris Beach, Your Honor, representing Greatbatch.  I'll be**

3     **addressing the motion to strike.**

4          **AVX has offered both technical and damages**

5     **expert testimony relating to the '095 patent that could have**

6     **been offered prior to the first trial on damages in January**

7     **26, 2016, but was not disclosed in AVX's expert reports**

8     **presented in the first trial.  It has also offered testimony**

9     **on apportionment not disclose in its original expert reports**

10    **represented during the first trial.**

11          **The Court's Order granting a new trial at Docket**

12    **No. 1013 notes that AVX asked for a motion for new trial**

13    **based on three grounds:  That the 2017 jury verdict that**

14    **certain Ingenio FFTs did not infringe the '715 patent**

15    **contradicted the assumption upon which the 2016 damages**

16    **verdict was based; that because of the general verdict form,**

17    **there was no means to extract damages attributed to the '715**

18    **patent from the lump sum jury award; and the post-trial**

19    **Federal Circuit decision that finally invalidated claims**

20    **11 and 13 of the '627 patent provided noninfringing**

21    **alternatives that AVX was unable to present to the first**

22    **jury.**

23          **The Court granted AVX a new trial based on**

24    **essentially the grounds that were raised.  The Court did not**

25    **believe the existing damages award could be attributed to**

1    specific patents or products, and the Court's Order stated

2    that it was granting a new trial so a jury could determine

3    whether platinum pin Ingenio FFTs were noninfringing

4    alternatives to the '715 patent and because possible

5    noninfringing alternatives to the '627 patent could exist

6    and should be presented to the new jury.

7            There was nothing in the Court's Order that

8    contemplated AVX's new noninfringing alternatives to the

9    '095 patent or any noninfringing alternatives to the '715

10   patent other than the noninfringing platinum pin Ingenio

11   FFTs.

12           THE COURT:  Ms. Smalley, let me stop you there

13   because I think --

14           MS. SMALLEY:  Sure.

15           THE COURT:  I think the question may actually

16   be the flip of that, the reverse of that.  Where is there

17   anything that limits what AVX can do in the new expert

18   discovery that I ordered in connection with the new trial?

19           MS. SMALLEY:  Basically, Your Honor, the expert

20   discovery order does provide for supplemental reports but

21   it's within the Court's discretion and it's the general

22   rule that new evidence and exhibits should not be presented

23   at a second trial outside of if the Court deems a compelling

24   need, or I think the language is.

25           THE COURT:  Right.  Now, I have seen those

1    cases, but that is what I wanted to understand.  I have

2    not seen you point me to anything in the opinion granting

3    the new trial or in the supplemental scheduling order or

4    anywhere else where I said in this case, I'm going to

5    exercise my discretion to limit what the expert discovery

6    is going to be in connection with the new trial.  I see the

7    case is about sort of the general background presumption and

8    I just wanted to understand are you relying on that general

9    background presumption or is there something specific that I

10   have done in this case to limit AVX?

11           MS. SMALLEY:  I mean I would obviously defer

12   to the Court on the interpretation of its own order, but the

13   order granting a new trial was for a specific purpose.  It

14   wasn't to entitle AVX to redo its damages case.

15           THE COURT:  Well, let me better understand that.

16   I thought that the damages trial is in part due to the fact

17   that certain of the premises and assumptions that underlie

18   the earlier damages verdict are no longer operative and

19   given the general verdict form that we used last time, we

20   really don't know what the jury thought about, for instance,

21   potential noninfringing alternatives for any of the patents.

22   We can speculate maybe some speculations are more likely

23   than others, but we really don't know and therefore we need

24   a new trial on damages.

25           Wasn't that what I articulated?

1          MS. SMALLEY:  Yes, Your Honor.  But that doesn't,

2    in my opinion, allow AVX to present new noninfringing

3    alternatives to the '095 or the '715 patent.  I mean it had

4    noninfringing alternatives it presented at the first trial

5    but this is new information that doesn't relate to the Court's

6    grant of a new trial.

7          THE COURT:  All right.  Well, even the cases you

8    cite say that the Court has discretion to allow new opinions

9    even though they could have been raised in connection with

10   the earlier trial.  Why shouldn't I at this point be

11   exercising that discretion in that direction?

12         MS. SMALLEY:  Because that gives AVX an unfair

13   advantage.  The reason for the new trial was related to very

14   specific things, the noninfringement verdict on the '715

15   patent and the possibility of noninfringing alternatives of

16   the '627 patent related to the Federal Circuit decision

17   affirming the PTAB invalidation of those claims.  I mean this

18   in essence, if the Court were to allow new evidence, would

19   give AVX a redo and a chance to improve its case after seeing

20   Greatbatch's case.

21         THE COURT:  Okay.  Thank you.  Let me hear from

22   AVX on this motion, please.

23         MR. CAHILL:  Thank you, Your Honor.  This is Ron

24   Cahill on behalf of AVX.

25         Your Honor, we believe that the Court's Order

1    didn't limit discovery in any way.  That the Court correctly

2    vacated the existing damages verdict and ordered a new trial.

