# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREATBATCH LTD., <br><br> Plaintiff, <br><br> v. <br><br> AVX CORPORATION and <br> AVX FILTERS CORPORATION, <br><br> Defendants. | C.A. No. 13-723-LPS |

## MEMORANDUM ORDER

The Court held a jury trial on damages beginning on January 3, 2019. (*See* D.I. 1263-69) On January 14, the jury awarded Plaintiff Greatbatch Ltd. ("Plaintiff" or "Greatbatch") $22,169,007. (D.I. 1247) The Court entered final judgment on February 21, 2019. (D.I. 1260)

Defendants AVX Corporation and AVX Filters Corporation ("AVX" or "Defendants") moved for judgment as a matter of law and a new trial. (D.I. 1270) Greatbatch also filed multiple post-trial motions. (D.I. 1273)

On May 23, 2019, following an oral argument, the Court granted Greatbatch's motions in part, awarding prejudgment and post-judgment interest, but denying Greatbatch's requests for (1) additur for Ingenio lost sales; (2) attorneys' fees; and (3) reinstatement of a prior verdict or alternatively a new trial on price erosion for Frontier and NG3. (D.I. 1295 ("Tr") at 83-90) The Court also denied in part AVX's motion for judgment as a matter of law or a new trial on (1) infringement of the asserted claims of the '095 patent; (2) contributory infringement of claim 12 of the '627 patent; and (3) invalidity of the '627 patent. (*Id.* at 78-83) The Court took under

1

advisement AVX's motion for judgment as a matter of law on price erosion for Ingenio and damages for NG3. (*Id.* at 79)

Having thoroughly reviewed the record and taken additional time to consider AVX's Ingenio and NG3 damages motions, the Court will deny AVX's motion for judgment as a matter of law (D.I. 1270) in its entirety.

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation marks omitted).

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the

record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *see also Perkin-Elmer Corp.*, 732 F.2d at 893. The Court may not assess the credibility of witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. Rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

AVX argues that substantial evidence does not support the Ingenio price erosion verdict because Greatbatch failed to prove a pre-erosion price or that the price actually dropped. (Tr. at 5-6) (AVX: "In a price erosion case, it's the patentee that must establish the amount of the price reduction. They can't guess at it. They can't make it up.") AVX further contends that Greatbatch's damages expert, Dr. Strickland, based his price erosion calculations on data that was too hypothetical, including "a 2007 budgetary quote for an unfiltered feedthrough ('UFT') called Falcon/Ingenio that BSC [Boston Scientific Corporation] never accepted," "one Greatbatch internal pricing scenario selected from among 3,000 for a filtered feedthrough ('FFT')," and "the conclusory and uncorroborated testimony of Greatbatch's employees." (D.I. 1271 at 2; *see also* Tr. at 10-16) In AVX's view, there is insufficient evidence of technical comparability between Ingenio and the Falcon product, employee testimony provides no

3

evidence of the amount of erosion, and a budgetary scenario selected by Plaintiff's expert – a $95 price in May 2010, which was used to derive the $30 price erosion for Ingenio – was chosen from four options without any rationale. (D.I. 1271 at 4-7) AVX further argues that because the June 2009 Ingenio FFT price quote (which predates AVX's December 2009 qualification as a second source) is the same as the prices eventually negotiated in the 2011 supply agreement, no erosion occurred. (Tr. at 6)

Notwithstanding these criticisms, the Court agrees with Greatbatch that "giving Greatbatch the advantage of every fair and reasonable inference, there is sufficient evidence to support the verdict." (Tr. at 19) The jury was free to credit Dr. Strickland's testimony "that Greatbatch would not have agreed to that eroded filtering price in the 'but for' world (where AVX did not infringe)." (D.I. 1280 at 3) A market reconstruction for purposes of assessing price erosion damages is a hypothetical exercise and involves no per se obligation of establishing an "actual price" from which erosion is measured. *See, e.g., Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) ("Normally, if the patentee is not selling a product, by definition there can be no lost profits. The only exception is where the patentee has the ability to manufacture and market a product, but for some legitimate reason does not.") (internal quotation marks and citation omitted); *see also* Tr. at 21. Greatbatch makes the reasonable argument that "[t]here was no historical, uneroded price for the Ingenio FFT" filtering. (D.I. 1280 at 3)[1]

---

[1] As Greatbatch has explained:

> BSC initially sought Greatbatch quotations for the entire device, and only began negotiating for a filtering price (not including the UFT) after it decided to manufacture the Ingenio UFT itself. (Ex. E.) Greatbatch's price erosion claim is based on a reduced filtering price due to AVX's infringement of the '095 and