3    And that the facts on the ground changed between 2016 and

4    2018.

5                Ms. Smalley mentioned the '715 patent.  The

6    last time we tried infringement on the '715 patent, there

7    was an assumption that all Ingenio parts infringe, and that

8    assumption doesn't exist anymore, and we know, in fact, that

9    some of them don't.  And, in fact, that contradicts some of

10   the evidence and testimony that Greatbatch put on in 2016.

11               So the case now is a little bit different, and

12   nowhere in Greatbatch's argument or briefing does one find

13   any actual prejudice to Greatbatch.  AVX presented its

14   expert opinions according to the schedule that the Court set.

15   Greatbatch responded to those expert reports according to the

16   schedule that the Court set, provided something like a half

17   a dozen more expert reports in response, and was able to

18   take the depositions of the Greatbatch experts -- of the

19   AVX experts.  So there is no prejudice, there is no unfair

20   advantage, and this is what we asked for when we moved the

21   Court to vacate the damages verdict and it have a new trial.

22               THE COURT:  Okay.  Thank you.

23               Ms. Smalley, do you want to reply?

24               MS. SMALLEY:  Your Honor, the prejudice isn't the

25   time in having our experts respond.  We will have to use trial

time to rebut alternatives and other expert opinions that were

not presented in the first trial, and because AVX is being

permitted to develop new evidence that it could have developed

before the first trial after seeing Greatbatch's case.  I mean

it lost the damages issues in the first case and now it gets

to revise its theories having seen how trial played out.

Now, while we recognize that the Court did allow

that to a certain extent due to the verdict on the '715

patent and claim 12 of the '627 patent, we believe that this

is an advantage beyond that provided by the Court's Order.

THE COURT:  Okay.  Thank you.  I'm denying

Greatbatch's motion.  I did not place the limitations on

expert discovery that Greatbatch suggests that I did or

maybe should have.  Instead, I have ordered a new trial on

damages.  I ordered a new period for expert discovery and

expert reports.  And there just was no point at which I

imposed the limits on that discovery or opinions.

For instance, the limitation that if you could

have come up with this noninfringing alternative prior to

the first trial but you didn't, you can't -- that limitation

just isn't anywhere in this case.  There are other cases

where such a limitation might be appropriate.  In this

case, in my view, it was not appropriate and at this point

certainly is not appropriate.  We vacated the damages award

in part based on the verdict form that was used at the first

1    trial, and the failure of certain assumptions that were told

2    to that jury based on subsequent events, those assumptions

3    are no longer operative.  So we need a new trial and AVX

4    acted consistent with the letter and the spirit of the

5    scheduling order here.

6              To the extent there is prejudice to Greatbatch,

7    it's not unfair prejudice.  Greatbatch has had every fair

8    opportunity and I think has apparently taken advantage of

9    them to respond in a timely manner to the new opinions.

10   There is no evidence of bad faith.  AVX's conduct is well

11   explained in the record.  This evidence is important.  And

12   there will be no impact on the trial for me allowing AVX to

13   have done what it did, which is consistent with my order.

14             So for all those reasons, Greatbatch motion is

15   denied.

16             Let's turn then to the AVX motion.  AVX is

17   seeking to strike certain Greatbatch expert opinions that it

18   contends are contrary to the Court's construction of terms

19   in claim 12 of the '627 patent.  This one is AVX's motion,

20   so let's hear from AVX first, please.

21             MR. CAHILL:  Thank you, Your Honor.  This is Ron

22   Cahill for AVX.

23             First, I think it makes sense to talk a little

24   bit about the claim construction.  The Court took up claim

25   construction in the context of the issue of indefiniteness

shortly before the 2016 trial.  And at that point, the term "asymmetrical" had not been construed, and at the request of both parties, the Court construed it to mean "not symmetrical."

But the Court didn't stop there.  The Court added two examples of capacitors that would be symmetrical. And one of them was a capacitor having a bisecting plane containing the line passing through the ground lead passageway wherein the bisecting plane creates a mirror image of non-ground lead passageways on either side of the bisecting planes.

AVX, through its expert reports, presented a series of noninfringing alternatives that fell squarely within that example of symmetrical that the Court provided. And therefore, those noninfringing alternatives cannot be asymmetrical.  And this is obviously critical in the case because the only -- there claim 12 which AVX is accused of infringing requires an asymmetrical capacitor while claim 13 which has been invalidated calls for a symmetrical capacitor. So if the capacitors are symmetrical, they are noninfringing.

Greatbatch doesn't argue that AVX's noninfringing alternatives fall outside of the Court's example of symmetrical so apparently they are symmetrical but they're also nonsymmetrical according to Greatbatch because of other features that don't appear anywhere in the Court's claim construction.  So even though the noninfringing alternatives

1   fall squarely within the example of symmetrical, expert

2   opinions from Greatbatch experts say they are asymmetrical,

3   for example, because a ground electrode has a slightly

4   different shape on the left than on the right.  But that

5   doesn't have anything to do with the example of symmetrical

6   that the Court provided.  An example that was based on the

7   intrinsic evidence of the '627 patent.

8           Now, in other contexts, including the 2016

9   trial, Greatbatch agreed that it was that extra passageway

10  the hole for the RF pin, that it was that that determined

11  whether the capacitor was symmetrical or asymmetrical.

12          In fact, Mr. Whetzel asked Greatbatch's expert

13  during that trial:  And if you didn't drill that hole, would

14  the capacitor be symmetrical?

15          And the expert responded:  That would change the

16  symmetry.  Yes.

17          Now, during a recent reexamination of the '627

18  patent, here in the context of Greatbatch trying to preserve

19  the validity of claim 12, Greatbatch told the Patent Office,

20  according to the District Court construction of "symmetry,"

21  to determine whether a filter capacitor is asymmetrical,

22  there has to be an internal ground pin and the active

23  terminal pins must not be symmetrical with respect to the

24  internal ground pin.

25          So, again, Greatbatch is adopting this position

1    that it depends on where the pins are, not on anything else.

2    And they do that to preserve the validity of claim 12.

3              We think the construction that we put forth in our

4    brief is the Court's construction.  And that we have followed

5    that construction using the English language and that

6    Greatbatch at other times in this litigation has expressly

7    agreed with that.  And yet now they say it doesn't work.

8    That even though the capacitor is symmetrical, their expert

9    says it's asymmetrical.

10             That works a tremendous prejudice to AVX because

11   if they're allowed to say this at trial, then we have got

12   to argue the claim construction to the jury.  We have got to

13   unravel all of this on both cross-examination and with our

14   own experts, and that just isn't fair.

15             THE COURT:  All right.  Mr. Cahill, a couple

16   questions then.

17             Are you taking the view that asymmetry is only

18   evaluated with regard to the location of the passageways and

19   not with respect to any other design features of the filter

20   capacitors?

21             MR. CAHILL:  Well, Your Honor, I don't think we

22   go that far because "asymmetrical" means "not symmetrical"

23   and the Court has given an example of symmetrical based on

24   the passageways.  We fall within that example and so we're

25   symmetrical in claim 13 and not asymmetrical in claim 12.

1    Whether there could be some different way to determine what

2    is asymmetrical, I mean that is, it seems to us to be beside

3    the point.  The Court gave us an example of symmetrical, and

4    we fall within that example.

5                THE COURT:  So in Greatbatch arguing against

6    your position in this motion, they take me back to certain

7    discussions we've had at least related to these issues in

8    which they at least contend that I have said that the

9    examples in connection with the construction of asymmetry

10   in the summary judgment opinion, that those examples are

11   just examples and they're not exhaustive.  There may be

12   other examples of symmetrical embodiments, for instance.

13               If that is my view, can you still prevail on

14   this motion?

15               MR. CAHILL:  Well, Your Honor, it doesn't matter

16   how many examples of symmetry there are.  We only have to

17   meet one example of symmetry in order to be symmetrical.

18   The capacitor can't be symmetrical and asymmetrical at

19   the same time.  So if we meet one example of symmetry, the

20   capacitor is symmetrical.  And, again, Greatbatch's expert

21   has agreed with that proposition at other times in this

22   litigation.  And so if there were 1,000 examples of what is

23   symmetrical, it wouldn't matter to this motion because we

24   meet one of them.

25               THE COURT:  Now, I suppose, and we'll see if

1    Greatbatch is arguing this, but another way of looking at

2    it might be that there is more to the filter capacitor, and

3    so just because you meet this example with the mirror image

4    and the pins, if the rest of the capacitor was something we

5    would all indisputably agree is not symmetrical, it's

6    asymmetrical, then I just didn't go far enough in explaining

7    in my earlier opinion because it wasn't the arguments being

8    made to me and, therefore, what I said was incomplete and

9    you're sort of misinterpreting it.  Why would that not the

10   correct conclusion here?

11              MR. CAHILL:  Your Honor, I'd like to take that

12   on in three parts.

13              The first is the Court's construction was based

14   on examples in the '627 patent.  And the specific example

15   in the '627 patent that we're talking about is in column 9

16   in the paragraph that starts at line 4 and it says:  The

17   conductive terminal pins are symmetrically positioned by the

18   central ground pin.  And that is an embodiment that we all

19   agree is a symmetrical capacitor.

20              And so except that, I guess, Your Honor,

21   except to the extent that we disagree, which we have noted

22   consistently in our briefing, it's those pins that form the

23   symmetry that makes it symmetrical.

24              Second, Greatbatch at several other times

25   throughout this litigation has agreed completely with that

1  position, and they are changing what they're saying now

2  because it suits their purpose now.  When they were arguing,

3  invalidity was in play, they have consistently said that

4  it's about the pins or the holes, whichever one you pick.

5  That is what defines the symmetry and asymmetry; and it's

6  helpful found on validity, and now that the validity has

7  been upheld, they shouldn't be allowed to change it.

8           Then third, Your Honor, if it's the case that

9  the Court thinks that the Court didn't go far enough and

10  it is now going to change the claim construction, then that

11  works incredible prejudice on AVX because our experts took

12  the claim construction we had and specifically designed

13  noninfringing alternatives to fit the example that the

14  Court gave us.  They could have done something else, if the

15  claim construction had said something else.  If the claim

16  construction changes now, then we would need to update our

17  expert reports.

18           THE COURT:  Okay.  Thank you.

19           Let me give Greatbatch a chance.  Go ahead, please.

20           MR. MULDOON:  That's my turn, Your Honor.  This

21  is Jim Muldoon.

22           AVX clearly had notice of the issue with respect

23  to the symmetry issues on the feedthrough filter capacitor.

24           The claim language is not that the holes or the

25  passageways are symmetrically distributed throughout the

1    capacitor, it is that the capacitor is asymmetrical.  And

2    the Court, at the motion to reargue claim construction, was

3    very clear in its questions to AVX's counsel that it should

4    be the capacitor as a whole, and AVX's counsel responded

5    very clearly, yes, it is as a whole, that included the

6    passageways as well as the plates.

7              Additionally, at trial, when the issue popped

8    up with respect to Professor Webster's testimony regarding

9    symmetry of plates, there was a sidebar and the Court asked

10   AVX's counsel very specifically whether or not the order

11   was limited or that there weren't other ways to measure

12   symmetry.  And, again, AVX's counsel acknowledged that the

13   claim construction order was not limited solely to the

14   passageways.

15             With respect to the USPTO and the reexamination,

16   there was clear -- just as the Court expressly found at oral

17   argument that there was no disclaimer in the prosecution

18   history, the PTO found no disclaimer and used the plain

19   meaning of the word "asymmetrical," taken right out of a

20   dictionary which is essentially identical with the Court's

21   meaning and construction.

22             The fact that AVX chose to have its experts

23   opine on a theory that Dr. Hillman actually admitted in his

24   deposition testimony a few weeks ago that he is limiting

25   his claim construction or his interpretation of the Court's

1      claim construction to be limited solely to the passageways.

2              We have included the images in our briefing

3      where there are extensive protrusions on one side of the

4      capacitor body that are not there on the other.  There are

5      protrusions in the plates on one side that are not there on

6      the other.  And we don't believe that there is any way that

7      those now new hypothetical alternatives that never existed

8      during the accounting period can be called hypothetical --

9      I'm sorry -- asymmetrical.

10             We disagree with AVX's counsel's twisting out

11     of context statements of Dr. Pilgrim that he has said that

12     these are symmetrical or that he admitted that you don't

13     look at the capacitor as a whole in determining symmetry.

14             These are new alternatives that were for the

15     first time disclosed in the defendant's responding expert

16     reports on September 11th; and it is only fair that

17     Greatbatch's experts in their reply reports got a chance

18     to opine on these new hypothetical alternatives that were

19     only disclosed then.

20             This is an issue that the Court has already

21     raised and clarified in its motion hearings at trial; and we

22     do not believe that claim construction -- that asymmetrical

23     is not symmetrical is inappropriate in any way.  There is no

24     disclaimer that has been the plain meaning of the term that

25     everybody has learned since their second grade math sheets

1    of looking at symmetrical and asymmetrical devices.  Therefore,

2    the motion to strike should be denied.

3             THE COURT:  All right.  I need some further

4    assistance, Mr. Muldoon.

5             So I'm looking at some of the images that you

6    provided, for instance, at page 4 of your letter brief which

7    I think has depictions of what I understand to be I think

8    all six of the noninfringing alternatives according to the

9    new report.

10            If we focus on the four towards the upper end

11   of the page as opposed to the two on the bottom of the page

12   -- are you with me?

13            MR. MULDOON:  Yes, Your Honor.

14            THE COURT:  Okay.  So on those four, for any of

15   them, and I don't know if the analysis is different on them,

16   do any of them have a bisecting plane containing the line

17   passing through the ground lead passageway wherein the

18   bisecting plane creates a mirror image of non-ground lead

19   passageways on either side of the bisecting plane?

20            MR. MULDOON:  Your Honor, that is exemplary

21   language.  Okay.  The holes are evenly distributed around

22   the ground pin, Your Honor.  That does not indicate that

23   the capacitor as a whole is symmetrical.

24            THE COURT:  Okay.  But that is a "yes," right?

25   All four of them do meet that language that I just read from

1    the summary judgment order; correct?

2            MR. MULDOON:  I don't remember if it was a

3    summary judgment order or the claim construction.  Yes,

4    Your Honor.  That those distributions of one feature of the

5    capacitor are symmetrically distributed.  However, the

6    other features of the capacitor which counsel has admitted

7    on diversification the plates are clearly not symmetrical.

8            THE COURT:  So to be clear, DI 546, at page 23,

9    it was the summary judgment opinion, and that is where we

10   were asked to, and did, construe "asymmetry."  And so the

11   sentence I'm reading to you from says:  As illustrated in

12   embodiments of the '627 patent, "symmetrical" means, for

13   example ... and then I read to you the first example.

14           So it seems to me that you have agreed that one

15   or more, probably all four of these examples do satisfy what

16   the Court said in describing "symmetrical."  Am I correct

17   about that?

18           MR. MULDOON:  Your Honor, clearly the argument

19   at the time was focused on one particular feature of the

20   capacitor.  There, the passageways, since there was obviously

21   five on one side and four on the other or six on one side and

22   five on the other.  Merely focusing on one feature does not

23   make the entirety of the device symmetrical.

24           THE COURT:  Okay.  But still, and we'll get

25   there, at this point I think you have to agree that what I

1    said is an example of symmetrical is satisfied by those four

2    examples that AVX has come up with; correct?

3              MR. MULDOON:  Your Honor, since those examples

4    are taken from the examples that are expressly named

5    "symmetrical" in the patent, Figures 1 through 6, and the

6    circular one, there are other features of those capacitors,

7    the shape of the capacitor, the location of the pins being

8    equidistant from the ground pin, that is, do these meet the

9    limitation if we focus solely on the ground pins and ignore

10   all other features of the capacitor?  Yes, Your Honor.

11             THE COURT:  Now, if those devices meet the

12   definition of "symmetrical," do you agree that that means

13   they cannot be asymmetrical?

14             MR. MULDOON:  No, Your Honor.

15             THE COURT:  So I think I know why you are saying

16   that.  And I will give you a chance to explain, but is it your

17   position that a device can be symmetrical and asymmetrical at

18   the same time?

19             MR. MULDOON:  Where a device is asked, the

20   symmetry has to be measured of the capacitor as a whole,

21   Your Honor, the Court should look at all of the features

22   of the capacitor, including the shape of the body and the

23   ground plates which are explicitly part of the capacitor

24   and described as such in I believe it is column 7 of the

25   patents in the upper third of that column where it talks

1    about the capacitor being a monolithic ceramic capacitor

2    having passageways, plates, and a dielectric ceramic that

3    surrounds the plates.  And when a capacitor should be

4    symmetrical, it should be all of those features that are

5    symmetrical.

6             Now, we do not -- there can be, Your Honor --

7    just because the headlights on a car are symmetrically

8    placed doesn't mean that there isn't a single steering

9    wheel and accelerator and brake medal in the car.  So just

10   by looking at one feature and saying that feature is

11   symmetrical does not make the entirety of the device

12   symmetrical.

13            THE COURT:  Right.  What I'm understanding

14   from that is it is possible if you just are looking at the

15   placement and number of the pins, it is possible that that

16   is symmetrical where at the same moment in time, the overall

17   feedthrough filter capacitor is asymmetrical.  Is that what

18   you are saying?

19            MR. MULDOON:  Absolutely, Your Honor.

20            THE COURT:  All right.  But then I guess the

21   question becomes, in the patent, there is all this discussion

22   of the examples where we're only looking at the relative

23   number and, you know, placement of the pins.  You all, it

24   seems to me, have advocated a position that that is a way

25   to measure symmetry.

1              The literal words of my opinion that I have read

2    to you seem to say that that is a way to measure symmetry,

3    and now you are asking me to say something different than

4    that, it seems.  So help me with that.

5              MR. MULDOON:  Well, it is not any different,

6    Your Honor, than what the Court has already said with

7    respect to that there aren't other ways, there aren't other

8    ways to measure symmetry at the motion to reargue and during

9    the trial.

10             It is not that you're -- yes, there was a focus

11   clearly on the location and number of the passageways because

12   that was a feature that was obviously asymmetric as the jury

13   found given that there were more holes on one side than the

14   other, but just because we focused on one asymmetrical feature

15   doesn't mean that there are not other asymmetrical features

16   of the capacitor as a whole that still makes the capacitor

17   asymmetrical.

18             THE COURT:  So every comment where you said,

19   for instance, to the PTAB, this is the way the District

20   Court says to measure it, to measure symmetry.  This is what

21   you do, you look at the pins or the passageways.  All of

22   those should be understood in context as that is what you

23   were saying because that was the narrow dispute, but had

24   you really been asked, you would have said that is just

25   one place to look because it's easy.  It's really, there

1    is plenty of places you could look for asymmetry.

2              MR. MULDOON:  Of the capacitor as a whole, yes,

3    Your Honor.  There was the arguments and the I believe it's

4    4,700 and-some-odd pages of the prosecution history -- of

5    the reexamination, I'm sorry, contain a number of arguments

6    with respect to what standard the Court should, I'm sorry,

7    the PTO should apply given the trial and the short term of

8    the patent remaining, but none of those were relied on by

9    the PTO.

10             The PTO, as the Court did, found no disclaimer

11   and chose a plain meaning of symmetrical, sorry, of

12   "asymmetrical" essentially as the Court did in its initial

13   first sentence of its language that "asymmetrical" is "not

14   symmetrical."

15             THE COURT:  Is there anywhere in the patent

16   I can look to to see that the measure of symmetry or

17   asymmetry is not limited to the placement of the pins or

18   the passageways?

19             MR. MULDOON:  Well, the language in the patent

20   I believe, I do not have a copy in front of me, Your Honor,

21   references that the capacitor is -- and it refers to the

22   capacitor in the first embodiments in Figures 1 to 6 which

23   is a rectangular capacitor with two equally spaced active

24   pins and passageways on either side.

25             The capacitor is also rectangular, and the pin

1    is clearly in the center of the rectangle, and the pins are

2    along the same major axis of that rectangle.  As the patent

3    refers to that capacitor and that embodiment as symmetrical,

4    there are numerous features of that embodiment including the

5    ground plate, including the active plates, including the

6    shape of the capacitor, and the distribution of the ceramic

7    material around the capacitor being --

8                    MS. SMALLEY:  Yes, column 4.  I'm sorry, Jim.

9                    Column 4, line 27 said:  Various embodiments of

10   the invention are disclosed herein which illustrate that the

11   feedthrough filter capacitor may be asymmetrical as well as

12   symmetrical about the ground lead.

13                   So there are two separate concepts.  There is

14   symmetry of the capacitor and then being symmetrical around

15   the ground lead.

16                   THE COURT:  Okay.  Thank you for that, Ms. Smalley.

17                   Mr. Muldoon or Ms. Smalley, either one, what

18   defendant posits, if I do as you say and deny this motion,

19   is that this trial is going to essentially be in large part

20   a claim construction hearing in front of the jury and that

21   that will be improper and confusing.  Respond to that concern.

22                   MR. MULDOON:  Your Honor, we believe that the

23   claim construction that the jury should receive is that

24   asymmetrical is not symmetrical and not include the exemplary

25   language that was put in at a time when the focus was on only

1        one of the asymmetric features of that device.

2                THE COURT:  And therefore what happens to the

3        opinions that these devices we have been looking at here

4        on page 4 of your letter are noninfringing alternatives?

5                MR. MULDOON:  Well, clearly, Your Honor, with

6        respect to the plates, we have testimony from Dr. Hillman

7        that the plates are not the same on the left side as they

8        are on the right side, the distance between the setoff of

9        the plates to the edge of the capacitor, the overall shape

10       of the capacitor body are not symmetrical.

11               We believe that that is an issue that we'll be

12       addressing with respect to *Daubert* issues because we believe

13       that as Dr. Webster testified, that is at page 1580 of his

14       transcript, talking about plates being considered in

15       symmetry, as the Court has already raised another concept,

16       they had notice of these issues with respect to plates, and

17       we believe that all of their embodiments are not the same on

18       the right as the left and therefore not symmetrical and not

19       noninfringing.

20               THE COURT:  Right.  Okay.  But just to be clear,

21       what you propose is that I would tell the jury asymmetry

22       is not symmetrical and then let their expert present these

23       six noninfringing alternatives and your expert explain why

24       he thinks you need to take a broader perspective as to the

25       overall capacitor and that they are infringing because they

1    are asymmetrical.  Is that what you are saying?

2              MR. MULDOON:  Yes, Your Honor.  That is very

3    consistent with the language of *Grain Processing* where there

4    is no noninfringing alternative that was actually on the

5    market.  That raises an inference that puts a burden on the

6    defendant to show that there were noninfringing alternatives

7    available, and we will show why each of these designs is not

8    symmetrical.

9              THE COURT:  Okay.  Is there anything else?

10             MR. MULDOON:  And that is what the expert

11   opinions they are trying to exclude would do, as we say.

12             THE COURT:  Anything else from Greatbatch then?

13             MR. MULDOON:  No, Your Honor.

14             THE COURT:  All right.  Mr. Cahill, you can

15   respond.

16             MR. CAHILL:  Sure, Your Honor.  There is a lot

17   to respond to, but I think what I would like to do is to go

18   to the very end.

19             The solution that Greatbatch proposes would

20   radically change the claim construction in this case.  And

21   if that were to happen, we would seek to propound new expert

22   reports that follow the new claim construction, and we

23   could have proposed other noninfringing alternatives had the

24   claim construction been different, and we didn't do that.

25   We followed the claim construction that we had and we stayed

1    within the Court's Orders.

2          Second, we would seek leave to vacate the jury

3    verdict from 2016 with respect to the '627 patent.  We tried

4    validity in this case based on that claim construction and

5    now Greatbatch seeks to broaden it.

6          Third, we would go back to the Patent Office

7    with a new claim construction and invalidate the '627 patent

8    there as well.  Because, again, the Patent Office was

9    looking at very different representations from Greatbatch

10   when it found claim 12 valid.  I submit that the Court

11   cannot change the claim construction now without having us

12   go through all of those exercises.

13         THE COURT:  Well, what about the argument

14   that it's not a claim -- it's not a change in the claim

15   construction, it's just you all were focused on the placement

16   of the pins and the passageways have been for years here and

17   in the PTO evidently, and so I addressed the dispute that you

18   had but never said or suggested that the measure ultimately

19   of whether there is symmetry is at the level of the overall

20   capacitor?

21         MR. CAHILL:  Your Honor, that is just not what

22   the order says.  So the order gives examples of symmetrical,

23   and we clearly fall within one of the examples of symmetrical.

24   And then it says "asymmetrical" means "not symmetrical."

25         I mean logically it is impossible for our

1    noninfringing alternatives to be asymmetrical under these

2    circumstances.  It's logically impossible.

3           THE COURT:  Well, let's break that down.  Why

4    isn't it that at the same moment in time, your alternatives

5    can have placements of pins and passageways that meet our

6    definition of "symmetry" but be placed on an overall

7    capacitor that itself is asymmetrical?

8           MR. CAHILL:  Well, Your Honor, if "asymmetrical"

9    means "not symmetrical," once you find symmetry, then it

10   can't be asymmetrical.  I mean a capacitor can't be

11   symmetrical and asymmetrical at the same time.

12          THE COURT:  Right.  But the capacitor --

13          MR. CAHILL:  It can if you want to revisit

14   indefiniteness.

15          THE COURT:  Understood.  But the capacitor can

16   be asymmetrical and have a component, maybe the most

17   important component, that is symmetrical, can't it?

18          MR. CAHILL:  I'm sorry, Your Honor.  I'm not

19   sure I followed that.

20          THE COURT:  The placement of the pins and

21   passageways can be symmetrical on an overall capacitor that

22   could -- we could give it a random shape, but would be

23   indisputably the overall shape could be asymmetrical.  Isn't

24   that possible?

25          MR. CAHILL:  I don't think it is possible as a

1   matter of claim construction.  The intrinsic evidence is

2   clear, symmetry and asymmetry is defined by the placement of

3   the pins with respect to the ground lead.

4              THE COURT:  What about --

5              MR. CAHILL:  That has always been.

6              THE COURT:  What about column 4, line 27 that

7   Ms. Smalley read to us from the patent?

8              MR. CAHILL:  Well, that doesn't tell us much of

9   something about what is symmetrical versus asymmetrical or

10  whether it's the pins or anything else.

11             THE COURT:  Doesn't it suggest that the FFT may

12  be asymmetrical as well as symmetrical around the ground

13  leads?

14             MR. CAHILL:  I don't think it does.  I think

15  it says that the filter feedthrough capacitor can be

16  asymmetrical or it can be symmetrical and either one of

17  those is about the ground lead.  And I understand that to

18  be the way the Court has construed the claim.

19             In other words, I think "about the ground lead"

20  modifies "asymmetrical" as well as "symmetrical."  Otherwise,

21  you would have a feedthrough filter capacitor that was both

22  symmetrical and asymmetrical, in which case I really want to

23  go back to our indefiniteness argument.

24             THE COURT:  Well, take Mr. Muldoon's car

25  example.  If you are looking at it from the front and just

1    focus on the perspective of the headlights, the headlights

2    let's just stipulate are placed symmetrically vis-à-vis the

3    front perspective, but if we go and ask is the car overall

4    symmetrical or, if you are sitting in the driver's seat, you

5    know, are there two symmetrical steering wheels, we know

6    that there are not.

7              Why isn't this analogous to that, a component,

8    the component we have been focused on for five years or

9    so, is perhaps symmetrical but the overall vehicle, the

10   capacitor, can at the same moment be asymmetrical?

11             MR. CAHILL:  Well, Your Honor, we've defined

12   symmetry in the capacitor by the only features that matter,

13   the only features that appear in the patent, in the file

14   history that have been the subject of argument for more

15   than four years now.  And if you want to argue about whether

16   the car is asymmetrical, the car is asymmetrical and the

17   headlights are symmetrical.

18             Here, we have defined symmetry in the capacitor by

19   the only features that actually matter for symmetry purposes

20   because both the patent and the file history makes it clear

21   that the difference with asymmetry is because you place the

22   pins differently, you wind up with different impedance.  That

23   has nothing to do with the shape of the ceramic on the outside.

24   It has to do with where you place the pins.

25             And we have been making these arguments for more

1    than four years now, and there has never been a suggestion

2    anywhere that it is anything other than the placement of the

3    pins that tells you whether the capacitor is symmetry or

4    asymmetry.

5              So it is not like the car example.  If you said

6    the only thing in the car is that matters is the headlights,

7    then I think the car is symmetrical.

8              THE COURT:  All right.  Is there anything else,

9    Mr. Cahill?

10             MR. CAHILL:  No, thank you, Your Honor.

11             THE COURT:  All right.  Mr. Muldoon, anything

12   you wanted to add?

13             MR. MULDOON:  Just to request the Court's

14   attention that the underlying sentence from the pretrial

15   arguments where you clearly asked whether it was with

16   respect to the capacitor as a whole, and the response quoted

17   is as a whole, Your Honor, as described and claimed in the

18   patent references to plates and passageways.

19             THE COURT:  Right.  Thank you.

20             MR. CAHILL:  Your Honor, if I could respond to

21   that?

22             THE COURT:  Yes.  Go ahead.

23             MR. CAHILL:  That is completely out of context.

24   The dispute at that time was whether the hole for the RF pin

25   was part of the capacitor.  And AVX argued that it wasn't

1    because it was completely outside of the other capacitor

2    features.  That is why that argument was worded the way it

3    was worded.

4              THE COURT:  All right.  Well, thank you all.  I

5    think this is a very difficult motion and a difficult

6    situation here.  AVX is moving to strike these opinions of

7    Greatbatch's experts on the grounds that Greatbatch's

8    experts opinions are directly contrary to the Court's claim

9    construction.

10             I think, while this is a very close call,

11   ultimately I am siding with Greatbatch on this and I am

12   denying AVX motion.  I don't deny what AVX is saying that

13   some of these, if not all of these, alleged noninfringing

14   alternatives meet the literal language of "symmetry" in an

15   example that I gave in my opinion construing asymmetry; the

16   summary judgment opinion, that is.

17             I don't deny that some or all of these alleged

18   noninfringing alternatives meet the literal language of what

19   I said in that order.  I also don't deny that we derived

20   that language and those examples from the intrinsic evidence.

21   Specifically, the patent itself.

22             It's also true that the focus of much of the

23   litigation over this patent has been on the relative placement

24   of the pins and passageways and the capacitors and the

25   plaintiff has said all the things that the defendant says that

1    the plaintiff has said.

2              Nonetheless, I believe and hope I have been

3    consistent that the ultimate measure of symmetry or asymmetry

4    is not necessarily the placement of the pins and the

5    passageways.  It is ultimately a measure of the overall

6    capacitor itself.

7              Just because we have spent a lot of time and

8    energy and no doubt money litigating the placement of the

9    pins and the passageways because Greatbatch thought it

10   could prove asymmetry at that level doesn't mean that they

11   couldn't have at that time and more importantly can't now

12   try to prove asymmetry at another level, i.e., at the

13   totality of the overall capacitor.

14             I think there is support in the statements that

15   I have made that Greatbatch has pointed to for that view.

16   I think there is at least some intrinsic support for that

17   view, including in column 4, line 27 that Ms. Smalley

18   helpfully called out here on the call today.

19             So the end result of that is I'm not striking

20   what Greatbatch's expert has opined about these noninfringing

21   alternatives.  I'm also not striking the opinion of AVX's

22   expert that they are in fact noninfringing alternatives.

23             I will do my best at trial not to let this

24   devolve into an improper claim construction hearing in front

25   of the jury.  I'll need some help from the parties in the

1    pretrial order, pretrial conference and at trial to help me

2    make sure that doesn't happen.  But I think that ultimately

3    you have all hit upon a genuine dispute of fact that both

4    sides experts can opine on, and we'll get the jury's view

5    ultimately on it.

6              I have considered the *Pennypack* Factors.  I

7    don't think they really play a big role here.  Really, the

8    substance of the motion turns on whether I think what the

9    plaintiff has done is inconsistent or directly contrary

10   with my construction, and therefore I don't think what I'm

11   ruling is blessing Greatbatch for acting in bad faith or

12   trying to confuse the jury.  I think what Greatbatch has

13   done is timely.  They are responding to timely disclosed

14   opinions of AVX's experts.

15             I don't think this needs to have any impact on

16   the trial date.  And I see no basis to grant the alternative

17   relief that AVX requested of yet more expert opinions and

18   more expert discovery or claim construction briefing or

19   revising an indefiniteness defense.

20             Everyone has the schedule.  I have found today

21   everyone acted consistent with the schedule, everyone acted

22   consistent with my claim construction, and we're going to

23   have a trial at which both sides will have a full and fair

24   opportunity to present their cases.  So the motion is denied.

25             Any questions about that, Mr. Cahill?

```
 1            MR. CAHILL:  Well, Your Honor, I was going to

 2   ask for five business days to provide a new expert report.

 3   It sounds like you already denied it.

 4            THE COURT:  Well, if Greatbatch wants to agree

 5   to it, I'll change my mind but, Mr. Muldoon, do you want to

 6   agree to that?

 7            MR. MULDOON:  At this point, no, Your Honor.

 8   But we'll be happy to continue discussions with counsel off

 9   the record.

10            THE COURT:  Yes, why don't you all discuss that.

11   I certainly don't mean to say, Mr. Cahill, that you all can't

12   agree to further share your positions with one another,

13   including through more expert disclosures.

14            I do really need your help to make sure that we

15   don't turn this into one long claim construction hearing.  And

16   it may well be that you all being as thorough in disclosing to

17   one another what it is you propose to do as possible will help

18   me in that regard.  So I may have been a little too quick in

19   saying no further expert disclosures, but I'm going to leave

20   it to you all to discuss that first.

21            Anything else, Mr. Cahill?

22            MR. CAHILL:  No, Your Honor.

23            THE COURT:  And Mr. Muldoon?

24            MR. MULDOON:  No, Your Honor.

25            THE COURT:  I hope you all have a nice
```

1    Thanksgiving.   Thanks very much.   Good-bye.

2              (Telephone conference ends at 3:48 p.m.)

3

4         I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

5

6                        /s/ Brian P. Gaffigan
                         Official Court Reporter
7                         U.S. District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25