4

Substantial evidence supports the jury's implicit finding that the manner in which BSC purchased the patented technology from Greatbatch changed after AVX's infringement, creating downward pressure on the prices Greatbatch could charge BSC. (*See* Tr. at 20 (Greatbatch: "Boston Scientific, due to AVX's infringement, was able to do what Greatbatch didn't want it to do, which is vertically integrate the filtered feedthrough so that Greatbatch and AVX would be providing filtering only on an Ingenio that had a Boston Scientific unfiltered feed through. That is where the price erosion comes from."); *see also id.* at 26 ("[T]here was never just filtering possible until AVX infringed.")) AVX acknowledges that BSC put pressure on Greatbatch to reduce prices (*see* Tr. at 17), and BSC believed it had succeeded in using AVX to drive down Greatbatch prices (*see, e.g.*, D.I. 1284-1, Ex. 38 (PTX-359)).

Under these circumstances, Dr. Strickland could properly rely on "a detailed analysis of the companies involved, including a comprehensive review of Greatbatch's pricing, sales, and costs; discussions with many Greatbatch employees; and review of thousands of confidential documents, including the contracts and contract negotiation documents, as well as publicly-available information such as the parties['] and BSC's 10-Ks." (D.I. 1280 at 4) Further, the jury

---

later the '715 patent, not a reduced FFT price, but Dr. Strickland necessarily relies in part on data regarding FFT pricing due to the nature of the negotiation. . . .

AVX provided a budgetary quote with prices ranging from $33.00 to $42.00 for the Ingenio filter element. (Ex. J.) Greatbatch provided a budgetary quote that included filtering prices of $71.00 to $77.50 based on "utilizing Greatbatch" UFTs. (Ex. A ¶ 198; Ex. K.) In November 2007, Greatbatch's prices for an Ingenio filter were thus $29 to $44 higher than those of AVX.

D.I. 1179 at 2-3; *see also* D.I. 1280 at 6 ("BSC used AVX's infringing sales to reduce Greatbatch's filtering prices. . . . Even so, AVX claims that Greatbatch's *filtering* prices were not eroded by erroneously relying on FFT prices in the 2011 Supply Agreement.") (emphasis in original).

5

could properly and reasonably accept the Falcon/Ingenio comparison. (*Id.* at 5-6) The Court agrees with Greatbatch that "AVX's contentions that the quote is budgetary, not discounted for volume or not sufficiently linked to Ingenio simply go to the weight of the evidence." (Tr. at 22)[2]

AVX also argues that substantial evidence does not support the NG3 damages verdict, including lost sales and price erosion:

> Greatbatch's reconstructed market included only Greatbatch and AVX, i.e., a sale made by AVX was a sale lost by Greatbatch. But, as of 2014, BSC was in the market as a filter supplier. Because Greatbatch's reconstructed market did not include BSC, the NG3 lost profits and price erosion verdict is not supported.

(D.I. 1271 at 8-9) AVX points to testimony that "after giving notice, BSC supplied its own filter for NG3," meaning there was no two-supplier market that would support Greatbatch's damages verdict. (*Id.* at 9; *see also* Tr. at 17-18)

On this issue, too, the Court agrees with Greatbatch: "[v]iewed in the light most favorable to Greatbatch, the evidence demonstrates Greatbatch would have made all NG3 sales made by AVX but for AVX's infringement." (D.I. 1280 at 7) Greatbatch presented evidence that BSC only "initially qualified" its internal solution in 2014 and had continued to purchase FFTs from Greatbatch and AVX before final qualification. (*See id.*; *see also* Tr. at 25) Substantial evidence also supports the jury's implicit finding to accept the comparison between NG3 and Frontier/Progeny. (*See, e.g.*, D.I. 1280 at 8) (citing evidence) Furthermore, as Greatbatch contends, "[i]t is a reasonable inference that, if Greatbatch could have charged more for the

---

[2] The Court's conclusions with respect to the Ingenio price erosion portion of AVX's motion are consistent with its conclusions in rejecting AVX's *Daubert* motion to strike opinions of Greatbatch's damages expert, Dr. Strickland. (*See* D.I. 1235 at 49-50 ("I believe that everything that AVX is arguing about price erosion is simply criticisms that go to the weight and not to the admissibility of his opinions."); D.I. 1222).

6

Frontier/Progeny, it could have charged more for the next version of the product (NG3)." (*Id.*) In sum, substantial evidence supports the jury's damages verdict with respect to the accused NG3.

Accordingly, for the reasons stated during the May 23 hearing (*see* Tr. at 79-90), and those stated in this Memorandum Order,

IT IS HEREBY ORDERED that Greatbatch's motion (D.I. 1273) is GRANTED IN PART AND DENIED IN PART and AVX's motion (D.I. 1270) is DENIED.

IT IS FURTHER ORDERED that the parties shall meet and confer and, no later than August 5, submit a joint status report, as well as any additional order(s) they believe should be filed.

July 31, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE